

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 14, 2018**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| 4 West Holdings, Inc. *et al.*,[1] | § | Case No. 18-30777 (HDH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

## ORDER (I) APPROVING AMENDED SETTLEMENT AGREEMENT,
## AND (II) GRANTING RELATED RELIEF

The above-captioned debtors (the "<u>Debtors</u>") filed their motion (the "<u>Motion</u>," Dkt. No. 101)[2] for entry of an order, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") approving the Settlement Agreement, including but not limited to the transfer of the 23 facilities referred to as the Transfer Portfolio, from certain of the

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached to the Motion as <u>Exhibit A</u>.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

1

Debtors to designees of the Omega Parties (the "Omega Operators"), all as further described in the Motion. In light of certain objections to the Motion, including but not limited to the objection by the Official Committee of Unsecured Creditors appointed in these cases (the "Committee") [Dkt. No. 207], the joinders thereto filed by Omnicare, Inc. [Dkt. No. 210], by Pharmacy Corporation d/b/a Pharmerica [Dkt. No. 208], and by the Tort Claimant Firms [Dkt. No. 214], and the objection of Healthcare Services Group, Inc. ("HSG") [Dkt. No. 209], and the limited objection of the United States of America (HHS) ("HHS") [Dkt. No. 205], and the informal responses of Merit Health Natchez and its affiliates ("Merit Health"), Adams County Memorial Hospital ("Adams Hospital"), and Liberty Mutual Insurance Company ("Liberty Mutual") (the Committee, Omnicare, Inc., Pharmacy Corporation d/b/a Pharmerica, the Tort Claimant Firms, HSG, HHS, Merit Health, Adams Hospital, and Liberty Mutual collectively are the "Objecting Parties"), the Debtors and the Omega Parties, the "Parties" to the Settlement Agreement, have agreed to amend the proposed relief sought by the Motion to be limited to that set forth herein, and to amend the Settlement Agreement, as further reflected in the Amended Settlement Agreement attached to this Order as Exhibit 1 (the "Amended Settlement Agreement"), which shall only be effective only upon the Court's entry of this Order.

A hearing on the Motion was held on April 16, 2018 and continued to April 17, 2018. On April 17, 2018, the Court, upon the oral motion of the Debtors and with the consent of the Omega Parties and certain Objecting Parties, continued the hearing on the Motion to, among other things, allow the service of notice of the Motion upon all creditors. On April 19, 2018, the Court entered the *Order Shortening Notice and Time for Certain Parties to File Objections Relating to the Debtors' Motions for Entry of Order Approving (I) Plan Funding Commitment and Stock Purchase Agreement With Plan Sponsor; and (II) Settlement and Compromise of*

*Certain Claims Pursuant to a Settlement Agreement* [Dkt. No. 269]. Accordingly, the Debtors' noticing agent served a supplemental notice [Dkt. No. 247] of the Motion and filed a two Supplemental Certificates of Service evidencing service on all parties required to be served pursuant to this Court's *Order Granting Complex Chapter 11 Bankruptcy Case Treatment* [Dkt. No. 99], and service on all creditors (the "Supplemental Certificates of Service") [Dkt. Nos. 290 and 291]. In addition, on April 19, 2018, the Debtors filed their Notice of Filing of Form Operations Transfer Agreement [Dkt. No. 268]. On May 11, 2018, the Court concluded its hearing on this Motion.

Upon consideration of the Motion, the First Day Declaration, the Amended Settlement Agreement, the Supplemental Certificates of Service, the arguments of the parties, and the evidence adduced at the hearing, this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity to be heard were adequate and appropriate under the circumstances and no other notice need be provided; and this Court, after considering the positions of the Objecting Parties, the evidence in the record, and arguments of counsel, having determined that the legal and factual support for the Motion provide just cause for the relief granted herein; the Court having determined that the Amended Settlement Agreement is fair and equitable and in the best interest of the estate, the relief sought is otherwise in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, the Court HEREBY ORDERS THAT:

1. The Motion is granted, but only to the extent set forth herein, and all objections not resolved by the terms of this Order are hereby overruled.

2. The Amended Settlement Agreement, including but not limited to the form of Operations Transfer Agreement ("OTA")[3] and any other ancillary documentation (the "Transaction Documents"), and the transactions contemplated by the foregoing, are approved.

3. In accordance with the Amended Settlement Agreement, the Master Leases are deemed severable and the Debtors' leases with the Omega Parties with respect to the Transfer Portfolio are deemed rejected, effective at the time each corresponding OTA and associated Transaction Documents become effective. Any rejection damages claim arising out of such rejection shall be calculated under applicable state law, as modified by the Bankruptcy Code, and pursuant to section 502(b) of the Bankruptcy Code, any party in interest shall have the right to object to the allowance of such claim on any grounds.

4. Notwithstanding anything in this Order or the Amended Settlement Agreement to the contrary, the Indiana Master Lease shall not be deemed rejected and the free and clear transfer/assignment of (a) the Indiana Master Lease, (b) any subleases thereunder or associated therewith including but not limited to that certain Health Care Facility Sublease Agreement by and between Trinity Mission Health & Rehab of Connersville, LLC and Adams Hospital, and (c) any management or operating agreement thereunder or associated therewith, including but not limited to that certain Management Agreement between Adams Hospital and Trinity Mission

---

[3] The form of OTA approved by this Order shall not, except to the extent agreed to with modifications approved by the Debtors, Omega, the New Operators, and Adams Hospital (after consultation with the affected Objecting Parties as required by Paragraph 17 of this Order), apply to the transfer/assignment of the operations pertaining to the Indiana Master Lease, as the facility subject thereto is operated by a non-debtor third party, Adams Hospital. The OTA and any ancillary Transaction Documents related to the Indiana Master Lease will be revised and circulated among the affected Objecting Parties set forth in Paragraph 17, and if not approved by such parties then such OTA and any ancillary Transaction Documents will be presented to the Court for adjudication or approval, after due notice and an opportunity to be heard by all such parties.

Health & Rehab of Connersville, LLC, to the applicable New Operator shall not be deemed effective until the earlier of (i) the closing of the transactions contemplated by the applicable OTA and Transaction Documents (subject to footnote 3, above, as to any revised form of OTA and Transaction Documents), or (ii) further order of the Court after notice and a hearing.

5.      The leases and agreements with respect to the Restructuring Portfolio are, subject to the confirmation of the Debtors' proposed Plan, deemed recharacterized as secured financings. If the Plan is not confirmed (subject to changes as may be agreed to by the Debtors and the Omega Parties), this paragraph of this Order shall be deemed null and void and the Debtors and the Omega Parties may seek further relief as to the proper characterization of the leases and agreements pertaining to the Restructuring Portfolio.

