Louis R. Strubeck, Jr.
Ryan E. Manns
**Norton Rose Fulbright US LLP**
2200 Ross Avenue
Suite 3600
Dallas, TX 75201-7932
Email: louis.strubeck@nortonrosefulbright.com
      ryan.manns@nortonrosefulbright.com

Francis J. Lawall (admitted *pro hac vice*)
Donald J. Detweiler (admitted *pro hac vice*)
Joanna J. Cline (admitted *pro hac vice*)
**Pepper Hamilton LLP**
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19899-1709
E-mail: lawallf@pepperlaw.com
      detweild@pepperlaw.com
      clinej@pepperlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 4 WEST HOLDINGS, INC., *et al.*, | ) | Case No. 18-30777-(HDH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
OF SECTION 502(d) TO THE DISALLOWANCE OF THE OMEGA
ENTITIES' CLAIMS IN THE DEBTORS" BANKRUPTCY CASES**

The Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 bankruptcy cases (the "Bankruptcy Cases"), by and through their undersigned counsel, hereby submits, at the request of the Court[1], this *Memorandum Of Law In Support Of The Application Of Section 502(d) To The Disallowance Of The Omega Entities' Claims In The Debtors' Bankruptcy Cases* (the "Memorandum of Law"). In support of this Memorandum of Law the Committee states as follows:

---

[1] At the June 7, 2018 hearing on the Committee's *Motion to Compel Production of Documents* [Docket No. 447], the Court requested the Debtors and the Committee submit a short brief addressing the application of section 502(d) to the allowance/disallowance of the Omega Entities' claims in the Debtors' bankruptcy cases. Transcript of June 7, 2018 Hearing, at p. 46. The Court indicated it would prefer to rule on the *Motion to Compel* after the Standing Motion is determined. *Id.*

#49038340 v1

**PRELIMINARY STATEMENT**

On May 29, 2018, the Committee filed its *Motion For Standing To Pursue Derivative Claims Against The Omega Parties On Behalf Of The Debtors' Estates* (the "Standing Motion") [Docket No. 469]. Exhibit A to the Standing Motion includes a draft of a complaint (the "Complaint") that identifies various claims against the Omega Entities, including: Count I, Avoidance of Constructive Fraudulent Transfer – 2013 Leverage Buyout; Count II, Recharacterization of the Master Leases; Count III, Avoidance of Constructive Fraudulent Transfer – 2017 Working Capital Loan; and Count IV, Declaratory Judgment Of Extent of Omega's Secured Interest.

The Committee is in the process of amending the Draft Complaint attached to the Standing Motion to identify additional claims and causes of action, including claims for: subordination under section 510(c) of the Bankruptcy Code; and determination of amount of secured claim under section 506(a). The Standing Motion will, if granted, benefit the Debtors' estates and reduce, if not eliminate, the Omega Entities' claims against the Debtors' estates, thereby resulting in a far greater recovery to the Debtors' unsecured creditors than presently proposed under the Debtors' proposed Joint Plan of Reorganization.

While the Committee asserts several different challenges to the Omega Entities' alleged claims, throughout these bankruptcy proceedings, the Debtors and the Omega Entities have repeatedly taken the position that the fraudulent transfer claims alleged in Count I of the draft Complaint (*i.e.* the challenge to the 2013 Leveraged Buyout) are barred by the statute of limitations.[2]

---

[2] As noted above, the Committee asserts several additional claims against the Omega Entities, including claims arising under sections 506(a), 510(b), 510(c), and recharacterization of master leases. Section 502(d) applies only to the claims asserted under section 544(b).

Contrary to the Debtors' and the Omega Entities' assertions, even if the statute of limitations served as a bar from asserting fraudulent transfer claims against the Omega Entities (which the Committee respectfully submits it does not), the Debtors' estates and the Committee still retain the ability to assert the claims *as an objection* to any proof of claim filed by the Omega Entities pursuant to section 502(d) of the Bankruptcy Code. Indeed, as recognized by this Court: "[t]he clear majority of cases, including decisions from several Circuit Courts of Appeals, have held that, while the statute of limitations . . . may present an obstacle in successfully avoiding a transfer of property under the avoidance statutes, ***it does not prevent . . . asserting an avoidable transfer defensively to disallow a proof of claim under section 502(d)*** of the Bankruptcy Code unless or until the claimant returns property, relinquishes a lien, or the like." *See e.g.*, *Litzler v. Cooper (In re Margaux Tex. Ventures, Inc.)*, 545 B.R. 506, 516, 529 (Bankr. N.D. Tex. 2014) (emphasis added).

