Keith M. Aurzada (TX Bar No. 24009880)
Michael P. Cooley (TX Bar No. 24034388)
BRYAN CAVE LEIGHTON PAISNER LLP
2200 Ross Avenue, Suite 3300
Dallas, Texas 75201
Telephone: (214) 721-8000
Facsimile: (214) 721-8100
Email: keith.aurzada@bclplaw.com
Email: michael.cooley@bclplaw.com

Mark I. Duedall (admitted *pro hac vice*)
Leah Fiorenza McNeill (admitted *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
One Atlantic Center – Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, Georgia 30309-3471
Telephone: (404) 572-6600
Facsimile: (404) 572-6999
Email: mark.duedall@bclplaw.com
Email: leah.fiorenza@bclplaw.com

David M. Unseth (admitted *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
Email: dmunseth@bclplaw.com

*Counsel for OHI Asset RO, LLC and certain affiliates*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| 4 West Holdings, Inc. *et al.*, | § | Case No. 18-30777 (HDH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## MOTION FOR RECONSIDERATION OF ORDER GRANTING DEBTORS' MOTION TO APPROVE PLAN MODIFICATIONS UNDER BANKRUPTCY RULE 3019

OHI Asset RO, LLC ("***OHI***") and certain affiliates (collectively, "***Omega***") request the Court to reconsider its Order Granting Debtors' Motion to Approve Plan Modifications [Docket No. 1214] (the "***3019 Order***") and thereby deny the *Debtors' Motion (A) to Approve Plan Modifications under Bankruptcy Rule 3019 and (B) for Related Relief* [Docket No. 1055]. In support of which, Omega respectfully states as follows:

# I.
## PRELIMINARY STATEMENT

1.     Respectfully, the 3019 Order is predicated on a fundamental error.  It impermissibly "creates" new value upon recharacterization of the Transfer Portfolio[1] *without* accounting for Omega's corresponding $190 million secured claim arising from that recharacterization.  As recognized by the Court, upon recharacterization, $190 million of Transfer Portfolio value was made part of the estates; however, the Court's ruling fails to simultaneously recognize that such value was fully encumbered by Omega's liens, thereby resulting in a new $190 million secured claim in favor of Omega. As such, any modification under Rule 3019 that abridges Omega's right to payment in full on its $190 million secured claim is material and adverse to the treatment of Omega's claims and an impermissible abrogation of Omega's substantive rights under the Bankruptcy Code.  Accordingly, the Court should reconsider its ruling and deny the relief requested in the Rule 3019 Motion.

# II.
## STANDARD

2.     This motion for reconsideration, filed within 14 days of the entry of the 3019 Order, is filed pursuant Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e) incorporated thereby.  *Stangel v. United States (In re Stangel)*, 68 F.3d 857, 859 (5th Cir. 1995); *McLoba Partners, Ltd v. Adkins (In re Adkins)*, No. 12-10314-RLJ-7, 2014 WL 7338948, at *1 (Bankr. N.D. Tex. Dec. 22, 2014).  A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quotations omitted).  Such motions are appropriate where there is a manifest error of law or fact. *Transamerican Refining Corp. v. Texas Comptroller of Public Accounts (In re Transexas Gas Corp.)*, 303 F.3d 571, 581 (5th Cir. 2002).  Failure to consider and address a legal argument raised warrants reconsideration. *Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II SCA)*, 526 B.R. 499 (Bankr. S.D.N.Y. 2015).

---

[1] Capitalized terms used but not defined herein have the meanings assigned to them in the 3019 Order or in the Original Plan, as applicable.

12340276

# III.
# BACKGROUND

3.     On the Petition Date, prior to recharacterization, Omega held a claim of "$52 million . . . as rent due under the Master Leases [and] $15 million . . . under a working capital loan." 3019 Order, p. 2. Omega also had a contingent lease rejection claim. The Debtors' assets did not include any owned real property; the Debtors' primary assets were their leaseholds, associated operations, and accounts receivable. Substantially all of these were collateral for Omega's claims.

4.     Following recharacterization, Omega has a secured claim exceeding $500 million. *See* Amended Proof of Claim 8-2, p. 13. Of this amount, roughly $283 million is attributable to the Transfer Portfolio and $219 million is attributable to the Restructuring Portfolio. *See* Proof of Claim 8-1, Part 3, pp. 4-5. Omega's collateral for these claims includes: (1) the Transfer Portfolio, later valued at $190 million; (2) the Restructuring Portfolio, excluding Laurel Baye,[2] valued at $176 million ($225 million less $49 million); and (3) substantially all of the Debtors' accounts receivable and other operating assets. *See* Amended Proof of Claim 8-2, p. 4.

5.     Omega's claims in the Original Plan were a hybrid resulting from the RSA and the 9019 Settlement. ***First***, because Omega consented to recharacterization of the Restructuring Portfolio upon confirmation, "Omega's Secured Claim" under the Original Plan included the value of the Restructuring Portfolio. The Restructuring Portfolio's sale proceeds – the Plan Sponsor Consideration – were to be paid to Omega for this secured claim. ***Second***, the Transfer Portfolio would be rejected as a true lease, and returned to Omega per the Omega Compromise. *See* Original Plan, pp. 31-32. As the Omega Compromise in the Original Plan makes clear, the

---

[2] Omega agrees with the Court that Rule 3019 allows the Debtors to remove the Laurel Baye's value from the "Omega Secured Claim," the "Plan Sponsor Consideration," and Section III.B.1 of the Original Plan. But Omega cannot help but note the parallel between Laurel Baye and the Transfer Portfolio. Just like the "Omega Secured Claim" under the Original Plan had to be ***decreased*** to account for the non-recharacterization of Laurel Baye, it must be correspondingly ***increased*** to account for Omega's secured claim resulting from recharacterization of the Transfer Portfolio.