6.      Nothing in foregoing paragraph or elsewhere in this Order shall preclude or in any way limit the ability of the Objecting Parties or any other party in interest from disputing, whether under the Debtors' proposed Plan or for any other purpose, the characterization of the leases and agreements with respect to the Restructuring Portfolio, whether any recharacterization would give rise to a secured claim or any other rights, or the nature, extent, amount, status, or validity of any claim or any other rights of the Omega Parties as to the Restructuring Portfolio. In addition, notwithstanding the relief granted by this Order, the Objecting Parties and any other party in interest shall retain (if they have standing to pursue such claims or matters) the right to bring any and all claims against the Omega Parties as to the Transfer Portfolio and the nature, extent, amount, status, or validity of any claim or any other rights of the Omega Parties as to the Transfer Portfolio.

7.      The Debtors and the New Operators are authorized and empowered to enter into, and to perform all of their obligations under the Transaction Documents and take any acts, and to

execute and perform such documents, including but not limited to any ancillary agreements, and take such other actions as are necessary, desirable, or reasonably required to effectuate the terms thereof.

8. Subject to paragraphs 9 and 10 of this Order, the Transferred Assets are transferred free and clear of all liens, claims, interests, or encumbrances, including but not limited to successor liability claims (the "Encumbrances"), provided, however, that for any party holding a secured interest in the Transferred Assets senior to any interest held by the Omega Parties (or an ownership interest, if any third party owns any goods or equipment located at any of the facilities comprising the Transfer Portfolio), the New Operators will receive such Transferred Assets subject to such interest unless such interest is satisfied in a manner agreed to by the holder thereof or as otherwise determined by this Court.

9. Certain of the Debtors are parties to Medicare provider agreements with the Secretary of the United States Department of Health and Human Services ("HHS"), acting through its designated component, the Centers for Medicare & Medicaid Services ("CMS"), to receive payment for services provided to Medicare beneficiaries pursuant to the provisions of, and regulations promulgated under, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll (the "Medicare Statute"). Notwithstanding anything to the contrary in this Order, the Medicare provider agreements shall be governed exclusively and solely by the Medicare Statute and applicable regulations, policies and procedures, including but not limited to the adjustment of any payments to the New Operators. Nothing herein shall affect or impair CMS' claims, rights, or ability to recoup, setoff, or otherwise recover Medicare overpayments from the Debtors and/or New Operators under the Medicare provider agreements in accordance with the Medicare statutes, regulations, policies, and procedures (the "Medicare Liabilities"). The Debtors and/or

New Operators shall retain their respective right to appeal CMS' overpayment determination in accordance with the applicable statutes and regulations.

10.     Notwithstanding anything herein to the contrary, the transfer of any assets pursuant to this Order shall not be free and clear of claims related to executory contracts or unexpired leases that may be assumed and assigned to the New Operators, unless (i) the Debtors provide notice of an intention to assume and assign such executory contract to a New Operator, (ii) the New Operator cures any defaults, to the extent that any exist, relating to such contract, and (iii) the New Operator provides adequate assurance of the future performance of such contract. For the avoidance of doubt, all parties' rights are reserved regarding (i) whether a contract is assumable and/or assumable and assignable, (ii) the cure amount related to any executory contract, and (iii) the ability of the applicable New Operator to provide adequate assurance of future performance.

11.     Nothing in this Order shall preclude the Debtors, the New Operators, or any other party in interest from settling, compromising, or otherwise liquidating any claims that HHS or CMS may assert in connection with the Debtors' Medicare provider agreements relating to the Transfer Portfolio or otherwise require any party to consummate a transition of the operations of any of the facilities comprising the Transfer Portfolio unless and until any such party either (i) affirmatively agrees to assume the Medicare Liabilities associated with such facilities or (ii) enters into an agreement or other stipulation with respect to such Medicare Liabilities with CMS, the Office of the Inspector General, and/or any other applicable governmental agency(ies). If such an agreement cannot be reached that is satisfactory to the New Operators, neither the Debtors, the New Operators, nor any other party in interest shall be deemed to have waived any rights under the Bankruptcy Code.

12.     This Order shall be binding upon and govern the acts of all persons and entities set forth on either of the Supplemental Certificates of Service or which otherwise received notice of the Motion, including but not limited to all creditors and stakeholders, any parties in interest, the Debtors and the New Operators, and their respective successors and assigns, and may be relied upon by all filing agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law to accept, file, register, or otherwise record or release any documents or instruments.

13.     Upon the closing of the transactions contemplated by the OTA and associated Transaction Documents, such transactions shall constitute a legal, valid, and effective transfer of the Transferred Assets and shall vest the New Operators with all right, title, and interest of the Debtors in and to the Transferred Assets, free and clear of all Encumbrances except as expressly set forth herein.

14.     Neither the New Operators, the Omega Parties, nor their respective affiliates, successors, or assigns shall be deemed, as a result of any action taken in connection with the transaction to: (i) be a successor to the Debtors; (ii) have, *de facto* or otherwise, merged with or into the Debtors; (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; (iv) be acquiring or assuming or liable for any liability, warranty, or other obligation of the Debtors, except to the extent expressly assumed in the OTA, or as set forth in paragraphs 9 or 10 of this Order. Except as expressly provided in the OTA or as set forth in paragraphs 9 or 10 of this Order, neither the New Operators nor the Omega Parties are assuming nor shall they in any way be liable or responsible, as successor or otherwise, for any claims, taxes, liabilities, debts, obligations, or Encumbrances of the Debtors or their estates of any kind or character in any way whatsoever relating to or arising from the Transferred Assets or

the Debtors' operation or use of the Transferred Assets prior to the Closing, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent. Further, other than as set forth in paragraphs 9 or 10 of this Order, all persons and entities are enjoined from (i) taking any action against the New Operators or the Omega Parties to recover any claim which such person or entity had solely against any of the Debtors or any of the Debtors' subsidiaries, affiliates, directors, officers, agents, representatives, employees, investors, owners, shareholders, partners, or joint venturers, and (ii) pursuing Encumbrances against the Transferred Assets.

15.     To the extent that the New Operators have not received the necessary licenses, evidence of licenses, and/or other regulatory approvals (including but not limited to, Medicare provider agreements to the extent required by applicable law or regulation) to operate the Transfer Portfolio facilities prior to Closing, the Debtors and the New Operators are hereby authorized to enter into any management or other agreement necessary for continuity of resident care, and this shall not create or effectuate any liability for prior obligations of Debtors, whether successor liability or otherwise.

16.     Liberty Mutual has asserted, in an informal response, that, with respect to each Transfer Portfolio facility for which Liberty Mutual has issued one or more surety bonds, such surety bonds only secure the obligations of the named principal on such bonds and will have to be replaced by the New Operators at the time of or prior to the transfer of ownership or transfer of operational control to the New Operators. Liberty Mutual, the Debtors and the New Operators will continue to negotiate a resolution relating to the cancellation or replacement of the surety bonds issued by Liberty Mutual, if required, in connection with the OTAs and Liberty Mutual's

and the Debtors' rights and defenses in that regard and under the surety bonds are expressly reserved and unimpaired.