Given the statute of limitations does not bar the assertion of an *avoidable transfer defensively to disallow the Omega Entities' claims under section 502(d),* the fraudulent transfer claims asserted by the Committee are not time barred.

## ARGUMENT

### A. The Committee May Assert An Avoidable Transfer Defensively To Disallow The Omega Entities' Claims.

The statute of limitations does not bar the Committee from seeking to disallow the Omega Entities' proof of claim pursuant to Section 502(d) of the Bankruptcy Code.[3] Section

---

[3] The Debtors argue, in their objection to the Committee's Standing Motion [Dkt No. 570], that TUFTA's statute of repose applies in this case. However, even if the Court were to apply Texas procedural rules to the Committee's claims, TUFTA's statute of repose is *substantive, rather than procedural,* and therefore does not apply. *See Stonehedge/FASA-Tex. JDC v. Miller*, 110 F.3d 793, 1997 WL 119899 at *2 (5th Cir. 1997) (holding that statutes of repose are substantive, not procedural); *O'Cheskey v. CitiGroup Glob. Mkts., Inc. (In re Am. Hous. Found.)*, 543 B.R. 245, 256 (Bankr. N.D. Tex. 2015); *Nexen Inc. v. Gulf Interstate Engineering Co.*, 224 S.W.3d 412, n. 4 (Tex.App.-Houston [1st Dist.] 2006, *no pet.*). To the extent that Texas law applies, it is Tex. Civ. Prac. & Rem. Code § 16.069 that would apply. That section, the Texas Revival Statute, provides that "if a counterclaim or

-3-

502 of the Bankruptcy Code deals with the allowance and disallowance of claims. 11 U.S.C. § 502. Under section 502, a claim becomes allowed in one of three ways: first, a proof of claim is filed or deemed filed and no party objects; second, a claim is allowed by the court after an objection is filed; or third, a claim is estimated by the court under the provisions of section 502(c). *Id.* A claim may be disallowed under, among other sections, section 502(d). *Id.* Section 502(d) provides that:

> [A] court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

As the Court of Appeals for the Fifth Circuit has observed, "[t]he legislative history and policy behind section 502(d) illustrates that the section is intended to have the coercive effect of ensuring compliance with judicial orders." *In re Davis*, 889 F.2d 658, 661 (5th Cir. 1989), *cert. denied*, 495 U.S. 933 (1990).

Under Section 502 of the Bankruptcy Code, "any 'party in interest' in a case has standing to object to a proof of claim." *In re Morgan*, 2007 Bankr. LEXIS 3090, at *8 (Bankr. N.D. Tex. Sep. 6, 2007). "A party in interest 'is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings,'" including creditors. *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 825 (Bankr. N.D. Tex. 2006); *In re Pro Set, Inc.*, 193 B.R. 812, 813 (Bankr. N.D. Tex. 1996) ("[A] creditor of the bankruptcy estate is a party in interest and may object to claims."); *see also In re Ridgeway*, 2018 Bankr.

---

cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required." *See also Terra P'rs v. Rabo Agrifinance, Inc.,* 2011 U.S. Dist. LEXIS 65877, at *13-15 (N.D. Tex. June 15, 2011) (holding that TUFTA counterclaim is not barred by the statue of repose because of application of the Texas Revival Statute).

-4-

LEXIS 531, at *3 n.6 (Bankr. E.D. La. Feb. 27, 2018); *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 705 (Bankr. N.D. Ill. 2014) ("An objecting party will only have standing to the extent that it has a pecuniary interest in the estate."); *In re C.P. Hall Co.*, 513 B.R. 540, 543 (Bankr. N.D. Ill. 2014) ("A creditor's interest in a bankruptcy case is pecuniary, and so a creditor is a 'party in interest' with standing to object to the claims of other creditors."). Here, the Committee is undoubtedly a party in interest and therefore has automatic standing to object to a proof of claim filed by the Omega Entities by operation of section 502.