12340276

Transfer Portfolio would not be recharacterized. *See id.* As a result, Omega would not have a Transfer Portfolio secured financing claim. *See* Original Plan, p. 10 (The "Omega Claim means all Claims of Omega for amounts owing by any Debtor under the Master Leases . . . , *as settled by the Omega Compromise*.") (emphasis added).

6. After the Debtors determined they could not make the Original Plan's payments, the Omega Compromise and all aspects of the Original Plan failed. Subsequently, the Debtors (with Omega's consent) recharacterized the leases of both the Transfer Portfolio Facilities and the Restructuring Portfolio Facilities (except for the four Laurel Baye Facilities). *See* Recharacterization Judgment. After this recharacterization, the Original Plan's definitions no longer reflected Omega's actual or anticipated claims (secured and otherwise). Instead, following recharacterization, as reflected in Omega's amended proof of claim, Omega's claim was $579 million, secured by (1) the Transfer Portfolio, valued at $190 million; (2) the remaining Restructuring Portfolio, valued at $176 million; and (3) substantially all of the Debtors' accounts receivable and other operating assets. Bifurcated under § 506(a), and ignoring the accounts receivable and other operating assets, Omega has a $190 million secured claim on account of the Transfer Portfolio and a $176 million secured claim on account of the Restructuring Portfolio: together, $366 million in secured claims.

7. The Debtors' filed their Amended Plan, which use the Plan Sponsor Consideration to repay Omega's DIP Facility Claims and other administrative or priority claims. *See* Amended Plan, § III.B.1. This treatment was prohibited under the Original Plan. *See* July 9 Ruling. Despite this material change in the distribution priority, the Court ruled that the Amended Plan modification did not adversely change Omega's claim treatment because the intervening recharacterization of the Transfer Portfolio created $190 million in new "value." *See* 3019 Order, p. 17.

12340276

# IV.
# ARGUMENT

**A.** **The 3019 Order erroneously evaluated the Original Plan without accounting for the liens on the recharacterized Transfer Portfolio Facilities.**

8. The 3019 Order fails to account for Omega's secured claim created upon recharacterization of the Transfer Portfolio.

9. Recharacterization of a lease gives rise to a secured claim (if the creditor was properly perfected, as Omega is). *Sale-Leasebacks: Things May Not Be What They Seem*, SL100 ALI-ABA 703, 711 (John C. Murray, 2006) ("If [a] lease is subsequently recharacterized as a secured financing transaction rather than a true lease, then the lessor-lienholder's claim will be secured as mortgage debt rather than as rent, and the claim can be restructured by the debtor-lessee, *with the secured claim of the lessor-lienholder limited to the fair market value of the property*.").[3]

10. Following recharacterization, § 506(a) bifurcates Omega's new claim into a secured portion equal to the amount of Omega's interest in the estates' interest in the Transfer Portfolio, and an unsecured portion for the rest. Omega's interest in the Transfer Portfolio, just like its interest in the Restructuring Portfolio, was the lien resulting from recharacterization. Because the new secured claim exceeds the value of the Transfer Portfolio, the entire $190 million value is subject to Omega's liens, resulting in a $190 million secured claim under § 506(a).

11. Contrary to the July 9 Ruling, the Amended Plan makes the the Plan Sponsor Consideration available to pay administrative claims in these cases, including the DIP Facility Claims. *See* Amended Plan, § III.B.1. The Debtors argued, and the Court agreed, that the reduction to

---

[3] *See also United Airlines, Inc. v. HSBC Bank USA, N.A (In re United Airlines, Inc.)*, 416 F.3d 609, 611, 618 (7th Cir. 2005) ("A lessee must either assume the lease and fully perform all of its obligations, or surrender the property. 11 U.S.C. § 365. A borrower that has given security, by contrast, may retain the property without paying the full agreed price. *The borrower must pay enough to give the lender the economic value of the security interest*; if this is less than the balance due on the loan, the difference is an unsecured debt. *See* 11 U.S.C. § 506(a) and § 1129(b)(2)(A). . . . The transaction between United and the CSCDA at San Francisco Airport is a *secured* loan and not a lease for the purpose of § 365." (emphasis added)), *accord In re Montgomery Ward, L.L.C.*, 469 B.R. 522, 528 (Bankr. D. Del. 2012).

12340276

the Plan Sponsor Consideration was not materially adverse to Omega because Omega "realized" $190 million in new value due to the recharacterization of the Transfer Portfolio.[4]

12.     But this analysis incorrectly ignores Omega's perfected liens in the Transfer Portfolio. Omega's liens eliminate any new value in the Transfer Portfolio to supplement the Plan Sponsor Consideration. As noted above, it is indisputable that recharacterization of a real property lease titled in the creditor's name creates a lien on the property in favor of the creditor. The Court accordingly erred by ignoring that the Transfer Portfolio value brought into the estates by recharacterization was subject to Omega's liens resulting from recharacterization.

13.     The Debtors previously recognized that recharacterization creating a secured claim was a zero sum game. In their motion seeking approval of the 9019 Settlement (the "**9019 Motion**," Docket No. 101), the Debtors stated "[w]hile the Debtors believe they have strong recharacterization claims to have the leases treated as secured financings, that litigation, even if successful, only lead to a pyrrhic victory. *Because Omega would be considered a secured creditor with liens against the Debtors' assets that exceed the value of those assets* . . . ." 9019 Motion,