17.     The terms of the OTA and any ancillary Transaction Documents may be waived, modified, amended, or supplemented by the written and signed agreement of the Debtors and the New Operators without further action of the Court; *provided, however*, that, in the Debtors' business judgment any such waiver, modification, amendment, or supplement is not material or is not adverse to the Debtors' estates, and provided further that any such waiver, modification, amendment, or supplement must be shared with the affected Objecting Parties prior to its entry or effectiveness, and the Debtors, the New Operators, and Omega are directed to engage in good faith with such affected Objecting Parties to address any concerns they may have.  To the extent the Debtors, the New Operators, the Omega Parties, and the affected Objecting Parties are unable to resolve any issues or differences as to the terms of any waiver, modification, amendment, or supplement to the OTA and any ancillary Transaction Documents, the Debtors shall seek appropriate supplemental relief or adjudication by this Court, and/or the approval of any such revised terms.

18.     This Court retains exclusive jurisdiction to enforce the provisions of this Order and the Transaction Documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, to resolve any dispute concerning this Order, the Transaction Documents, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Transaction Documents, and any related agreements and this Order.

19.     Notwithstanding any applicable Bankruptcy Rule or Local Bankruptcy Rule to the contrary, this Order is effective and enforceable immediately upon entry, no stay applies, and the

Debtors may complete the transactions contemplated hereby immediately.  This Order is intended to be, and in respects shall be, a final order regarding the relief granted herein, and shall not be an interim order.

20.    To the extent any provisions of this Order conflict with the terms and conditions set forth in the Motion or the Transaction Documents, this Order shall govern and control.

21.    Except as otherwise expressly provided for herein, the provisions of this Order shall not be affected by, and shall continue to be binding in, any subsequent chapter 7 proceeding, dismissal, appointment of a trustee or examiner, or chapter 11 plan, and the Debtors or their successors and assigns shall continue to carry out any further assurances and obligations under the Transaction Documents.  Further, any chapter 7 trustee or other fiduciary (including but not limited to any party appointed pursuant to any chapter 11 plan) shall not interfere with, and shall cooperate with the New Operators, in effectuating the terms of the OTA and related Transaction Documents.

**# # # End of Order # # #**

Order submitted by:

**DLA PIPER LLP (US)**

*/s/ Andrew Zollinger*
Andrew Zollinger, State Bar No. 24063944
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: andrew.zollinger@dlapiper.com

-and-

Thomas R. Califano  (admitted *pro hac vice*)
Dienna Corrado (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
Email:  thomas.califano@dlapiper.com
        dienna.corrado@dlapiper.com
-and-

Daniel M. Simon (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 736-7800
Facsimile:  (404) 682-7800
Email:  daniel.simon@dlapiper.com

*Counsel for the Debtors*

**EXHIBIT A**

**(Sorted Alphabetically)**

|  | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 1. | 4 West Holdings, Inc. | 18-30777 | 9732 |
| 2. | 4 West Investors, LLC | 18-30778 | 6021 |
| 3. | Aiken RE, LLC | 18-30850 | 1814 |
| 4. | Ambassador Rehabilitation and Healthcare Center, LLC | 18-30879 | 1636 |
| 5. | Anchor Rehabilitation and Healthcare Center of Aiken, LLC | 18-30868 | 9448 |
| 6. | Anderson RE TX, LLC | 18-30774 | 3630 |
| 7. | Anderson RE, LLC | 18-30861 | 1806 |
| 8. | Ark II Real Estate, LLC | 18-30840 | 3628 |
| 9. | Ark III Real Estate, LLC | 18-30847 | 0121 |
| 10. | Ark Mississippi Holding Company, LLC | 18-30788 | 3765 |
| 11. | Ark Real Estate, LLC | 18-30809 | 6014 |
| 12. | Ark South Carolina Holding Company, LLC | 18-30856 | 0002 |
| 13. | Ark Texas Holding Company, LLC | 18-30806 | 3739 |
| 14. | Battle Ground RE, LLC | 18-30825 | 1818 |
| 15. | Brushy Creek Rehabilitation and Healthcare Center, LLC | 18-30884 | 3292 |
| 16. | Bryan RE, LLC | 18-30775 | 3633 |
| 17. | Burleson RE, LLC | 18-30759 | 1777 |
| 18. | Capstone Rehabilitation and Healthcare Center, LLC | 18-30878 | 7871 |
| 19. | Charlottesville Pointe Rehabilitation and Healthcare Center, LLC | 18-30801 | 4467 |
| 20. | Charlottesville RE, LLC | 18-30829 | 0836 |
| 21. | Cleveland RE, LLC | 18-30811 | 6013 |
| 22. | Clinton RE, LLC | 18-30812 | 8109 |
| 23. | Cobblestone Rehabilitation and Healthcare Center, LLC | 18-30869 | 1612 |
| 24. | Collierville RE, LLC | 18-30841 | 8845 |
| 25. | Columbia RE, LLC | 18-30815 | 8838 |
| 26. | Columbia Rehabilitation and Healthcare Center, LLC | 18-30795 | 6772 |
| 27. | Comfort RE, LLC | 18-30764 | 1902 |
| 28. | Connersville RE, LLC | 18-30833 | 9824 |
| 29. | Corinth RE, LLC | 18-30814 | 1777 |
| 30. | Cornerstone Rehabilitation and Healthcare Center, LLC | 18-30800 | 8841 |
| 31. | Crystal Rehabilitation and Healthcare Center, LLC | 18-30807 | 8842 |
| 32. | Delta Rehabilitation and Healthcare Center of Cleveland, LLC | 18-30792 | 7212 |
| 33. | Descending Dove, LLC | 18-30842 | 8081 |
| 34. | Diboll RE, LLC | 18-30766 | 1939 |
| 35. | Easley RE II, LLC | 18-30857 | 1819 |
| 36. | Easley RE, LLC | 18-30854 | 1817 |
| 37. | Edgefield RE, LLC | 18-30836 | 3574 |
| 38. | Farmville RE, LLC | 18-30831 | 3442 |
| 39. | Farmville Rehabilitation and Healthcare Center, LLC | 18-30804 | 4464 |
| 40. | Fleetwood Rehabilitation and Healthcare Center, LLC | 18-30888 | 9615 |
| 41. | Fortress Health & Rehab of Rock Prairie, LLC | 18-30765 | 1314 |
| 42. | Granbury RE, LLC | 18-30769 | 1999 |
| 43. | Great Oaks RE, LLC | 18-30819 | 1731 |
| 44. | Great Oaks Rehabilitation and Healthcare Center, LLC | 18-30780 | 4357 |
| 45. | Greenville RE II, LLC | 18-30846 | 1798 |

| | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 46. | Greenville RE, LLC | 18-30843 | 1797 |
| 47. | Greenville Rehabilitation and Healthcare Center, LLC | 18-30882 | 3920 |
| 48. | Greenwood RE, LLC | 18-30816 | 1654 |
| 49. | Greer RE, LLC | 18-30839 | 1795 |
| 50. | Greer Rehabilitation and Healthcare Center, LLC | 18-30859 | 9462 |
| 51. | Grenada RE, LLC | 18-30821 | 1623 |
| 52. | Grenada Rehabilitation and Healthcare Center, LLC | 18-30786 | 8843 |
| 53. | Heritage Park Rehabilitation and Healthcare Center, LLC | 18-30787 | 9055 |
| 54. | Hillsville RE, LLC | 18-30834 | 2195 |
| 55. | Hillsville Rehabilitation and Healthcare Center, LLC | 18-30808 | 4463 |
| 56. | Holly Lane Rehabilitation and Healthcare Center, LLC | 18-30797 | 9103 |
| 57. | Holly RE, LLC | 18-30830 | 1816 |
| 58. | Holly Springs RE, LLC | 18-30823 | 1559 |
| 59. | Holly Springs Rehabilitation and Healthcare Center, LLC | 18-30789 | 6524 |
| 60. | Indianola RE, LLC | 18-30822 | 6022 |
| 61. | Indianola Rehabilitation and Healthcare Center, LLC | 18-30779 | 7203 |
| 62. | Italy RE, LLC | 18-30761 | 2086 |
| 63. | Iva RE, LLC | 18-30852 | 1801 |
| 64. | Iva Rehabilitation and Healthcare Center, LLC | 18-30874 | 0384 |
| 65. | Johns Island Rehabilitation and Healthcare Center, LLC | 18-30891 | 4898 |
| 66. | Joy of Bryan, LLC | 18-30837 | 4072 |
| 67. | Lampstand Health & Rehab of Bryan, LLC | 18-30767 | 2002 |
| 68. | Linley Park Rehabilitation and Healthcare Center, LLC | 18-30890 | 0525 |
| 69. | Macon Rehabilitation and Healthcare Center, LLC | 18-30880 | 9644 |
| 70. | Magnified Health & Rehab of Anderson, LLC | 18-30773 | 9060 |
| 71. | Manna Rehabilitation and Healthcare Center, LLC | 18-30863 | 9441 |
| 72. | Marietta RE, LLC | 18-30867 | 1809 |
| 73. | McCormick RE, LLC | 18-30864 | 1808 |
| 74. | McCormick Rehabilitation and Healthcare Center, LLC | 18-30873 | 3193 |
| 75. | Memphis RE, LLC | 18-30844 | 8846 |
| 76. | Midland RE, LLC | 18-30832 | 5138 |
| 77. | Midland Rehabilitation and Healthcare Center, LLC | 18-30799 | 9679 |
| 78. | Moultrie RE, LLC | 18-30848 | 9943 |
| 79. | Mountain View Rehabilitation and Healthcare Center, LLC | 18-30798 | 9227 |
| 80. | Natchez RE, LLC | 18-30818 | 6019 |
| 81. | Natchez Rehabilitation and Healthcare Center, LLC | 18-30803 | 6773 |
| 82. | New Ark Master Tenant, LLC | 18-30885 | 7893 |
| 83. | New Ark Operator Holdings, LLC | 18-30893 | 7623 |
| 84. | New Redeemer Health & Rehab of Pickens, LLC | 18-30881 | 5321 |
| 85. | Olive Leaf Holding Company, LLC | 18-30845 | 0129 |
| 86. | Olive Leaf, LLC | 18-30866 | 0001 |
| 87. | Omega Health & Rehab of Greenville, LLC | 18-30870 | 9461 |
| 88. | Orianna Health Systems, LLC | 18-30785 | 5160 |
| 89. | Orianna Holding Company, LLC | 18-30784 | 1323 |
| 90. | Orianna Investment, Inc. | 18-30781 | 1141 |
| 91. | Orianna SC Operator Holdings, Inc. | 18-30871 | 0383 |
| 92. | Palladium Hospice and Palliative Care, LLC | 18-30887 | 1873 |
| 93. | Patewood Rehabilitation and Healthcare Center, LLC | 18-30865 | 9457 |
| 94. | Picayune RE, LLC | 18-30827 | 9749 |
| 95. | Picayune Rehabilitation and Healthcare Center, LLC | 18-30793 | 9183 |
| 96. | Pickens RE II, LLC | 18-30862 | 1823 |

|  | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 97. | Pickens RE, LLC | 18-30860 | 1821 |
| 98. | Piedmont RE, LLC | 18-30849 | 1800 |
| 99. | Poinsett Rehabilitation and Healthcare Center, LLC | 18-30876 | 0713 |
| 100. | Poplar Oaks Rehabilitation and Healthcare Center, LLC | 18-30813 | 4771 |
| 101. | Portland RE, LLC | 18-30826 | 1822 |
| 102. | Provo RE, LLC | 18-30835 | 3568 |
| 103. | Rainbow Rehabilitation and Healthcare Center, LLC | 18-30802 | 4772 |
| 104. | River Falls Rehabilitation and Healthcare Center, LLC | 18-30886 | 9788 |
| 105. | Riverside Rehabilitation and Healthcare Center, LLC | 18-30883 | 3951 |
| 106. | Rock Prairie RE, LLC | 18-30772 | 3636 |
| 107. | Rocky Mount RE, LLC | 18-30838 | 5904 |
| 108. | Rocky Mount Rehabilitation and Healthcare Center, LLC | 18-30810 | 4466 |
| 109. | Roy RE, LLC | 18-30817 | 5142 |
| 110. | Scepter Rehabilitation and Healthcare Center, LLC | 18-30872 | 1630 |
| 111. | Scepter Senior Living Center, LLC | 18-30875 | 1621 |
| 112. | Simpsonville RE II, LLC | 18-30858 | 1804 |
| 113. | Simpsonville RE, LLC | 18-30855 | 1802 |
| 114. | Simpsonville Rehabilitation and Healthcare Center, LLC | 18-30889 | 3564 |
| 115. | Snellville RE, LLC | 18-30851 | 9933 |
| 116. | Southern Oaks Rehabilitation and Healthcare Center, LLC | 18-30877 | 1141 |
| 117. | The Bluffs Rehabilitation and Healthcare Center, LLC | 18-30796 | 9314 |
| 118. | The Ridge Rehabilitation and Healthcare Center, LLC | 18-30892 | 1456 |
| 119. | Trinity Mission Health & Rehab of Connersville, LLC | 18-30805 | 8787 |
| 120. | Trinity Mission of Burleson, LLC | 18-30762 | 2585 |
| 121. | Trinity Mission of Comfort, LLC | 18-30763 | 2573 |
| 122. | Trinity Mission of Diboll, LLC | 18-30768 | 2581 |
| 123. | Trinity Mission of Granbury, LLC | 18-30771 | 2582 |
| 124. | Trinity Mission of Italy, LLC | 18-30760 | 2576 |
| 125. | Trinity Mission of Winnsboro, LLC | 18-30776 | 2583 |
| 126. | Utah Valley Rehabilitation and Healthcare Center, LLC | 18-30782 | 9661 |
| 127. | Vicksburg RE, LLC | 18-30828 | 0150 |
| 128. | Victory Rehabilitation and Healthcare Center, LLC | 18-30794 | 9485 |
| 129. | Wadesboro RE, LLC | 18-30853 | 9929 |
| 130. | Wide Horizons RE, LLC | 18-30820 | 5144 |
| 131. | Wide Horizons Residential Care Facility, LLC | 18-30790 | 9387 |
| 132. | Winnsboro RE, LLC | 18-30770 | 2134 |
| 133. | Woodlands Rehabilitation and Healthcare Center, LLC | 18-30791 | 9127 |
| 134. | Yazoo City RE, LLC | 18-30824 | 8844 |
| 135. | Yazoo City Rehabilitation and Healthcare Center, LLC | 18-30783 | 7216 |