Against that backdrop, this Court has explained that while the statute of limitations may present an obstacle in successfully avoiding a transfer of property under the avoidance statutes, "***it does not prevent . . . asserting an avoidable transfer defensively to disallow a proof of claim under section 502(d)*** of the Bankruptcy Code unless or until the claimant returns property, relinquishes a lien, or the like." *See e.g.*, *Litzler v. Cooper (In re Margaux Tex. Ventures, Inc.)*, 545 B.R. 506, 516, 529 (Bankr. N.D. Tex. 2014).

Indeed, federal courts in Texas, including this Court, follow the clear majority of courts holding that a statute of limitations defense may not be used to prevent the avoidance of a fraudulent transfer under Section 502(d).[4] Indeed, Texas federal courts consistently hold that a

---

[4] *See e.g.*, *Grant, Konvalinka & Harrison, P.C. v. Still (In re McKenzie)*, 737 F.3d 1034, 1042 (6th Cir. 2013) ("We conclude that the bankruptcy court properly adopted the majority view in holding that the Trustee was entitled to use his avoidance powers defensively without regard to the two-year statute of limitations under 11 U.S.C. § 546(a)(1)(A)."); *El Paso v. American West Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 217 F.3d 1161, 1168 (9th Cir. 2000) ("We therefore . . . conclude that the limitations period in § 546 does not apply to § 502(d)."); *In re Meredosia Harbor & Fleeting Serv., Inc.*, 545 F.2d 583, 590 (7th Cir. 1976) (explaining that the trustee's defense "was in the nature of recoupment and therefore not barred" by the statute of limitations); *In re Cushman Bakery*, 526 F.2d 23, 36 (1st Cir. 1975) ("[T]here are no affirmative reasons for holding that [the statute of limitations] applies to objections to the allowance of a claim."); *U.S. Lines, Inc. v. United States (In re McLean Indus., Inc.)*, 196 B.R. 670, 676 (Bankr. S.D.N.Y. 1996) (explaining that "the majority [of courts] have permitted [the] defensive use of [s]ection 502(d)"); *see also Collier on Bankruptcy*, P 502.05 (16th 2018) ("Most courts find that there is no prohibition against . . . asserting section 502(d) as an affirmative defense to a claim of a creditor even if the . . . claim is time-barred or otherwise nonrecoverable.").

A minority of courts, outside of Texas, have reached the opposite conclusion. *See e.g.*, *Mktg. Res. Int'l Corp. v. PTC Corp. (In re Mktg. Res. Int'l Corp.)*, 35 B.R. 353, 356 (Bankr. E.D. Pa. 1984); *In re Mktg. Assocs. of*

fraudulent transfer defense may be asserted as an objection to a proof of claim pursuant to section 502(d), *even where an affirmative fraudulent transfer claim would be time-barred under the applicable statute of limitations*. *See e.g.*, *RSL-3B-IL, Ltd. v. Symetra Life Ins. Co.*, 2017 U.S. Dist. LEXIS 216851, at *5 (S.D. Tex. July 26, 2017) (permitting fraudulent transfer defense to be asserted in opposition to a proof of claim, even though the statute of limitations for such claim had expired); *In re Margaux*, 545 B.R. at 529 ("[T]he Trustee can utilize section 502(d) defensively to attempt to disallow the Defendant's Claim even though the section 546(a) statute of limitations period has already passed."); *In re Disc. Family Boats, Inc.*, 233 B.R. 365, 368 (Bankr. E.D. Tex. 1999) ("Once the establishment of an avoidable transfer is shown, then the Court is required to disallow the recipient of the unauthorized transfers claim even though the transfer could not be recovered due to the statute of limitations. . . . [T]he statute of limitations is not impacted since there is not an attempt to recover funds previously paid. In effect, the action here is to deny the claim to the extent of the money alleged to have been wrongfully paid to ABT and that is controlled by § 502(d) which contains no statute of limitation provision."); *see also Coxson v. Commonwealth Mortg. Co. of Am., L.P. (In re Coxson)*, 43 F.3d 189, 194 (5th Cir. 1995) (holding that the otherwise expired statute of limitations applicable under the Truth in Lending Act did not bar the debtors' claims, as the claims were filed defensively in response to a lender's proof of claim); *Johnson v. Nat'l City Mortg. Co. (In re Johnson)*, 2009 Bankr. LEXIS 2956, at *13 (Bankr. E.D. Tex. Sep. 11, 2009) (similar).