---

[4] The Court cites *First Federal Bank of California v. Weinstein (In re Weinstein),* 227 B.R. 284, 296-97 (B.A.P. 9th Cir. 1998) and *Confederation Life Insurance Co. v. Beau Rivage Ltd.,* 126 B.R. 632, 640 (N.D. Ga. 1991) for the proposition that a postpetition, preconfirmation return of collateral must be credited against the creditor's secured claim rather than its unsecured claim. 3019 Order, p. 17. Omega agrees with this legal proposition, but not the Court's application of it. Because the Transfer Portfolio secured claim was undersecured ($270 million exceeds $190 million), this legal proposition requires treatment of the return of the Transfer Portfolio as a postpetition, preconfirmation payment on the Transfer Portfolio secured claim. *Cf. In re Weinstein*, 227 B.R. at 291-92 (B.A.P. 9th Cir. 1998) ("[T]he total claim of an undersecured creditor is bifurcated into two claims, a secured claim equal to the value of the collateral and an unsecured claim equal to the remainder of the obligation owing to the creditor . . ..").  It is entirely inappropriate to treat the return of the Transfer Portfolio as a payment on account of the Restructuring Portfolio secured claim (i.e., the Plan Sponsor Consideration) unless the Transfer Portfolio secured claim has been satisfied. Indeed, while neither *Weinstein* nor *Confederation Life Insurance Co.* dealt with a creditor holding multiple secured claims, which is the situation here, they clearly recognize that a creditor is entitled to payment of the full value of all of its collateral. *Confederation Life Ins. Co.*, 126 B.R. at 639 ("[I]f the collateral does depreciate, the application of adequate protection payments to payment obligations under the plan would give the debtor 'double credit' and would deny the creditor the compensation to which it is entitled."), *accord In re Weinstein*, 227 B.R. 284 at 296 (B.A.P. 9th Cir. 1998) (recognizing that "adequate protection payments replace the lost value of collateral," so "postpetition, preconfirmation payments made on nondepreciating collateral must be allocated to reduce the secured portion of the creditor's claim.").

Page 6

p. 2 (emphasis added). Even the Court recognizes the Transfer Portfolio is Omega's collateral. *See* 3019 Order, p. 20.

14. The Court believes that Omega agreed, through representations in Court and its papers, to allow the Debtors to use the Transfer Portfolio value to satisfy the "Omega Secured Claim," as that term is used in the Original Plan, without ***any*** adjustment for the secured claim created upon recharacterization of the Transfer Portfolio. This is, respectfully, incorrect.

15. Omega always understood that following recharacterization, the Transfer Portfolio value should be credited against the Transfer Portfolio secured claim, but not the Restructuring Portfolio secured claim. ***Omega never agreed to a credit of the Transfer Portfolio value against the "Omega Secured Claim" without any adjustment for Omega's liens on the Transfer Portfolio***. Rather, Omega simply recognized the propriety of a credit against its claims "in these cases," expressly recognizing the addition of the Transfer Portfolio secured claim following recharacterization (thus Omega's counsel referenced a credit against a $578 million claim, representing the full balance due under the Master Leases, not the $423 million claim in the Original Plan). *Cf.* 3019 Order, p. 16, nn.19-20.

16. The Court also mentions the Debtors' and Committee's reservation of a right to "apply [the value of the Transfer Portfolio] against the Omega Entities' claims in these Bankruptcy Cases." 3019 Order, p. 14 (quoting Recharacterization Judgment). Putting aside that this is a mere reservation of rights, not a creation of substantive rights, this language is consistent with Omega's position that the Transfer Portfolio value should be applied against the Transfer Portfolio secured claim resulting from recharacterization. The Court also erred in the 3019 Order when it stated that the Valuation Order "expressly permitted the Debtors to seek a credit against the ***Omega Secured Claim*** under a plan of reorganization." 3019 Order, p. 9 (emphasis added). The Valuation Order did not; it denied the motion "without prejudice to seeking similar relief in a plan." Valuation Order, p. 2. Indeed, the Court, in its oral ruling denying the Valuation Motion noted "Omega's position that the value of the transferred property

must . . . be credited against the **prepetition obligations**." Tr. of Ruling on Valuation Motion, 6:13-14 (emphasis added).

17. The 3019 Order improperly conflates the Omega Secured Claim as defined in the Original Plan with "the Omega Entities' claims in these Bankruptcy Cases." *Compare* 3019 Order, pp. 14, 16 *with id.*, p. 20. But Bankruptcy Rule 3019 looks to changes in the treatment of claims; there is no qualifier of *where* in the plan that claim treatment is found.[5] The relevant change of claim treatment arose from the shift of the Transfer Portfolio's treatment as a true lease under § 365 (as stated in the Omega Compromise) to that of a secured financing under §§ 506(a) and 1129.

18. But the Amended Plan's modifications **purporting** to conform to recharacterization are adverse to Omega's claim treatment because Omega does not receive both: (1) full payment of the $190 million Transfer Portfolio secured claim resulting from recharacterization, as required by § 506(a) and § 1129; and (2) full payment of Omega's agreed-upon distribution on its Restructuring Portfolio secured claim (i.e., the Plan Sponsor Consideration), as required by the Original Plan.

19. In short, the only way the Original Plan can satisfy the secured claim created by Transfer Portfolio recharacterization **and also** satisfy Bankruptcy Rule 3019 is to give Omega the unabridged Plan Sponsor Consideration (less the carve out for the unsecured creditors, if permitted) with respect to the Restructure Portfolio secured claim and the full value of the Transfer Portfolio with respect to the Transfer Portfolio secured claim.

---

[5] Alternatively, if after recharacterization, as the Court described, the Original Plan's "Omega Compromise" was just a preconfirmation return of collateral, this collateral should be added to Section III.B.1 of the Original Plan, which results in a corresponding increase in the "Omega Secured Claim" under the Original Plan. (*N.B.*, the Omega Claim definitions in the Original Plan incorporated the effects of the Omega Compromise.) Comparison of the Original Plan, so viewed, with the Amended Plan, reveals that both require a distribution of the Transfer Portfolio. The only difference is that the Amended Plan now breaches the Plan Sponsor Consideration.

12340276

**B.** **Paragraph 6 of the 9019 Settlement Order preserved the estates' rights in any equity in the Transfer Portfolio; it did not prospectively invalidate Omega's liens in the Transfer Portfolio upon recharacterization.**

20.     The Court notes that the rejection of the Transfer Portfolio under the 9019 Settlement was subject to a preservation of certain rights, including the estates' recharacterization claims.  The Court notes that the preservation of rights is meaningless "if Omega could simply claim that the debtors received full value for the now-recharacterized Transfer Portfolio in the 9019 Settlement."  3019 Order, p. 15.  The result is that the Court ruled that recharacterization created $190 million of unencumbered value for the estates.