**<u>EXHIBIT 1</u>**

**AMENDED SETTLEMENT AGREEMENT**

## AMENDED SETTLEMENT AGREEMENT

This AMENDED SETTLEMENT AGREEMENT (this "*Agreement*") is made and entered into as of the 30th day of April, 2018, by and between 4 West Holdings, Inc. ("*4 West*") and the Existing Tenants[1] and the other parties related to 4 West set forth on the signature page to this Agreement (4 West and such parties are collectively referred to as the "*Company*" or the "*Debtors*"), on the one hand, and OHI Asset RO, LLC, a Maryland corporation ("*Omega*") and the Existing Landlords (as defined in the RSA) (Omega and the Existing Landlords are collectively referred to as the "*Omega Entities*"), on the other hand (the Company and the Omega Entities are collectively referred to as the "*Parties*," and any one of the foregoing is referred to singly as a "*Party*").

<u>RECITALS</u>

**WHEREAS**, on March 6, 2018, the Company initiated voluntary reorganization cases (the "*Bankruptcy Cases*") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*"), in the United States Bankruptcy Court in the Northern District of Texas, Dallas Division (the "*Bankruptcy Court*");

**WHEREAS**, the Existing Tenants and the Existing Landlords, among others, are parties to three active leases (and associated subleases), namely, the Master Lease Agreement (Indiana Region), effective November 27, 2013, the Master Lease Agreement (South East Region), effective November 27, 2013, and the Master Lease Agreement between OHI Asset (SC) Greenville, LLC, OHI Asset (GA) Macon, LLC, OHI Asset (SC) Orangeburg, LLC as Landlords and New Ark Master Tenant, LLC, effective June 27, 2014 (collectively, and as amended from time to time thereafter, the "*Master Lease*"), and certain other Operative Documents pursuant to which the Existing Tenants operate various skilled nursing facilities, assisted living facilities, personal care centers, and similar facilities (collectively, the "*Subject Facilities*" and individually, a "*Facility*") owned by the Existing Landlords;

**WHEREAS**, as a result of various operational issues, the Existing Tenants are unable to fulfill certain of their obligations including, among other things, those Rent, Impositions (each as defined in the Operative Documents), and other obligations arising under the Master Lease and Guaranty with the Existing Landlords, certain legacy liabilities, and other ongoing obligations to various vendors and suppliers of services to the Existing Tenants and the Subject Facilities operated by the Existing Tenants, and other creditors of the Existing Tenants;

**WHEREAS**, the Company acknowledges that it is in default of certain of its obligations under the Master Lease, among other of the Operative Documents;

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Restructuring Support Agreement dated as of March 6, 2018 by and among (i) 4 West, (ii) the "Existing Tenants" identified therein, (iii) OHI Asset RO, LLC, (iv) the other entities set forth on the signature page thereto, and (v) SC-GA 2018 Partners, LLC (as amended from time to time pursuant to the terms thereof, the "**RSA**").

**WHEREAS**, the Company believes that its best opportunity to reorganize requires the divestiture of the Transfer Portfolio, as the Company cannot pay or otherwise satisfy the ongoing obligations relating to operating the Transfer Portfolio;

**WHEREAS**, the Company claims that some or all of the lease transactions contained in the Master Lease and other Operative Documents are subject to recharacterization as secured financial transactions under applicable state or federal law;

**WHEREAS**, the Omega Entities dispute that any of the lease transactions contained in the Master Lease and other Operative Documents are susceptible to recharacterization as secured financial transactions;

**WHEREAS**, this Agreement is the culmination of lengthy, arm's-length negotiations among the Parties;

**WHEREAS**, the Company and the Omega Entities have agreed to transfer all assets associated with what is referred to as the "Transfer Portfolio," as set forth on Schedule V to the RSA, and thereby to resolve certain disputes relating to the Transfer Portfolio by this Agreement;

**WHEREAS**, in the RSA, the Parties have negotiated and agreed to (i) certain transactions relating to the Company's capital structure, including the Company's obligations to the Omega Entities, and the transaction whereby the Restructuring Portfolio will be transferred to the New Landlord pursuant to the terms of the Plan if confirmed by the Bankruptcy Court; (ii) the allowance and treatment of the Omega Allowed Claim (as defined in the RSA); and (iii) the settlement and release of certain claims and disputes, which allow for the transition of the Transfer Portfolio to one or more New Operators;

**WHEREAS**, the RSA, which describes the Restructuring Transaction and all other actions necessary to implement or satisfy the terms, conditions, and agreements contained in the RSA, is to be realized through the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Case No. 18-30777 (N.D. Tex.), Dkt. No. 21], to be confirmed in the Bankruptcy Cases (such plan, including all exhibits, schedules, supplements, appendices, annexes, and attachments thereto, as amended, modified, or supplemented from time to time, the "**Plan**");

**WHEREAS**, the Parties (i) have engaged in extensive negotiations and concluded that the execution and delivery by each respective Party of this Agreement will avoid protracted and expensive litigation, and (ii) acknowledge that each Party will receive substantial value and benefit if the settlement contained herein is consummated;

**WHEREAS**, the Parties entered into the Release and Settlement Agreement, dated March 12, 2018 (the "***Original Settlement Agreement***") and, on March 13, 2018, the Debtors filed a motion with the Bankruptcy Court seeking approval of the Original Settlement Agreement (the "***Settlement Motion***"); and

**WHEREAS**, certain parties filed objections to the Settlement Motion; and

*WHEREAS*, the Parties desire to resolve, if possible, certain objections to the Settlement Motion, by, among other things, amending and restating the Original Settlement Agreement on the terms and conditions set forth in this Agreement; and

*WHEREAS*, pursuant to Section 10 of the Original Settlement Agreement, the Parties may amend the Original Settlement Agreement by a duly executed writing, subject to approval by the Bankruptcy Court:

<u>AGREEMENT</u>

**NOW, THEREFORE**, in consideration of the promises, releases, agreements, and covenants contained herein, and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

1.      <u>Incorporation of Recitals</u>.  The Parties acknowledge and agree that the Recitals set forth above are true and accurate, and incorporate the Recitals into this Agreement as if fully set forth herein.