      The clear majority of courts, including this Court, so hold for two primary reasons: (1) the plain language of section 502(d) does not prohibit the avoidance of claims or

---

*Am., Inc.*, 122 B.R. 367 (Bankr. E.D. Mo. 1991). This Court has declined to follow the holdings and reasoning of these opinions. *See In re Margaux*, 545 B.R. at 529.

transfers after the expiration of the applicable statute of limitations; and (2) public policy considerations favor the defensive use of time-barred fraudulent transfer claims.

First, as explained by this Court in *In re Margaux*, "section 502(d) of the Bankruptcy Code does not specifically refer to [any] statute of limitations, nor does section 502(d) contain a limitations period of its own." 545 B.R. at 517. Thus, according to the Court, "nothing in the text of section 502(d) appears to prevent [the use of] avoidance powers defensively after the expiration of the statute of limitations . . . ." *Id.*[5]

Second, public policy considerations are in accord with the plain language of section 502(d) and favor the defensive use of fraudulent transfer claims even after the expiration of the applicable statute of limitations. *Id.* at 518-19. According to this Court, permitting the defensive use of fraudulent transfer claims after the expiration of the statute of limitations "furthers one of the central purposes of the Bankruptcy Code — to ensure the equality of distribution among creditors." *Id.* In other words, permitting the defensive use of otherwise time-barred claims gives courts the ability to "counteract the transferee's perceived unfair economic advantage over other creditors by disallowing an otherwise avoidable claim pursuant to section 502(d) of the Bankruptcy Code." *Id.*

The Court in *In re Margaux* also found that pre-Bankruptcy Code case law and the fact that the "defensive use of time-barred claims is not uncommon or impermissible outside of the bankruptcy context, including under Texas law" supports a holding permitting the

---

[5] By way of further example, the bankruptcy court *in In re Mid Atlantic Fund, Inc.* rejected as "grasping at straws" the argument that "the use of the word avoidable in section 502(d) was intended to incorporate the statute of limitations fixed by section 546 of the Bankruptcy Code and emphasized that the materiality of section 546 could have been expressed "much more directly and plainly . . . by using the word 'timely' in front of avoidance or by adding a reference to Code § 546.'" *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 609-11 n.11 (Bankr. S.D.N.Y. 1986). Similarly, the bankruptcy court *in In re Stoecker*, 143 B.R. 118, 131 (Bankr. N.D. Ill. 1992), stated that "The text of section 502(d) silently speaks to this issue by omitting any reference to section 546(a). . . . Similarly, section 546(a) is devoid of any reference to section 502(d) or a time period during which the trustee must object to a claim . . . ."

defensive use of avoidance powers after the expiration of the statute of limitations. *Id.* at 518, 525-26, 529.

In short, based upon the plain language of section 502(d), the public policy considerations underlying the Bankruptcy Code, and a variety of other factors, the majority of courts across this country, including this Court and other Texas federal courts, permit the defensive use of time-barred claims, including claims for fraudulent transfer, pursuant to section 502(d).

The Omega Entities, in its objection to the Committee's Motion for Standing [Dkt. No. 569, at 12-16], counters that section 502(d) may be used to assert an otherwise time-barred claim as a defense *only where such claim had not extinguished prior to the "commencement of the bankruptcy case*."[6] The Omega Entities' logic is as follows: (1) section 541 of the Bankruptcy Code creates an estate comprising all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case; (2) under section 541, the Committee cannot assert any greater rights than the debtor itself had on the date of the commencement of the bankruptcy case; (3) that a debtor's fraudulent transfer defense is "not property of the estate" if it extinguished prior to the filing of the bankruptcy case; and (4) that the Debtors' fraudulent transfer defense in this case extinguished prior to the bankruptcy case.

While having some superficial appeal, the Omega Entities' logic withers at point number three, as a cause of action becomes property of the estate even if it is subject to a valid defense, such as the statute of limitations. *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 259 (5th Cir. 2010); *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) ("[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and

---

[6] Section 546 of the Bankruptcy Code provides that an action or proceeding under sections 544, 545, 547, 548, or 553 must be brought within two years after the entry of the order for relief or one year after the appointment or election of a Trustee. 11 U.S.C. § 546.

derivative, is within the reach of § 541); *In re Winebrenner*, 170 B.R. 878, 883 (Bankr. E.D. Va. 1994) ("The debtors also assert that the cause of action had no value at the time of filing . . . . In deciding whether or not to schedule the cause of action, what the debtors or their attorney thought the cause of action was worth is irrelevant. The trustee must be given the opportunity to value each piece of property in the estate before deciding whether or not to abandon it.").