21.     However, this analysis fails to consider that the $190 million in value brought into the estates via recharacterization of the Transfer Portfolio was subject to a lien resulting from that same act of recharacterization.   The leases were recharacterized as financing agreements.   And, where real property leases are recharacterized as financing agreements, the nominal lessor's legal title as of the Petition Date is treated as a lien securing the future stream of nominal "lease," now loan, payments.  *In re United Airlines, Inc.*, 416 F.3d at 618; *In re Montgomery Ward, L.L.C.*, 469 B.R. at 528.

22.     Accordingly, any right to recharacterization preserved under the 9019 Settlement Agreement had value to the estates *if it could also be shown that <u>unencumbered</u> value had been transferred* (i.e., there was equity in the property at the time of transfer).   While recharacterization would bring the Transfer Portfolio Facilities into the Debtors' estates, the Facilities would come into the estates subject to a lien in Omega's favor. Absent proof that the Transfer Portfolio value exceeded Omega's secured claim or some other successful challenge to the validity, priority, and extent of any resulting liens (each, a "*Lien Challenge*"), recharacterization brought no value to the estates – it only allowed the Debtors to sell their assets using Section 363(k).  The Court recognized this fact in its oral ruling denying the Valuation Motion when it stated, "I believe those caveats [in the 9019 Order reserving certain rights] were narrower than the

parties argued, more of a preservation of claim should Omega prove to have a hole in its liens or be found liable under another theory." Tr. of Ruling on Valuation Motion, 6:18-25.

23. The Debtors also recognized this fact in their 9019 Motion, conceding "*[b]ecause Omega would be considered a secured creditor with liens against the Debtors' assets that exceed the value of those assets*" recharacterization of the Transfer Portfolio would "*only lead to a pyrrhic victory.*" 9019 Motion, p. 2. Of course, the Committee's rejoinder at the hearing was that Omega's liens might not fully encumber the value transferred.[6] It was clear that recharacterization *qua* recharacterization, without a Lien Challenge, would simply create and then pay an additional secured claim – in other words, it would just be a wash for the estates. In contrast, any "value" transferred not subject to Omega's valid liens would be preserved and, if proven, would have to be accounted for in Omega's treatment in any confirmable plan.[7]

24. By Paragraph 6 in the 9019 Settlement Order, Omega took back the Transfer Portfolio, accepting the risk that recharacterization would be joined with a successful Lien Challenge. But as yet, no such challenge has been successfully prosecuted. Any implication that recharacterization

---

[6] Hence, the parties' discussed the potential value of the Transfer Portfolio in relation to Omega's resulting claims. *See e.g.*, Docket No. 385, pp. 58–59 (Mr. Califano: indicating there was no equity in the Transfer Portfolio because Omega was taking a sharp rent cut and noting the size of Omega's resulting deficiency claim), pp. 72:23-25–73:1 (Mr. Cooley: explaining that under 9019 Settlement, Omega receives properties that until proven otherwise would be subject to valid liens); p. 84 (Mr. Lawall: arguing that Omega's liens on Transfer Portfolio were subject to challenge under fraudulent conveyance law); pp. 127–28, 133 (Mr. Lapowsky: arguing that Debtors' "pyrrhic victory" argument regarding recharacterization of the Transfer Portfolio should be discounted because certain assets, such as provider agreements, were not subject to Omega's liens, the fraudulent transfer claims could be used to avoid the liens, and Omega might be unable to satisfy any money judgment resulting from a lien deficiency); pp. 139–40 (Mr. Califano: arguing that Committee's rights to pursue their claims, for instance, their *ResCap* arguments, with respect to the Transfer Portfolio were preserved to confirmation, and describing these claims as value the unsecured creditors could then obtain).

[7] Docket No. 385, pp. 139–40 (Mr. Califano: arguing that Committee's rights to pursue their claims, for instance, their "*ResCap*" arguments, with respect to the Transfer Portfolio were preserved to confirmation, and describing these claims as value the unsecured creditors could then obtain). Mr. Califano's use of the term "value" is somewhat vague until put in context. Put in context, Mr. Califano's comments regarding preserving the Committee's *ResCap* arguments and fraudulent conveyance theories makes it plain that the value being described was any value unencumbered by Omega's liens.

Page 10

brings value to the estates simply ignores the secured claim created by virtue of recharacterization.

**C.** **Failure to account for Omega's liens in the Transfer Portfolio is inconsistent with the Bankruptcy Rules, Bankruptcy Code, and Constitution.**

25.     The 3019 Order clearly requires the use of the Transfer Portfolio value in derogation of Omega's liens on that value. Bankruptcy Rule 3019 does not and cannot allow this result. Section 1127(d) provides that following a plan modification, a creditor having voted to accept or reject the plan, may (within the time fixed by the Court) change its vote. Bankruptcy Rule 3019 clarifies that a creditor, having previously accepted a plan, is deemed to have accepted a modification so long as the change "does not adversely change the treatment of any claim by any creditor." Fed. R. Bankr. P. 3019(a).

26.     Bankruptcy Rule 3019 does not contemplate the circumstance faced by the Court, because it would require the Court to compare Omega's claim treatment under § 365 with claim treatment under § 506 and § 1129, which entirely changes the landscape of plan confirmation rights and procedure. The Original Plan and Amended Plan are thus a comparison of apples and oranges. Indeed, the Court was asked to deem Omega to have voted a secured claim in favor of the Original Plan that did not exist yet at the time of balloting. But even if the comparison can be made, it cannot be made without affording Omega a distribution in the full amount of its Transfer Portfolio secured claim.