2.      <u>Conditions to Settlement and Effective Date</u>.  For this Agreement to become effective, the Bankruptcy Court must enter an order approving this Agreement (the "***9019 Settlement Order***").  The date upon which the 9019 Settlement Order is final and non-appealable is the effective date of this Agreement (the "***Effective Date***").

3.      <u>Settlement</u>.  The foregoing sets forth the terms and conditions of the Parties' respective obligations, which obligations shall become binding only upon the Effective Date:

(a)      The Omega Entities have entered into and are bound by the RSA, including the terms of the Restructuring Transaction and the Transfer Transaction described therein, the agreement to provide postpetition financing the agreement to accept "Interim Rent" in a reduced amount as described therein.

(b)      Subject to confirmation of the Plan on the specific terms and timeline set forth in the RSA, that portion of the Master Lease corresponding to the Restructuring Portfolio shall be recharacterized for purposes of these Bankruptcy Cases as a secured financing.

(c)      The Master Lease shall be deemed severable as to the Restructuring Portfolio and the Transfer Portfolio and shall be deemed rejected solely as to the Transfer Portfolio.

(d)      Any rejection damages arising from the deemed rejection set forth in subparagraph (c) above shall be calculated under applicable state law, as modified by the Bankruptcy Code.  Such rejection damages shall, if allowed, be included in, and not in addition to, the Omega Allowed Claim (which is used as a definitional term only for purposes of this Agreement, as this Agreement does not settle or otherwise resolve the Omega Allowed Claim).

(e)     From and after the date each property that comprises the Transfer Portfolio undergoes a Full Transition (as defined below), the Omega Entities will not accrue any further obligations that would qualify as an administrative claim under the Bankruptcy Code, whether under Section 503 of the Bankruptcy Code, Section 365(d)(3) of the Bankruptcy Code, or otherwise, on account of such property that comprises the Transfer Portfolio.

(f)     The Company will cooperate in good faith and exercise commercially reasonable efforts to consensually transition each of the Subject Facilities that constitute the Transfer Portfolio and all of the assets relating to or necessary to operate the Subject Facilities that constitute the Transfer Portfolio (other than any accounts receivable associated with the Subject Facilities that constitute the Transfer Portfolio, which accounts receivable are excluded from the assets being transferred) to the Persons designated by the Existing Transfer Portfolio Landlords pursuant to one or more Operations Transfer Agreements as the New Operators.  The Transfer Transaction must take place by and through the Transfer Transaction Procedures, as outlined in **Schedule I** hereto, and the completion of a transition of the operations and assets of each facility shall be referred to as a "**Full Transition**."

(g)     The form Operations Transfer Agreement, filed with the Bankruptcy Court on April 19, 2018 in conjunction with the Settlement Motion, contains the basic terms that are customary in the industry and is a form reasonably acceptable to the Company.  To the extent there are necessary deviations from the sample Operations Transfer Agreement, the Parties will work in good faith to agree upon such deviations on terms that are consistent with this Agreement and its purpose.

(h)     Until completion of a Full Transition, the Company will operate the Subject Facilities that constitute the Transfer Portfolio in the ordinary course of business, consistent with past practices.

4.     Releases.

(a)     [Reserved]

(b)     Releases by the Omega Entities.  Subject to the right to enforce the terms of this Agreement and, if allowed, the Omega Allowed Claim, from and after the date of a Full Transition of each property that comprises the Transfer Portfolio, the Omega Entities, each on behalf of itself and its current and former predecessors, successors, affiliates, subsidiaries, equity holders, directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors hereby RELEASES, ACQUITS, AND FOREVER DISCHARGES the Company and its current and former predecessors, successors, affiliates, subsidiaries, equity holders, directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers and other professional advisors from any and all claims that would be entitled to status as administrative claims under the Bankruptcy Code, whether under Section 503 of the Bankruptcy Code, Section 365(d)(3) of the Bankruptcy Code, or otherwise, on account of any property that

comprises the Transfer Portfolio.

(c) For the avoidance of doubt, the foregoing releases are not at this time intended to include the Plan Releases, as that term is defined in the RSA, regardless of any language in this Agreement to the contrary.

5. <u>No Admissions</u>. The execution of this Agreement by the Parties shall not be deemed as an admission of liability by any of them with respect to any matter whatsoever, whether raised in the Bankruptcy Cases, or not. The Parties specifically acknowledge and agree that this Agreement is made to compromise and settle certain of the Parties' respective rights, defenses, claims, and counterclaims related to the Transfer Portfolio, and that this Agreement cannot be introduced into evidence in any action or proceeding filed in any court, or in any arbitration or other administrative proceeding, except to enforce the terms of this Agreement.

6. <u>Attorneys' Fees, Costs, and Expenses</u>. Except as otherwise provides in the RSA or the Plan, each Party shall bear its own costs, expenses, and attorneys' fees in connection with the negotiation and execution of this Agreement.

7. <u>Certain Representations and Warranties</u>. Each Party represents and warrants to the other Parties, as an inducement for the others to enter into this Agreement:

(a) such party has read and understands all of the terms and conditions set forth in this Agreement;

(b) such party has had the benefit of legal counsel of its own choosing and has relied upon the advice of such counsel in deciding to execute this Agreement;

(c) such party, without promise of benefit other than as set forth herein, is freely and voluntarily entering into this Agreement;

(d) such party has the authority to enter into this Agreement;

(e) such party is the owner of all claims to be released by it herein, has not assigned or transferred, or purported to assign or transfer, voluntarily or involuntarily, or by operation of law, any of the claims released by it hereunder or any portion thereof;

(f) there is good and valid consideration to support such party's entering into this Agreement and to bind such party by the terms and conditions of this Agreement; and

(g) such party was not coerced, threatened, or otherwise forced to sign this Agreement, and its signature appearing hereinafter is voluntary and genuine and was duly and validly authorized and given.

8. <u>Entire Agreement</u>. This Agreement sets forth all of the terms and conditions of the Parties' settlement of the claims and rights relating to the Transfer Portfolio, and supersedes any prior negotiations between the Parties, or any written agreement or summary of this

settlement among the Parties. The Parties each specifically warrant that this Agreement is executed without reliance upon any statement or representation by any other party hereto, except as expressly stated herein.

9. <u>Further Assurances</u>. Each Party hereby agrees to execute such documents and take such other actions as may be reasonably necessary or appropriate to comply with the terms or intent of this Agreement.

10. <u>Amendment</u>. The terms of this Agreement shall not be altered, amended, modified, or otherwise changed in any respect except by a writing duly executed by all of the Parties hereto and approved by the Bankruptcy Court (other than deviations to the sample Operations Transfer Agreement agreed to by the Parties thereto and hereto, which deviations do not require approval of the Bankruptcy Court except as otherwise provided by the 9019 Settlement Order).