Even if the Omega Entities' reasoning did not fall flat at point number three, the Omega Entities' argument also collapses at point number four, as the Debtor's fraudulent transfer defense *did not extinguish prior to the bankruptcy case*. Indeed, just last year, the Southern District of Texas held that a debtor may use state fraudulent transfer law as a *defense* to a creditor's claim against the debtor, *even if an affirmative cause of action under such law had extinguished under the applicable statute of limitations or statute of repose*. *RSL-3b-IL, Ltd. V. Symetra Life Ins. Co.*, 2017 U.S. Dist. LEXIS 216851, at *2-6 (July 26, 2017).

There, a creditor of the defendant debtor brought suit seeking to recover monies from the debtor. *Id.* at *2. The creditor alleged that it had a superior, secured interest in certain funds held by the debtor, and sought to recover them. *Id.* The debtor defended against the creditor's claim by asserting a TUFTA defense. *Id.* The creditor argued that such a defense was barred under TUFTA's four-year statute of repose. *Id.* at *2-3. Although the Court agreed TUFTA's four-year statute of repose operates to extinguish any "cause of action" brought more than four-years after the challenged transfer, the Court found that the statute of repose did *not* bar a debtor from asserting a TUFTA *defense* to a creditor's claim against the debtor. *Id.* at *3-6.

The Court reasoned that there is a "fundamental difference between a *defense* and a *cause of action*,'" and that "[l]imitation law is not intended to bar nor smother any mere

-9-

defense of a party so as to compel him to stand dumb and mute while his antagonist bludgeons his head with every weapon in the book of legal, offensive, warfare." *Id.* (emphasis added).[7]

The Court further explained that:

> [W]here the subject-matter of a defense interposed by the defendant constitutes an independent cause of action which does not go to the foundation of the plaintiffs demand, it cannot effect a reduction of the amount of the plaintiffs recovery except by way of setoff, and the statutes of limitation are available to the plaintiff in respect to such defense. On the other hand, if the subject-matter of the defense be of an intrinsically defensive nature, which, if given effect, will operate merely as a negation of the plaintiffs asserted right to recover, or in abatement, either wholly or partially, of the amount claimed, the statute of limitations does not apply.

*Id.* at *5, n. 2 (citing *In re Margaux*, 545 B.R. at 527). Based on the foregoing reasoning, the Court concluded that while TUFTA would have barred the debtor from asserting an affirmative "cause of action" or claim for setoff, it did not prevent the debtor from asserting a "defense" under TUFTA in order to negate the creditor's claim. *Id.*

Like TUFTA, the Delaware Fraudulent Transfer Act bars "causes of actions," not defenses, that are brought more than four years after the transfer was made.[8] Thus, here, as in *RSL-3b-IL*, although the Debtor's potential fraudulent transfer "causes of action" *may*[9] have expired prior to the commencement of the bankruptcy case, Debtor's fraudulent transfer *defense* did not extinguish. It therefore became property of the estate under Section 541, and may be asserted by the Committee on the Debtor's behalf. The Committee's affirmative request for recoupment, as set forth in the Draft Complaint, may be asserted after the expiration of the

---

[7] Here, the record is clear that Omega, the Debtors, and representatives of what would become the Plan Sponsor began negotiating a restructuring in "late summer" 2017—several months before the expiration of 4 years from the date of the LBO. 5/11/2018 Hrg. Tr. (Gupta Testimony) at 22:16-19. To deprive the Committee of an opportunity to assert its claims and defenses because Debtors chose to wait until March 2018 to file their Petition would be inequitable.

[8] Maryland law similarly bars only "civil actions at law" brought within three years of the date on which the action at law accrued. *See* Md. Comm. Law Code §§ 15-201 *et seq*.

[9] As noted below, to the extent that Omega committed intentional fraud, the statute of limitations for the Debtors' fraudulent transfer claims would be tolled. *See e.g.*, 6 *Del. C.* § 1309(1).