27.     To do otherwise is inconsistent with § 506(a) (giving a creditor a secured claim to the extent of its interest in the estates' interest in property) and the minimum requirements necessary to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(7)(A)(ii) (providing that holder of impaired claim that has not voted claim in favor of the plan is entitled to liquidation value of claim or interest).[8] Bankruptcy Rule 3019 cannot "not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2075; *Bonner v.*

---

[8] Given that Omega was not given an opportunity to vote its Transfer Portfolio secured claim, which is clearly impaired, it would seem that the Amended Plan also runs afoul of § 1129(b)(2)(A)(2)(II).

12340276

*Adams (Matter of Adams)*, 734 F.2d 1094, 1099 (5th Cir. 1984); *see also In re Friesenhahn*, 169 B.R. 615, 629 (Bankr. W.D. Tex. 1994) ("The Bankruptcy Code and the Rules must be harmonized unless it is impossible to do so, and if two plausible interpretations are possible, the one that is both possible and most consistent with congressional intent should prevail.").

28.     Because Omega's Transfer Portfolio liens (a) were not anticipated at the time the Original Plan was voted upon, (b) arose after the Original Plan was voted upon, (c) will be voided upon confirmation of the Amended Plan, and (d) will not be repaid at least the minimum required under § 1129(a)(7)(A)(ii), the Court's failure to afford Omega an opportunity to vote (at least voting the secured claim resulting from recharacterization of the Transfer Portfolio) for or against the Amended Plan, unlawfully abridges Omega's property rights without due process of law. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 588 (1935) ("The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment.").

29.     Accordingly, the Court erred in using Bankruptcy Rule 3019 to bind Omega to a plan treatment that effectively eviscerates a lien created after Omega voted without affording Omega the minimum protections of the Bankruptcy Code (*i.e.*, distribution in the full amount of Omega's Transfer Portfolio secured claim).

## V.
## <u>CONCLUSION</u>

30.     Omega bargained for a specific claim treatment when it voted in favor of the Original Plan – (a) the return of the Transfer Portfolio under the Omega Compromise, (b) the Plan Sponsor Consideration, less a proposed amount set aside for general unsecured creditors, and (c) payment in full in cash of the DIP Facility Claim.

31.     Recharacterization of the Transfer Portfolio brought into the estates $190 million of real property but that value was subject to a corresponding $190 million secured claim.

12340276

32.     Consistent with Bankruptcy Rule 3019, the Original Plan certainly could be modified such that Omega would have a $190 million credit of the Transfer Portfolio value against its corresponding $190 million Transfer Portfolio secured claim. But nothing in Bankruptcy Rule 3019 allows the shifting of that $190 million in value – which Omega would have received in full under the Original Plan – to other creditors. Using the Transfer Portfolio, whether as a leasehold interest or as collateral, to repay other creditors was never contemplated by the Original Plan and was never agreed to as part of the Recharacterization Judgment. Accordingly, the Court erred in holding that the Amended Plan's treatment of Omega's claims is not material and adverse as compared to the Original Plan.

**WHEREFORE**, Omega respectfully requests that the Court amend its 3019 Order to deny the relief requested in the Debtors' 3019 Motion.

12340276

Dated: December 11, 2018
Dallas, Texas

Respectfully submitted,

**Bryan Cave Leighton Paisner LLP**

By: */s/ Michael P. Cooley*
Keith M. Aurzada (TX Bar No. 24009880)
Michael P. Cooley (TX Bar No. 24034388)
JP Morgan Chase Tower
2200 Ross Avenue, Suite 3300
Dallas, Texas 75201
T: 214.721.8000
F: 214.721.8100
keith.aurzada@bclplaw.com
michael.cooley@bclplaw.com

- and –

Mark I. Duedall (admitted *pro hac vice*)
Leah Fiorenza McNeill (admitted *pro hac vice*)
One Atlantic Center – Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, Georgia 30309-3471
Telephone: 404.572.6600
Facsimile: 404.572.6999

David M. Unseth (admitted *pro hac vice*)
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102-2750
Telephone: 314.259.2000
Facsimile: 314.259.2020

*Counsel for OHI Asset RO, LLC, and
certain affiliates*

Page 14

12340276

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2018, a copy of the foregoing was served to all the parties listed on the *Master Service List* [Docket No. 1225] maintained by the Debtors pursuant to the Court's *Order Granting Complex Chapter 11 Bankruptcy Case Treatment* [Docket No. 99] via the Court's EM/ECF electronic system to all parties consenting to service through same, and to all others by first-class mail, postage pre-paid addressed as listed therein.

*/s/* Michael P. Cooley
Michael P. Cooley

### Parties Served Via the Court's EM/ECF Electronic System:

DLA Piper LLP (US)
Attn: Andy Zollinger
1717 Main Street, Suite 4600
Dallas, TX 75201-4629
Phone: 214-743-4500
FAX: 214-743-4545
Email: andrew.zollinger@dlapiper.com

Office of the United States Trustee
Attn: Meredyth Kippes
Attn: Nancy Resnick
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, TX 75242
Phone: 214-767-8967
Email: meredyth.a.kippes@usdoj.gov
Email: nancy.s.resnick@usdoj.gov

Norton Rose Fulbright US LLP
Attn: Louis R. Strubeck, Jr.
Attn: Ryan E. Manns
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Phone: 214-855-8000
FAX: 214-855-8200
Email: ryan.manns@nortonrosefulbright.com

Ferguson Braswell Fraser Kubasta PC
Attn: Leighton Aiken
2500 Dallas Parkway
Suite 600
Plano, TX 75093
Phone: 972-378-9111
FAX: 972-378-9115
Email: laiken@fbfk.law

### Parties Served Via United States Mail:

DLA Piper LLP (US)
Attn: Thomas R. Califano
Attn: Dienna Ching Corrado
1251 Avenue of the Americas
New York, NY 10020-1104
Phone: 212-335-4500
FAX: 212-335-4501
Email: thomas.califano@dlapiper.com
Email: dienna.corrado@dlapiper.com