11. <u>Severability</u>. Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement shall be prohibited by or invalid under applicable law, then such provision shall be ineffective only to the extent of such prohibition, invalidity, or lack of approval, without invalidating the remainder of such provision or the remaining provisions of this Agreement, all of which shall remain fully binding and enforceable unless a Party declares in writing delivered to all other Parties that such affected provision is of the essence of this Agreement (and the Parties hereby stipulate and agree that all of the provisions of Section 3 of the Agreement are of the essence). In the event of such declaration by a Party, such Party shall be entitled to seek from the Bankruptcy Court appropriate equitable relief to rescind or reform this Agreement.

12. <u>Binding Agreement</u>. This Agreement shall be binding upon the Parties and their respective representatives, successors, and assigns and shall similarly inure to the benefit of their respective representatives, successors, and assigns.

13. <u>No Third-Party Beneficiaries</u>. No person other than the Parties hereto and their respective successors, assigns, and representatives is intended to be or shall be a beneficiary of this Agreement.

14. <u>Construction</u>. Should any provision of this Agreement require interpretation, the Parties agree that the judicial body interpreting or construing such provision shall not apply any assumption that the terms of this Agreement shall be more strictly construed against any party because of the rule of construction that an instrument is to be construed more strictly against the drafting party, each party hereby acknowledging and agreeing that all Parties and their respective attorneys have participated in the preparation of this Agreement.

15. <u>Section Headings; References; Gender; and Number</u>. The titles of the sections herein have been inserted as a matter of convenience and for reference only and shall not control or affect the meaning or construction of any of the terms of the provisions herein. Words of any gender used in this Agreement shall be deemed to include the other gender or the neuter, and

words in the singular shall be deemed to include the plural and the plural to include the singular when the sense requires.

16.    <u>Time is of the Essence</u>.  Time is of the essence with regard to all provisions of this Agreement.

17.    <u>**Governing Law**</u>.  **THIS AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE (OR, AS APPLICABLE, THE BANKRUPTCY CODE AND THE FEDERAL RULES OF BANKRUPTCY PROCEDURE), WITHOUT GIVING EFFECT TO ITS PRINCIPLES OF CONFLICT OR CHOICE OF LAW.  IF THERE IS ANY DISPUTE OR LITIGATION OF ANY KIND RELATING TO THE TERMS, ENFORCEMENT, OR ANY OTHER MATTERS PERTAINING TO THIS AGREEMENT, THE BANKRUPTCY COURT SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION TO RESOLVE SUCH DISPUTE OR LITIGATION, AND THE PARTIES HEREBY CONSENT TO SUCH JURISDICTION IN ALL RESPECTS.**

18.    <u>Final Order</u>.  For the avoidance of doubt, the Parties consent to the entry of the 9019 Settlement Order as a final judgment or order if it is determined that the Court, absent consent of the Parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

19.    <u>Counterparts; Electronic Signatures</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same Agreement, and the signature pages from any counterpart may be appended to any other counterpart to assemble fully-executed counterparts.  Counterparts of this Agreement also may be exchanged via electronic machines, and an electronic facsimile or electronic mail copy of any party's signature shall be deemed to be an original signature for all purposes.

20.    The parties hereto acknowledge and agree that this Agreement amends, restates, replaces, and supersedes, in its entirety, the Original Settlement Agreement.

*[Signatures appear on following page; remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement or caused the same to be executed by their respective duly authorized officers as of the date first set forth above.

CURRENT LANDLORDS:
OHI Asset (MS) Cleveland, LLC
OHI Asset (MS) Clinton, LLC
OHI Asset (MS) Columbia, LLC
OHI Asset (MS) Corinth, LLC
OHI Asset (MS) Byhalia, LLC

OHI Asset (MS) Greenwood, LLC
OHI Asset (MS) Grenada, LLC
OHI Asset (MS) Holly Springs, LLC
OHI Asset (MS) Indianola, LLC
OHI Asset (MS) Natchez, LLC
OHI Asset (MS) Picayune, LLC
OHI Asset (MS) Vicksburg, LLC
OHI Asset (MS) Yazoo City, LLC
OHI Asset (SC) Edgefield, LLC
OHI Asset (VA) Charlottesville, LLC
OHI Asset (VA) Farmville, LLC
OHI Asset (VA) Hillsville, LLC
OHI Asset (VA) Rocky Mount, LLC

OHI Asset (SC) Pickens East Cedar, LLC
OHI Asset (SC) Greenville North, LLC
OHI Asset (SC) Simpsonville SE Main,
LLC
OHI Asset (SC) Easley Crestview, LLC
OHI Asset (SC) Easley Anne, LLC
OHI Asset (SC) Piedmont, LLC
OHI Asset (SC) Anderson, LLC
OHI Asset (SC) Simpsonville West Curtis,
LLC
OHI Asset (SC) Simpsonville West Broad,
LLC
OHI Asset (SC) Pickens Rosemond, LLC
OHI Asset (SC) Aiken, LLC
OHI Asset (SC) Greer, LLC
OHI Asset (SC) Marietta, LLC
OHI Asset (SC) McCormick, LLC
OHI Asset (TN) Bartlett, LLC
OHI Asset (TN) Collierville, LLC
OHI Asset (GA) Snellville, LLC
OHI Asset (GA) Moultrie, LLC
OHI Asset (NC) Wadesboro, LLC
OHI Asset (TN) Memphis, LLC
OHI Asset (SC) Greenville Griffith, LLC

By: _____
Name: Vikas Gupta
Title:   Senior Vice President, Acquisitions
and Development

OHI ASSET RO, LLC
By: _____
Name: Vikas Gupta
Title:   Senior Vice President, Acquisitions
and Development

- 8 -

COMPANY:

4 West Holdings, Inc.
4 West Investors, LLC
Aiken RE, LLC
Ambassador Rehabilitation and Healthcare
Center, LLC
Anchor Rehabilitation and Healthcare
Center of Aiken, LLC
Anderson RE TX, LLC
Anderson RE, LLC
Ark II Real Estate, LLC
Ark III Real Estate, LLC
Ark Mississippi Holding Company, LLC
Ark Real Estate, LLC
Ark South Carolina Holding Company,
LLC
Ark Texas Holding Company, LLC
Battle Ground RE, LLC
Brushy Creek Rehabilitation and Healthcare
Center, LLC
Bryan RE, LLC
Burleson RE, LLC
Capstone Rehabilitation and Healthcare
Center, LLC
Charlottesville Pointe Rehabilitation and
Healthcare Center, LLC
Charlottesville RE, LLC
Cleveland RE, LLC
Clinton RE, LLC
Cobblestone Rehabilitation and Healthcare
Center, LLC
Collierville RE, LLC
Columbia RE, LLC
Columbia Rehabilitation and Healthcare
Center, LLC
Comfort RE, LLC
Connersville RE, LLC
Corinth RE, LLC
Cornerstone Rehabilitation and Healthcare
Center, LLC
Crystal Rehabilitation and Healthcare
Center, LLC
Delta Rehabilitation and Healthcare Center
of Cleveland, LLC
Descending Dove, LLC