-10-

statute of limitations. *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 187 (S.D. Tex. 2007).

For the foregoing reasons, the Committee respectfully requests that the Court hold that the fraudulent transfer claims and defenses that the Committee seeks standing to assert are not time barred.

B. **The Statute of Limitations Does Not Bar The Committee's Proposed Affirmative Fraudulent Transfer Claims**

Even if brought as affirmative claims as part of an adversary proceeding, the Committee's proposed fraudulent transfer claims are still timely. As an initial matter, the Committee's discovery efforts to date have been stonewalled by the Omega Entities and the Debtors. To the extent that such discovery reveals intentional fraud by the Omega Entities, the statute of limitations for any such claim would be tolled under the discovery rule. *See e.g.*, 6 *Del. C.* § 1309(1).

Moreover, as the Omega Entities concede, the Committee can avail itself of the doctrine of equitable tolling doctrine with respect to its claims. The Omega Entities attempt to circumvent the application of equitable tolling by arguing that the Omega Entities' public filings put creditors on inquiry notice of potential claims. However, this argument fails because the first clear disclosure by the Omega Entities indicating issues with the Ark/Orianna portfolio did not occur until the fourth quarter of 2017 when the Omega Entities reported significant impairments related to the portfolio. *See* Press Release, Omega Healthcare Investors, Inc., Omega Announces Third Quarter 2017 Financial Results; Increased Dividend Rate for 21st Consecutive Quarter (Oct. 30, 2017), available at http://www.omegahealthcare.com/tools/viewpdf.aspx?page= {967F6D27-637F-4F7B-BBE7-D7000BBEFB31}(last visited 17 Jun. 2018). Prior to this explicit disclosure, the Omega Entities concealed the issue and are facing securities litigation in

-11-

#49038340 v1

the Southern District of New York brought by stockholders who acquired the Company's securities between February 8, 2017 and October 31, 2017. *See Klein v. Omega Healthcare Investors, Inc.* Dkt. No. 1:17-cv-09024-NRB (S.D.N.Y. Nov. 17, 2017).

Moreover, the Committee's proposed constructive fraud claims are subject to a 10-year look back period. Under section 544(b)(1), "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 . . ." 11 U.S.C. § 544(b)(1). The Committee's rights under section 544(b)(1) of the Bankruptcy Code depend on the rights of an actual unsecured creditor under applicable law. *Id.* Thus, an avoidance action under section 544(b) is timely if the unsecured creditor's claim was timely under the applicable non-bankruptcy law at the time the bankruptcy petition was filed, and the trustee brings the action within the time specified in section 546(a). *In re Kaiser*, 525 B.R. at 708.

The applicable non-bankruptcy law in this case is the Delaware Fraudulent Transfer Act, which provides that a cause of action is generally time-barred unless brought within four years after the transfer was made or the obligation was incurred. 6 *Del. C.* § 1309(1)-(2); *Asarco LLC v. Ams. Mining Corp.*, 396 B.R. 278, 431 (S.D. Tex. 2008) ("The statute of limitations for fraudulent transfers under Delaware law is four years.").[10]

With that said, the Committee is "subject to the defenses that would be applicable against the relevant creditor, including a statute of limitations defense." *In re Kaiser*, 525 B.R. at 709. Indeed, under 11 U.S.C. §544(b), the Committee may use "statutes of limitations available to any creditor in whose shoes he stands in bringing the action." *Osherow v. Porras (In re*

---

[10] Section 1304 of the Delaware Fraudulent Transfer Act allows a creditor to avoid a transfer made or obligation incurred "whether the creditor's claim arose before or after the transfer was made or the obligation was incurred." 6 *Del.* C. § 1304(a).

*Porras)*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004) (finding that the Trustee may use the IRS's statute of limitations). Here, the Committee is permitted to stand in the shoes of the IRS, which is a creditor of the Debtors, and is therefore subject to its ten-year statute of limitations, not the default four-year statute of limitations.