DLA Piper LLP (US)
Attn: Daniel Simon
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, GA 30309-3450
Phone: 404-736-7800
FAX: 404-682-7800
Email: daniel.simon@dlapiper.com

12340276

Pepper Hamilton LLP
Attn: Francis J. Lawall
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Phone: 215-981-4000
FAX: 215-981-4750
Email: lawallf@pepperlaw.com

Pepper Hamilton LLP
Attn: Donald J. Detweiler
Hercules Plaza, Suite 5100
1313 Market Street, P.O. Box 1709
Wilmington, DE 19899-1709
Phone: 302-777-6500
FAX: 302-421-8390
Email: detweilerd@pepperlaw.com

Accelerated Care Plus Leasing Inc.
13828 Collections Center Drive
Chicago, IL 60693
Phone: 800-350-1100
Email: acp-customersupport@hanger.com

Advance Nursing Corporation
c/o Magnolia Financial Inc.
P.O. Box 16807
Atlanta, GA 30321-0807
Phone: 864-573-9900
Email: cbrock@advancenursing.com
Email: dtorres@advancenursing.com

American Health Associates
15712 SW 41 Street, Suite 16
Davie, FL 33331-1538
Phone: 954-919-5005
Email: contact@ahalabs.com

American Healthtech Software
P.O. Box 936171
Atlanta, GA 31193-6171
Phone: 601-978-6800
Email: katie.wilson@cpsi.com

Anthem BCBS
P.O. Box 951254
Cleveland, OH 44193
Phone: 800-786-8015
Email: laura.crozier@anthem.com

Brown & Brown Northwest
Attn: Issac Zak
Attn: Amanda Scales
P.O. Box 29018
Portland, OR 97296
Phone: 503-274-6511
Email: izak@bbnw.com
Email: ascales@bbnw.com

Curaspan Health Group Inc.
Dept. 2869
P.O. Box 122869
Dallas, TX 75312-2869
Phone: 617-395-0125
Email: info@navihealth.us

Dell Marketing LP
c/o Dell USA LP
P.O. Box 534118
Atlanta, GA 30353-4118
Phone: 800-283-2210
FAX: 512-283-9092

Direct Supply
Box 88201
Milwaukee, WI 53288-0201
Phone: 800-634-7328
Email: dford@directs.com

DME Tennessee LLC
P.O. Box 1017
Dickson, TN 37056-1017
Phone: 877-640-9795
Email: billers@alanahealthcare.com

GA Dept. of Community Health
Benefits Recovery Section
P.O. Box 277941
Atlanta, GA 30384-7941
Phone: 800-610-1863; 404-651-6141

Hancock Daniel Johnson & Nagle
P.O. Box 72050
Richmond, VA 23255-2050
Phone: 804-967-9604
Email: info@hancockdaniel.com

Health Care Services LLC
9221 SW Barber Boulevard
Suite #207
Portland, OR 97219
Phone: 503-977-0380
FAX:   503-977-0473

Inpatient Consultants of North
P.O. Box 844929
Los Angeles, CA 90084-4929
Phone: 888-800-3377

Laser Recharge
485 E. South Street, Suite 101
Collierville, TN 38017
Phone: 901-853-0742
Email: orders@laser-recharge.com

Medshore Ambulance Service Inc.
P.O. Box 650458
Dallas, TX 75265
Phone: 844-597-4911
FAX:   864-260-4575

National Datacare Corporation
P.O. Box 222430
Chantilly, VA 20153-2430
Phone: 703-830-3660
Email: support@nationaldatacare.com
Omnicare Inc.

Hall Booth Smith PC
Attn: Laura E. Hall
191 Peachtree Street, NE, Suite 2900
Atlanta, GA 30303-1775
Phone: 404-954-5000
Email: lhall@hallboothsmith.com
Email: bbendall@hallboothsmith.com

HD Supply Facilities Maintenance Ltd
P.O. Box 509058
San Diego, CA 92150-9058
Phone: 800-798-8888
Email: fmeft@hdsupply.com

Healthcare Services Group Inc.
P.O. Box 829677
Philadelphia, PA 19182-9677
Phone: 864-306-7785
Email: info@hcsgcorp.com

Joerns Healthcare LLC
19748 Dearborn Street
Chatsworth, CA 91311
Phone: 800-966-6662
Email: treasury@joerns.com

Medline Industries Inc.
Dept. 1080
P.O. Box 121080
Dallas, TX 75312-1080
Phone: 847-643-4062
Email: finance@medline.com

Mobilex USA
P.O. Box 17462
Baltimore, MD 21297
Phone: 800-786-8015
Email: jeff.barton@mobilexusa.com

NRC Health
P.O. Box 809030
Chicago, IL 60680-9030
Phone: 800-601-3884
Email: info@nrchealth.com
Patterson Medical

Dept. 781668
P.O. Box 78000
Detroit, MI 48278
Phone: 313-465-1500
Email: results@omnicare.com

Pharmerica Corporation
1900 South Sunset Street, Unit 1A
Longmont, CO 80501
Phone: 720-652-4518
Email: jae4201@pharmerica.com

Pointright
Attn: Kerry Mayer
150 Cambridge Park Drive, Suite 301
Cambridge, MA 02140
Phone: 781-457-5960
Email: info@pointright.com

Quintairos Prieto Wood & Boyer
9200 South Dadeland Boulevard, Suite 100
Miami, FL 33156
Phone: 305-670-1101
Email: fs@qpwblaw.com

Reliance Standard Life Insurance
P.O. Box 3124
Southeastern, PA 19398-3124
Phone: 267-256-3500
Email: customer.service@rsli.com

South Carolina Health Care Association
176 Laurelhurst Avenue
Columbia, SC 29210
Phone: 803-772-7511
Email: schca@schca.org