Diboll RE, LLC
Easley RE II, LLC
Easley RE, LLC
Edgefield RE, LLC
Farmville RE, LLC
Farmville Rehabilitation and Healthcare
Center, LLC
Fleetwood Rehabilitation and Healthcare
Center, LLC
Fortress Health & Rehab of Rock Prairie,
LLC
Granbury RE, LLC
Great Oaks RE, LLC
Great Oaks Rehabilitation and Healthcare
Center, LLC
Greenville RE II, LLC
Greenville RE, LLC
Greenville Rehabilitation and Healthcare
Center, LLC
Greenwood RE, LLC
Greer RE, LLC
Greer Rehabilitation and Healthcare Center,
LLC
Grenada RE, LLC
Grenada Rehabilitation and Healthcare
Center, LLC
Heritage Park Rehabilitation and Healthcare
Center, LLC
Hillsville RE, LLC
Hillsville Rehabilitation and Healthcare
Center, LLC
Holly Lane Rehabilitation and Healthcare
Center, LLC
Holly RE, LLC
Holly Springs RE, LLC
Holly Springs Rehabilitation and Healthcare
Center, LLC
Indianola RE, LLC
Indianola Rehabilitation and Healthcare
Center, LLC
Italy RE, LLC
Iva RE, LLC
Iva Rehabilitation and Healthcare Center,
LLC
Johns Island Rehabilitation and Healthcare
Center, LLC

Joy of Bryan, LLC
Lampstand Health & Rehab of Bryan, LLC
Linely Park Rehabilitation and Healthcare Center, LLC
Macon Rehabilitation and Healthcare Center, LLC
Magnified Health & Rehab of Anderson, LLC
Manna Rehabilitation and Healthcare Center, LLC
Marietta RE, LLC
McCormick RE, LLC
McCormick Rehabilitation and Healthcare Center, LLC
Memphis RE, LLC
Midland RE, LLC
Midland Rehabilitation and Healthcare Center, LLC
Moultrie RE, LLC
Mountain View Rehabilitation and Healthcare Center, LLC
Natchez RE, LLC
Natchez Rehabilitation and Healthcare Center, LLC
New Ark Master Tenant, LLC
New Ark Operator Holdings, LLC
New Redeemer Health & Rehab of Pickens, LLC
Olive Leaf Holding Company, LLC
Olive Leaf, LLC
Omega Health & Rehab of Greenville, LLC
Orianna Health Systems, LLC
Orianna Holding Company, LLC
Orianna Investment, Inc.
Orianna SC Operator Holdings, Inc.
Palladium Hospice and Palliative Care, LLC
Patewood Rehabilitation and Healthcare Center, LLC
Picayune RE, LLC
Picayune Rehabilitation and Healthcare Center, LLC
Pickens RE II, LLC
Pickens RE, LLC
Piedmont RE, LLC
Poinsett Rehabilitation and Healthcare Center, LLC

Poplar Oaks Rehabilitation and Healthcare Center, LLC
Portland RE, LLC
Provo RE, LLC
Rainbow Rehabilitation and Healthcare Center, LLC
River Falls Rehabilitation and Healthcare Center, LLC
Riverside Rehabilitation and Healthcare Center, LLC
Rock Prairie RE, LLC
Rocky Mount RE, LLC
Rocky Mount Rehabilitation and Healthcare Center, LLC
Roy RE, LLC
Scepter Rehabilitation and Healthcare Center, LLC
Scepter Senior Living Center, LLC
Simpsonville RE II, LLC
Simpsonville RE, LLC
Simpsonville Rehabilitation and Healthcare Center, LLC
Snellville RE, LLC
Southern Oaks Rehabilitation and Healthcare Center, LLC
The Bluffs Rehabilitation and Healthcare Center, LLC
The Ridge Rehabilitation and Healthcare Center, LLC
Trinity Mission Health & Rehab of Connersville, LLC
Trinity Mission of Burleson, LLC
Trinity Mission of Comfort, LLC
Trinity Mission of Diboll, LLC
Trinity Mission of Granbury, LLC
Trinity Mission of Italy, LLC
Trinity Mission of Winnsboro, LLC
Utah Valley Rehabilitation and Healthcare Center, LLC
Vicksburg RE, LLC
Victory Rehabilitation and Healthcare Center, LLC
Wadesboro RE, LLC
Wide Horizons RE, LLC
Wide Horizons Residential Care Facility, LLC

Winnsboro RE, LLC
Woodlands Rehabilitation and Healthcare
Center, LLC
Yazoo City RE, LLC
Yazoo City Rehabilitation and Healthcare
Center, LLC

By:_____

Name:  Louis Robichaux
Title:   Chief Restructuring Officer

- 11 -

## Schedule I – Terms of the Transfer Transaction

Information related to operations of the Facilities in the Transfer Portfolio shall be provided to Omega by or through 4 West pursuant to the terms of a confidentiality agreement and may only be shared with prospective New Operators that have signed a confidentiality agreement with Omega and/or the appropriate Existing Transfer Portfolio Landlord. Neither Omega nor any prospective New Operator may contact any Facility in the Transfer Portfolio directly or otherwise take any action that might disrupt or otherwise affect the operations or administration of any of the Subject Facilities in the Transfer Portfolio. Any requests for Facility tours or inspections or meetings with Facility management shall be coordinated between Vikas Gupta, acting on behalf of Omega, and James Kent, acting on behalf of 4 West. The Transfer Transaction will be accomplished pursuant to Operations Transfer Agreements to be negotiated by 4 West and such New Operators.

The New Operators will agree to exercise commercially reasonable efforts to complete the transactions in a prompt and orderly fashion to ensure that the Transfer Portfolio's operations are preserved and maintained to the maximum extent possible.

The Subject Facilities in the Transfer Portfolio located in Tennessee, North Carolina, Indiana and Virginia will be prioritized to transition first and as soon as practicable. The applicable New Operators will agree to submit state licensure applications in those States as soon as possible.

The Transfer Transaction will also include the following terms:

(i)     New Operators will be offered the existing therapy agreements for the remainder of the current term, and the existing dietary, housekeeping, and laundry services agreements for a period of one year. Should New Operators choose to terminate these contracts, the Company will not make any representations related to available staffing or staffing levels in dietary, housekeeping, laundry, or therapy.

(ii)     Subject to obtaining all necessary approvals, including the approval of the Bankruptcy Court of the 9019 Settlement Order, all Transfer Transactions shall be substantially completed by June 30, 2018.

(iii)     Upon the transitioning of each Facility in the Transfer Portfolio, the Master Lease will be terminated as to such Facility, including the related Existing Tenant's option to purchase such Facility.