Indeed, the IRS may collect tax liability from a transferee of property of the taxpayer. *See* 26 U.S.C. § 6901(a)(1)(A). The IRS's ability to collect tax liability against a transferee of the taxpayer is dependent upon the IRS's ability to establish liability under state fraudulent-transfers law. *Diebold Found, Inc. v. Comm'r*, 736 F.3d 172, 184 (2d Cir. 2013); Frank Sauyer Trust of May 1992, 712 F.3d at 603 (1st Cir. 2013); *Bresson v. Comm'r*, 213 F.3d 1173, 1173-1174 (9th Cir. 2000). When proceeding under a state's fraudulent-transfers law, the IRS's substantive rights are those of a creditor under state law and in no way enhanced by operation of section 6901. *Diebold Found*, 736 F.3d at 185.

However, in pursuing collection by way of transferee liability, the IRS is subject to the limitations periods set out in the Internal Revenue Code, not the statute of limitations set forth in the state fraudulent-transfers law. *See Bresson*, 213 F.3d at 1179; *United States v. Spence*, 2000 U.S. App. LEXIS 29122, at *11 (10th Cir. Nov. 15, 2000); *United States v. Femon*, 640 F.2d 609, 612 (5th Cir. 1981). Under the Internal Revenue Code, the IRS has ten years to seek to collect on a tax liability. 26 U.S.C. § 6502(a)(1).

Because the Committee is seeking to stand in the shoes of the IRS, it, too, is subject to the ten-year statute of limitations, not the default four-year limitations period. Indeed, courts routinely find that a Trustee or creditors' committee may stand in the shoes of the IRS and invoke the IRS's ten-year statute of limitations period. *See, e.g., Osherow v. Porras (In re Porras)*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004) (finding that the Trustee may use the IRS's

statute of limitations); *Finkel v. Polichuk (In re Polichuk)*, 2010 Bankr. LEXIS 4345, at *8 n.9 (Bankr. E.D. Pa. Nov. 23, 2010); *Alberts v. HCA Inc. (In re Greater Se. Cmty. Hosp. Corp. I)*, 365 B.R. 293, 299-306 (Bankr. D.D.C. 2006); S*hearer v. Tepsic (In re Emergency Monitoring Technologies, Inc.)*, 347 B.R. 17, 19 (Bankr, W.D. Pa. 2006); *see also Tronox v. Kerr McGee Corporation (In re Tronox Inc.)*, 503 B.R. 239, 274-275 (Bankr. S.D.N.Y. 2013) (permitting the trustee to invoke the IRS's Federal Debt Collection Practices [**34] Act statute of limitations, and collecting cases allowing the same).[11]

The Committee's proposed fraudulent transfer claims are therefore timely, whether as a defense to the Omega Entities' proof of claim or as an affirmative claim for relief.

## CONCLUSION

For the foregoing reasons, the Committee respectfully requests that the Court enter an order declaring that: (i) the Committee's proposed fraudulent transfer claims are not barred by the statute of limitations; and (ii) that, regardless of whether the statute of limitations bars the Committee's affirmative fraudulent transfer claims, the statute of limitations does not prevent the Committee from asserting a fraudulent transfer defense to disallow the Omega Entities' proof of claim under section 502(d) of the Bankruptcy Code.

(*Remainder of Page Intentionally Left Blank*)

---

[11] In one instance, the Fifth Circuit declined to permit a trustee to stand in the IRS's shoes with respect to rights under the Federal Debt Collection Practices Act. *MC Asset Recovery LLC vs Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530, 535 (5th Cir. 2012). But, *Mirant's* reasoning was founded upon the operation of the Federal Debt Collection Practices Act and is therefore inapplicable here. In fact, the Court in *Kaiser*, which found that a Trustee may use the IRS's ten-year statute of limitations for a fraudulent transfer claim, distinguished the case before it from *Mirant* on that basis. *In re Kaiser*, 525 B.R. at 708, 713.

Dated: June 14, 2018  Respectfully submitted,

*/s/ Ryan E. Manns*
Louis R. Strubeck, Jr.
Ryan E. Manns
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
Email: louis.strubeck@nortonrosefulbright.com
ryan.manns@nortonrosefulbright.com

-and-

Francis J. Lawall (admitted *pro hac vice*)
Donald J. Detweiler (admitted *pro hac vice*)
Joanna J. Cline (admitted *pro hac vice*)
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail: lawallf@pepperlaw.com
detweild@pepperlaw.com
clinej@pepperlaw.com

*Counsel to the Official Committee of Unsecured Creditors*