Staples Advantage
Dept. Dal
P.O. Box 83689
Chicago, IL 60696
Phone: 888-753-4103
Email: arremittance@staples.com

P.O. Box 93040
Chicago, IL 60673-3040
Phone: 800-323-5547
FAX:   630-393-7600

Pointclickcare Technologies, Inc.
P.O. Box 674802
Detroit, MI 48267-4802
Phone: 800-277-5889
Email: accountservices@pointclickcare.com

Presidio Networked Solutions, Inc.
P.O. Box 822169
Philadelphia, PA 19182
Phone: 770-449-6116
Email: eorfale@presidio.com

Regional Ambulance Service Inc.
1089 Augusta Road, Suite 300
Warrenville, SC 29851
Phone: 803-392-7107

Shred It USA Inc
28883 Network Place
Chicago, IL 60673
Phone: 800-697-4733
Email: memphis@shredit.com

Specialized Medical Services Inc.
7237 Solution Center
Chicago, IL 60677-7002
Phone: 800-786-3656
FAX:   414-476-6118
Email: oxygenbilling@specializedmed.com

United Healthcare
P.O. Box 30997
Salt Lake City, UT 84130
Phone: 877-842-3210

Vital Care
P.O. Box 51222
Piedmont, SC 29673
Phone: 866-764-4911
Email: jdockery8105.jd@gmail.com

Georgia Dept. of Community Health
Attn: Lea Lee
Recertification and Certification
2 Peachtree Street, NW
Atlanta, GA 30303
Phone: 404-657-5463
Email: llee@dch.ga.gov

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346
Phone: 800-913-9358
FAX:   855-383-9730

Office of the Attorney General (GA)
Attn: Chris Carr
40 Capitol Square, SW
Atlanta, GA 30334
Phone: 404-656-3300
FAX:   404-657-8733
Email: AGOlens@law.ga.gov

Office of the Attorney General (MS)
Attn: Jim Hood
P.O. Box 220
Jackson, MS 39205
Phone: 601-359-3680
Email: webpage@ago.state.ms.us

Office of the Attorney General (SC)
Attn: Alan Wilson
P.O. Box 11549
Columbia, SC 29211
Phone: 803-734-3970
FAX:   803-253-6283

West IP Communications Inc.
Department 1413
Denver, CO 80256
Phone: 888-728-0950
FAX:   502-315-5162

Indiana State Department of Health
Attn: Miriam Buffington, Program Director
Licensing and Enforcement
Division of Long Term Care
2 North Meridian Street, Section 4B
Indianapolis, IN 46204
Phone: 317-233-7613
Email: mbuffington@isdh.in.gov

NC Division of Health Service Regulation
Attn: Becky Wertz, Section Chief
Nursing Home Licensure/Certification Section
2711 MSC
Raleigh, NC 27699
Phone: 919-855-4580
Email: becky.wertz@dhhs.nc.gov

Office of the Attorney General (IN)
Attn: Curtis T. Hill
Indiana Government Center South
302 W. Washington Street, 5th Floor
Indianapolis, IN 46204
Phone: 317-232-6201
FAX:   317-232-7979

Office of the Attorney General (NC)
Attn: Roy Cooper
9001 Mail Service Center
Raleigh, NC 27699-9001
Phone: 919-716-6400
FAX:   919-716-6750

Office of the Attorney General (TN)
Attn: Herbert H. Slatery, III
P.O. Box 20207
Nashville, TN 37202-0207
Phone: 615-741-3491
FAX:   615-741-2009

Office of the Attorney General (VA)
Attn: Robert B. McEntee, Jr.
202 North Ninth Street
Richmond, VA 23219
Phone: 804-786-7829
Email: RMcEnteeJr@oag.state.va.us

Paul Register
Ombudsman
423 Commerce Road
Richmond, IN 47374
Phone: 765-722-4081
FAX: 765-488-2187
Email: paul.register@ilsi.net

SC Dept of Health & Environmental Control
Attn: Mary Jo Roue, Bureau Chief
Division of Nursing Homes
2600 Bull Street
Columbia, SC 29201
Phone: 803-545-4293
Email: info@dhec.sc.gov

State Department of Health
Attn: Marilynn Winborne
Director of Long Term Care
Box 1700
Jackson, MS 39215-1700
Phone: 601-364-1110
Email: marilynn.winborne@msdh.ms.gov

State LTC Ombudsman
Family and Social Services Admin.
402 West Washington Street
Room W451
Indianapolis, IN 46207-7083
Phone: 317-232-7134
Email: longtermcareombudsman@fssa.in.gov

Tennessee Department of Health
Attn: Ann Rutherford Reed
Director of Licensure
710 James Robertson Parkway
Nashville, TN 37243
Phone: 615-532-6595
Email: ann.r.reed@tn.gov

Virginia Department of Health
Attn: Kathaleen Creegan-Tedeschi
Director Long Term Care Division
9960 Mayland Drive
Henrico, VA 23233
Phone: 804-367-2110
Email: kathaleen.creegan-
tedeschi@vdh.virginia.gov

Apperson Crump, PLC
Attn: J. Mark Benfield
Attn: Madison C. Patey
6070 Poplar Avenue, Suite 600
Memphis, TN 38119-3954
Phone: 901-756-6300
FAX: 901-757-1296
Email: mbenfield@appersoncrump.com
Email: mpatey@appersoncrump.com

Barnes & Thornburg LLP
Attn: Kevin Collins
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Phone: 302-300-3434
FAX: 302-300-3456
Email: kevin.collins@btlaw.com

12340276

Barnes & Thornburg LLP
Attn: Mark Owens
11 S. Meridian Street
Indianapolis, IN 46204-3535
Phone: 317-231-7459
FAX: 317-231-7433
Email: mark.owens@btlaw.com

Department of Justice
Attn: Donna Webb, Asst. US Attorney
1100 Commerce St., Suite 300
Dallas, TX 75242
Phone: 214-659-8600
FAX: 214-659-8807
Email: donna.webb@usdoj.gov

Fultz Maddox Dickens
Attn: Wendy D. Brewer
333 N. Alabama Street, Suite 350
Indianapolis, IN 46204
Phone: 317-215-6220
FAX: 317-252-0275
Email: wbrewer@fmdlegal.com

Haynsworth Sinkler Boyd, P.A.
Attn: Mary Caskey
Attn: Clara Weston
1201 Main Street, 22nd Floor
Columbia, SC 29201
Phone: 312-201-4000
FAX: 312-332-2196
Email: mcaskey@hsblawfirm.com

Buchalter, a Professional Corporation
Attn: Shawn Christianson
55 2nd Street, 17th Floor
San Francisco, CA 94105-3493
Phone: 415-227-0900
FAX: 415-227-0770
Email: schristianson@buchalter.com

Foley & Lardner LLP
Attn: Geoffrey S. Goodman
Attn: Emil P. Khatchatourian
321 N. Clark Street, Suite 2800
Chicago, IL 60654
Phone: 312-832-4500
FAX: 312-832-4700
Email: ggoodman@foley.com
Email: ekhatchatourian@foley.com

Fultz Maddox Dickens PLC
Attn: Laura M. Brymer
Attn: Phillip A. Martin
101 South Fifth Street, 27th Floor
Louisville, KY 40202
Phone: 502-588-2000
FAX: 502-588-2020
Email: lbrymer@fmdlegal.com
Email: pmartin@fmdlegal.com

K&L Gates LLP
Attn: David Weitman
1717 Main Street, Suite 2800
Dallas. TX 75201
Phone: 214-939-5427
FAX: 214-939-5849
Email: david.weitman@klgates.com

Kelly Hart & Hallman LLP
Attn: Michael A. McConnell
Attn: Katherine T. Hopkins
201 Main Street, Suite 2500
Fort Worth, TX 76102
Phone: 817-332-2500
FAX: 817-878-9280
Email: michael.mcconnell@kellyhart.com
Email: katherine.hopkins@kellyhart.com

King & Spalding LLP
Attn: Bradley Giordano
444 W. Lake Street
Suite 1650
Chicago, IL 60606
Phone: 312-995-6333
FAX: 312-995-6330
Email: bgiordano@kslaw.com

King & Spalding LLP
Attn: Edward Ripley
1100 Louisiana
Suite 4000
Houston, TX 77002-5213
Phone: 713-751-3200
FAX: 713-751-3290
Email: eripley@kslaw.com

King & Spalding LLP
Attn: Arthur Steinberg
Attn: Scott Davidson
1185 Avenue of the Americas
New York, NY 10036
Phone: 212-556-2158
Email: asteinberg@kslaw.com
Email: sdavidson@kslaw.com

Law Office of Todd S. Richardson
Attn: Todd S. Richardson
604 Sixth Street
Clarkston, WA 99403
Phone: 509-758-3397
FAX: 509-758-3399

Linebarger Goggan Blair & Sampson, LLP
Attn: Elizabeth Weller
2777 N. Stemmons Freeway
Suite 1000
Dallas, TX 75207
Phone: 214-880-0089
FAX: 469-221-5003
Email: dallas.bankruptcy@publicans.com

Lisenby & Associates, L.L.C.
Attn: Blake Edwin Lisenby
P.O. Box 4101
Macon, GA 31208
Phone: 478-621-7371
FAX: 478-621-7378
Email: blakelisenby@lisenbylaw.com

Manier & Herod, P.C.
Attn: Michael Collins
1201 Demonbreun Street
Suite 900
Nashville, TN 37203
Phone: 615-244-0030
FAX: 615-242-4203
Email: mcollins@manierherod.com

Merrill Lynch Capital
a Div. of Merrill Lynch Business Financial
Services, Inc.
for itself/agent for certain lenders
n/k/a GE Business Financial Services, Inc.
222 North LaSalle Street, Floor 16
Chicago, IL 60601
FAX: 212-449-6993

Mississippi Department of Revenue
Attn: James L. Powell
Post Office Box 22828
Jackson, MS 39225
Phone: 601-923-7412
FAX: 601-923-7453
Email: jim.powell@dor.ms.gov

Munsch Hardt Kopf & Harr, P.C.
Attn: Deborah M. Perry
500 N. Akard Street, Suite 3800
Dallas, TX 75201-6659
Phone: 214-855-7500
FAX:   214-855-7584
Email: dperry@munsch.com

Neligan LLP
Attn: Patrick J. Neligan, Jr.
Attn: James P. Muenker
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Phone: 214-840-5300
FAX:   214-840-5301
Email: pneligan@neliganlaw.com
Email: jmuenker@neliganlaw.com

Powers Taylor, LLP
Attn: Patrick Powers
Attn: Peyton Healey
Attn: Breana Rosenbaum
8150 North Central Expressway, Suite 1575
Dallas, TX 75206
Phone: 214-239-8900
FAX:   214-239-8901
Email: patrick@powerstaylor.com
Email: peyton@powerstaylor.com
Email: breeana@powerstaylor.com

RAS Crane LLC
Attn: Lauren W. Ojha
1900 Enchanted Way, Suite 125
Grapevine, TX 76051
Phone: 817-873-3080
FAX:   817-796-6079
Email: lojha@rascrane.com

Stevens & Lee
Attn: Robert Lapowsky
620 Freedom Business Center
King of Prussia, PA 19406
Phone: 215-751-2866
FAX:   610-371-7958
Email: rl@stevenslee.com

The Law Office of Robert W. Buchholz, P.C.
Attn: Robert W. Buchholz
420 S. Cesar Chavez Boulevard, Suite 300
Dallas, TX 75201
Phone: 214-754-5500
FAX:   214-754-9100
Email: bob@attorneybob.com

The PrivateBank and Trust Company
70 West Madison Street
Suite 200
Chicago, IL 60602
FAX: 312-683-7111