

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 14, 2019**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| 4 West Holdings, Inc. *et al.*,[1] | § | Case No. 18-30777 (HDH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
## CONFIRMING DEBTORS' MODIFIED THIRD AMENDED JOINT PLAN OF
## REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

4 West Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the

"Debtors"), having:

    a)        commenced the Chapter 11 Cases[2] on March 6, 2018 (the "Petition Date"), by each
filing a voluntary petition in the United States Bankruptcy Court for the Northern
District of Texas (the "Court") for relief under chapter 11 of title 11 of the United

---

[1]     A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, is attached hereto as <u>Exhibit A</u>.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

States Code, U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code");

b) continued to operate their businesses and remain in possession of their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c) filed on March 7, 2018, the Debtors filed the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 21], which was amended on May 25, 2018 [Docket No. 438] (the "First Amended Plan") and again on June 12, 2018 [Docket No. 550] (the "Second Amended Plan");

d) obtained, on June 1, 2018, entry of the *Order Approving (A) Disclosure Statement, (B) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (C) Establishing Vote Tabulation Procedures, and (D) Establishing Objection Deadline and Scheduling Plan Confirmation Hearing* [Docket No. 497] (the "Disclosure Statement Order") approving the *Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 436] (the "Disclosure Statement");

e) commenced solicitation of the First Amended Plan on June 7, 2018 and filed, on June 12, 2018, the solicitation version of the Disclosure Statement [Docket No. 554];

f) filed on June 13, 2018, the *Notice to Consider Confirmation of, and Deadline for Objecting to, Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 560] (the "Confirmation Hearing Notice"), and served the Confirmation Hearing Notice on the Debtors' creditors as evidenced by the *Certificate of Service*, dated June 18, 2018 [Docket No. 599], and published the Confirmation Hearing Notice in *The Dallas Morning News* on June 14, 2018 as evidenced by the *Affidavit of Publication*, dated June 14, 2018 [Docket No. 582];

g) filed on June 22, 2018, the Debtors filed the *Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 615] (as may be amended and/or supplemented, the "Plan") and the Disclosure Statement for the *Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 617] (the "Amended Disclosure Statement");

h) commenced solicitation of the Plan on June 22, 2018 (with the Amended Disclosure Statement) from Tort Claimants holding claims in Class 4.A (Tort Claims) under the Plan;

i) obtained, on June 29, 2018, entry of the *Supplemental Order to Order Approving (A) Disclosure Statement, (B) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (C) Establishing Vote Tabulation Procedures, and (D) Establishing Objection Deadline and Scheduling Plan Confirmation Hearing* [Docket No. 656] (the "Supplemental Disclosure Statement Order") approving the Amended Disclosure Statement, the Re-solicitation Package (as defined in the Supplemental Disclosure Statement Order), and certain

modifications to the Solicitation Procedures (as defined in the Supplemental Disclosure Statement Order);

j) filed, on June 29, 2018, the *Notice of Filing of Plan Supplement* [Docket No. 661] (as may be modified, supplemented or amended from time to time, the "Plan Supplement");

k) following a disagreement between the Debtors and Omega regarding the interpretation of the Third Amended Plan, obtained a ruling on July 9, 2018 (the "July 9 Ruling"), whereby the Court agreed with Omega's interpretation of the Plan, and holding that the Debtors' alternative proposal of making the Plan Sponsor Consideration available to pay other administrative and priority claims had an adverse effect on the treatment of the Omega Secured Claim;

l) filed a motion to reconsider [Docket No. 786] (the "Reconsideration Motion") seeking reconsideration of the July 9 Ruling solely with respect to whether the Debtors' proposed modifications to the Third Amended Plan would adversely impact Omega's treatment under the Plan;

m) obtained, on September 7, 2018, an oral ruling granting the Reconsideration Motion and holding that the July 9 Ruling would be without prejudice to the Debtors' right to modify the Plan and have an evidentiary hearing on whether the proposed modification satisfied the requirements of the Bankruptcy Code and Bankruptcy Rules;

n) obtained, on October 4, 2018, the *Order Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, (B) Procedures to Assume and Assign Executory Contracts and Unexpired Leases, and (C) Related Relief* [Docket No. 1041] (the "Sale Order"), authorizing the sale of certain of the Debtors' assets to SC-GA 2018 Partners, LLC (the "Purchaser" or the "Plan Sponsor").

o) filed the *Debtors' Motion to Approve Plan Modifications Under Bankruptcy Rule 3019* [Docket No. 1055] (the "3019 Motion"), and making certain modifications to the Plan as reflected in Docket Nos. 1053 and 1120;

p) obtained, on November 27, 2018, the *Order Granting Debtors' Motion to Approve Plan Modifications Under Bankruptcy Rule 3019* [Docket No. 1214] (the "3019 Ruling");

q) filed, on December 12, 2018, the *Certification of Catherine Nownes-Whitaker of Omni Management Group with Respect to the Solicitation and Tabulation of Votes Relating to the Debtors' Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 1258] (the "Voting Declaration");

r) filed, on December 31, 2018, a conformed version of the Plan incorporating the revisions contained in Docket Nos. 1053 and 1120;

s)      received notice from the Purchaser, pursuant to Article V.B of the Plan, that Purchaser intends to consummate the transactions contemplated by the Sale Order;

t)      filed, on December 31, 2018, certain amendments to the Plan Supplement [Docket No. 1315];

u)      filed, on December 31, 2018, the *Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Modified Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 1316] (the "Confirmation Brief"); and

v)      filed, on January 7, 2019, the *Declaration of Louis E. Robichaux IV in Support of Confirmation of the Debtors' Modified Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 1344] (the "Robichaux Declaration").

And this Court having:

a)      set January 8, 2019 at 1:00 p.m. (Central Standard Time) as the date and time for the commencement of the Confirmation Hearing;

b)      reviewed the Plan, the Amended Disclosure Statement, the Confirmation Brief, the Robichaux Declaration, the Voting Declaration, and all pleadings, and exhibits, statements, responses and comments regarding Confirmation, including all objections, statement and reservation of rights filed by parties in interest on the docket of these Chapter 11 Cases;

c)      considered all oral representations, testimony, documents, filings, and other evidence regarding confirmation of the Plan; and

d)      overruled any and all objections to the Plan and to confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated.

**NOW, THEREFORE**, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, but not limited to, statements of counsel, the Robichaux Declaration, and all other testimony and other evidence proffered, adduced, admitted into evidence and presented at the

Confirmation Hearing, establish just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law and order:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

A.  <u>Findings and Conclusions</u>.  The determinations, findings, judgments, decrees, orders and conclusions set forth in this Confirmation Order and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.  <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of the docket in these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered, and adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

## JURISDICTION AND VENUE

C.  <u>Exclusive Jurisdiction; Venue; Core Proceeding</u>.  The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.  The confirmation of the Plan constitutes a core proceeding under 28 U.S.C. § 157(b)(2) upon which this Court may issue a final order, and confirmation of a plan by this Court is a constitutional exercise of the jurisdiction conferred by

Congress on this Court. This Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

D. <u>Retention of Jurisdiction</u>. The Bankruptcy Court finds and concludes that the Bankruptcy Court's retention of jurisdiction as set forth in Article XI of the Plan is consistent with 28 U.S.C. §§ 157 and 1334.

<b><u>Notice, Solicitation and Acceptance</u></b>

E. <u>Adequate Notice of Confirmation Hearing</u>. In accordance with Bankruptcy Rules 2002, 3019 and 9019, the Disclosure Statement Order, the Amended Disclosure Statement, and various notices filed on the Docket relating to the scheduling of the Confirmation Hearing (including, without limitation, Docket Nos. 560, 671, 715, 1236 and 1310) the Bankruptcy Court finds and concludes that (a) proper, timely and adequate notice of the time for filing objections to the Plan was provided, and (b) proper, timely and adequate notice of the Confirmation Hearing was provided to all Holders of Claims and Equity Interests. No other or further notice of the Confirmation Hearing is necessary or required.

F. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. The Bankruptcy Court finds and concludes that the Debtors have solicited acceptances of the Plan in good faith and in compliance with the Bankruptcy Code. The Disclosure Statement, the Amended Disclosure Statement, the Plan, the Ballots, the Disclosure Statement Order, the Supplemental Disclosure Statement Order, and the various notices filed on the Docket relating to the scheduling of the Confirmation Hearing (including, without limitation, Docket Nos. 560, 671, 715, 1236 and 1310) were transmitted and served in compliance with the Disclosure Statement Order and Supplemental Disclosure Statement Order, the Bankruptcy Rules, and the Local Rules for the United States Bankruptcy Court for the Northern District of Texas (the "<u>Local Rules</u>"). Such transmittal and service were adequate and sufficient and no other or further notice shall be required. The Debtors and each of their agents,

directors, officers, employees, financial advisors, attorneys, and other professionals are deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of the Plan, and, therefore, are not and shall not, on account of such issuance or solicitation, be liable at any time for the violation of any law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the distribution or dissemination of any information contained in the Plan, the Disclosure Statement, the Amended Disclosure Statement and any and all related documents. The Debtors have complied with the Disclosure Statement Order and the Amended Disclosure Statement Order in all respects.

G.     Voting Report.  On December 12, 2018, the Debtors filed the Voting Report certifying the method and results of Ballot tabulation for each of the Classes entitled to vote to accept or reject the Plan.  All procedures used to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Supplemental Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws and regulations.

H.     Plan Supplement.  On June 29, 2018, the Debtors filed the Plan Supplement [Docket No. 661] which included (i) a description of change to corporate structure, (ii) identification of directors and officers of the Reorganized Debtors, (iii) a list of assumed executory contracts and leases, (iv) form Distribution Trust Agreement, (v) form Tort Claimants Trust Agreement, and (vi) form Transition Services Agreement.  On December 31, 2018, the Debtors filed an amended Plan Supplement.  All such materials comply with the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws and regulations, and no other or further notice is or shall be required.

I.      <u>Modifications of the Plan</u>.  Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors proposed certain modifications to the Plan as reflected in Docket Nos. 1053 and 1120, a conformed version of which was filed on December 31, 2018, incorporating such revisions versions of the Plan.  The Court's 3019 Ruling determined that the Plan, as modified, did not materially and adversely change the treatment of Omega such that Omega was deemed to accept the Plan, as modified, and the Plan as modified did not require re-solicitation of any Holders of Claims or Equity Interests.  Adequate and sufficient notice of the Plan, as modified, has been given and no other further notice is or shall be required.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan, as applicable, are deemed to have accepted the Plan as modified.

J.      <u>Burden of Proof</u>.  The Debtors, as proponents of the Plan, have met their burden of proving the satisfaction of the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the evidentiary standard.  Further, each witness whose testimony was proffered or adduced on behalf of the Debtors at or in connection with the Confirmation hearing was credible, reliable and qualified to testify as to the topics addressed in his or her testimony.

K.      <u>Bankruptcy Rule 3016(a)</u>.  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the proponents of the Plan.

## Compliance with Section 1129 of the Bankruptcy Code

L.      Plan Compliance with 11 U.S.C. § 1129(a)(1).    In accordance with Section 1129(a)(1) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that the Plan complies with the applicable provisions of the Bankruptcy Code.

a.      Proper Classification (11 U.S.C. §§ 1122 & 1123(a)(1)).  In accordance with Sections 1122(a) and 1123(a), the Bankruptcy Court finds and concludes that, in addition to Administrative Claims, Professional Fee Claims, DIP Facility Claims, Priority Tax Claims and Other Priority Claims, which need not be classified, the Plan classifies seven (7) Classes of Claims and Equity Interests based on the differences in the legal nature and/or priority of such Claims and Equity Interest.  The Claims and Equity Interests placed in each Class are substantially similar to the other Claims or Equity Interests, as the case may be, in each such Class and such Classes do not unfairly discriminate between or among Holders of Claims and Interests.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests under the Plan.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b.      Specified Unimpaired Classes (11 U.S.C. §1123(a)(2)).  Article III of the Plan specifies that Class 2 (Secured Tax Claims) and Class 3 (Other Secured Claims) (each, an "Unimpaired Class") are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c.      Specified Treatment of Impaired Classes (11 U.S.C. §1123(a)(3)).  Article III of the Plan specifies that Claims in Class 1 (Omega Secured Claim), Class 4 (General Unsecured Claims), Class 4.A (Tort Claims), Class 5 (Subordinated Claims), and Equity Interests in Class 6 (Equity Interests) (each, an "Impaired Class") are Impaired within the meaning of section 1124 of the Bankruptcy Code and clearly specifies the treatment of the Claims and Equity Interests in those Classes, thereby satisfying the requirements of section 1123(a)(3) of the Bankruptcy Code.

d.      No Discrimination (11 U.S.C. §1123(a)(4)).  The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e.      Implementation of the Plan (11 U.S.C. §1123(a)(5)).  The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

f.     <u>Non-Voting Equity Securities (11 U.S.C. §1123(a)(6))</u>. The Plan provides that the respective organizational documents of each of the Debtors shall be amended and restated or replaced (as applicable), including a provision prohibiting the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

g.     <u>Selection of Directors and Officers (11 U.S.C. §1123(a)(7))</u>. The Debtors disclosed in the Confirmation Brief that GlassRatner Advisory & Capital Group, LLC, by and through Joseph V. Pegnia, will serve as the Distribution Trustee. The Tort Claimants Trustee shall be Brian Ryniker of CBIZ, Inc. or such other individual or entity identified by the Debtors prior to the Effective Date. Gilmour Consulting LLC, by and through Neil Gilmour, will serve as the GUC Trustee. Because the Plan is a liquidating plan, no further disclosure is necessary because the Reorganized Debtors will not retain any managers or officers as of the Effective Date.

h.     <u>Additional Plan Provisions (11 U.S.C. §1123(b))</u>. The Plan contains certain provisions that may be construed as permissive, but are not required for confirmation under the Bankruptcy Code. These discretionary provisions comply with section 1123(b) of the Bankruptcy Code, are appropriate, in the best interests of the Debtors and their Estates and are not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (i) the assumption or rejection of executory contracts and unexpired leases; (ii) releases and exculpation of various Persons and Entities.

i.     <u>The Debtors are Not Individuals (11 U.S.C. §1123(c))</u>. The Debtors are not individuals and, accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

j.     <u>Cure of Defaults (11 U.S.C. §1123(d))</u>. Article VI.B of the Plan provides for the satisfaction of Cure Claim Amounts by the Purchaser in connection with any assumption or assumption and assignment of executory contracts and unexpired leases pursuant to section 365(b)(1), thereby satisfying sections 365 and 1123(d) of the Bankruptcy Code.

k.     <u>Identification of Plan (Bankruptcy Rule 3016(a))</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

l.     <u>Debtors' Compliance with the Bankruptcy Code (11 U.S.C. §1129(a)(2))</u>. The Bankruptcy Court finds and concludes that the Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2). Specifically,

     (i)     The Debtors are proper debtors under Bankruptcy Code § 109;

(ii)     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court; and

(iii)    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots and all related documents and notices, and in soliciting and tabulating votes on the Plan.

M.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Bankruptcy Court finds and concludes that the Debtors have proposed the Plan (including the Plan Supplement and all other agreements, documents and instruments necessary to effectuate the Plan) in good faith and not by any means forbidden by law, and the Debtors have acted, and are presently acting, in good faith in conjunction with all aspects of the Plan, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  All transactions contemplated by the Plan were negotiated and consummated at arms' length, without collusion, and in good faith.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the facts and records of these Chapter 11 Cases and the totality of the circumstances surrounding the formulation of the Plan the solicitation of the Plan, the modifications of the Plan pursuant to Bankruptcy Rule 3019, the Disclosure Statement and the hearings thereon and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  Consistent with the overriding purpose of the Bankruptcy Code, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purpose of reorganizing the Debtors and maximizing the value of the Debtors' assets.

N.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  The Bankruptcy Court finds and concludes that all payments made or to be made by the Debtors or the Distribution Trust (as applicable), for services or for costs and expenses in connection with these Chapter 11 Cases requiring approval, has been approved by, or is subject to the approval of, this Court as reasonable unless otherwise ordered by the Bankruptcy Court, thereby satisfying section

1129(a)(4) of the Bankruptcy Code. The Bankruptcy Court retains jurisdiction to hear and determine all applications for Professional fees and Professional Fee Claims incurred on or before the Effective Date.

O.       Disclosure and Identity of Proposed Management (11 U.S.C. § 1129(a)(5)). The Bankruptcy Court finds and concludes that the Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the Persons proposed to serve as the Distribution Trustee and the Tort Claimants Trustee after confirmation of the Plan have been fully disclosed to the extent such information is available. The appointment of such persons is consistent with the interests of Holders of Claims against the Debtors and with public policy. Because the Plan is a liquidating plan, no further disclosure is necessary because the Reorganized Debtors will not retain any managers or officers as of the Effective Date (other than as expressly provided in Paragraph 73 of this Order).

P.       No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for any rate change that requires regulatory approval. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.

Q.       Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Bankruptcy Court finds and concludes that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis set forth in Exhibit E of the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (a) are reasonable, persuasive and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of a Claim or Equity Interest in an Impaired Class either (i) has accepted the Plan or (ii) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount

that it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

      R.    <u>Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8))</u>. The Bankruptcy Court finds and concludes that:

      i.    Class 1 (Omega Secured Claim) is Impaired under the Plan and, pursuant to the 3019 Ruling, has accepted the Plan in accordance with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3019;

      ii.    Class 2 (Secured Tax Claims) and Class 3 (Other Secured Claims) are Unimpaired under the Plan and pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan;

      iii.    Class 4 (General Unsecured Claims) is Impaired under the Plan and has voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code;

      iv.    Class 4.A (Tort Claims) is Impaired under the Plan and has voted to reject the Plan; and

      v.    Class 5 (Subordinated Claims) and Class 6 (Equity Interests) are Impaired under the Plan and are deemed to have rejected the Plan.

Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Classes 4.A (Tort Claims), Class 5 (Subordinated Claims), and Class 6 (Equity Interests), the Plan is nevertheless confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

      S.    <u>Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9))</u>. The Bankruptcy Court finds and concludes that the Plan's treatment of Administrative Claims (including but not limited to Professional Fee Claims, DIP Facility Claims and Priority Tax Claims) pursuant to Article II of the Plan, satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9)(A), (C), and (D) of the Bankruptcy Code, as applicable. The treatment of Other Priority Claims pursuant to Article II.D of the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(9)(B). The Debtors have sufficient Cash (including from the Plan Sponsor

Consideration) to pay Allowed Administrative Claims, Allowed DIP Facility Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims and Allowed Other Secured Claims.

T.      Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10)).    In accordance with section 1129(a)(10) of the Bankruptcy Code, the Bankruptcy Court finds and concludes that Class 1 (Omega Secured Claim) and Class 4 (General Unsecured Claims) voted to accept the Plan by the requisite majorities, determined without including acceptances of the Plan by any insider.   Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

U.      Feasibility (11 U.S.C. § 1129(a)(11)).  Because the Plan is sufficiently funded from, among other things, the Plan Sponsor Consideration, the Debtors' Cash on hand and Accounts Receivable, the evidence proffered or adduced at the Confirmation Hearing with respect to feasibility including the Confirmation Brief and the Robichaux Declaration, (i) is reasonable, persuasive and credible, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence, and (iv) establishes that the Plan is feasible and that there is a reasonable prospect of the Debtors being able to meet their financial obligations under the Plan, and because the Debtors will effectively be liquidating their Estates through the Distribution Trust, Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

V.      Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).  The Bankruptcy Court finds and concludes that fees payable under 28 U.S.C. § 1930 have been paid or will be paid by the Distribution Trust pursuant to Article XII.B of the Plan, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

W.    No Retiree Benefits (11 U.S.C. § 1129(a)(13)).    The Debtors do not have obligations to pay retiree benefits and, therefore, section 1129(a)(13) of the Bankruptcy Code, to the extent such section is applicable to the Debtors, is satisfied.

X.    Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(14), (15), and (16)). The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations, and thus sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

Y.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).    Holders of Tort Claims (Class 4.A) have voted to reject the Plan, and Holders of Subordinated Claims (Class 5) and Equity Interests (Class 6) are deemed to have rejected the Plan (the "Rejecting Classes"). Based upon the evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, including the Confirmation Brief and the Robichaux Declaration, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.    Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Rejecting Classes.

Z.    Only One Plan (11 U.S.C. § 1129(c)).    Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in the Chapter 11 Cases, and the Plan thereby satisfies the requirements of section 1129(c) of the Bankruptcy Code.

AA.    Principal Purpose of Plan (11 U.S.C. § 1129(d)).    The Bankruptcy Court finds and concludes that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

BB.     Small Business Case (11 U.S.C. § 1129(e)).  None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

CC.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  The evidence proffered or adduced at the Confirmation Hearing (i) is reasonable, persuasive and credible, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence, (iv) establishes that the Debtors and each of their respective Related Persons have solicited acceptances or rejections of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation and (v) establishes that the Debtors, the Reorganized Debtors, the Distribution Trust, the Tort Claimants Trust, the GUC Trust, and each of their respective Related Persons will, as applicable, continue to act in good faith if they consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby, and take all other actions authorized by this Confirmation Order. Accordingly, each of the foregoing Persons is entitled to and, pursuant to this Confirmation Order, granted the full protections afforded by section 1125(e) of the Bankruptcy Code.

DD.     Satisfaction of Confirmation Requirements.  Based on the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

EE.     <u>Substantive Consolidation</u>.  The Plan serves as, and is be deemed to be, a motion for entry of an order substantively consolidating the Chapter 11 Cases as set forth in the Plan, effective *nunc pro tunc* as of the Petition Date.  The Debtors have demonstrated that prepetition, the Debtors operated their businesses as an integrated enterprise to such an extent that many of their major creditors treated them as one legal entity and that separating each of the Debtors' assets and liabilities would be prohibitive and would be harmful to all of the respective creditors.  Based upon the evidence adduced and admitted and arguments made in the Confirmation Brief, the Robichaux Declaration and the statements made at the Confirmation Hearing and the record of these Chapter 11 Cases, substantive consolidation of the Debtors' Estates as provided for in the Plan under Article IV.A is appropriate.

FF.     <u>Implementation of Other Necessary Documents and Agreements</u>.  All documents and agreements necessary or advisable to implement or carry out the Plan, including but not limited to those contained in the Plan Supplement, are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtors, their Estates and holders of Claims and Equity Interests, and shall upon completion of documentation and execution, be valid, binding, and enforceable in accordance with their respective terms and conditions.  The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's length, are fair and reasonable and are reaffirmed and approved.  The Debtors and the Reorganized Debtors, as applicable, are authorized, without any further notice to or action, order or approval of this Court, to finalize, execute and deliver all agreements, documents, instruments and certificates relating

thereto and perform their obligations thereunder in accordance with the Plan. All Holders of Claims or Equity Interests are deemed, pursuant to the Plan and this Confirmation Order, to have consented to the entry by the Debtors and the Reorganized Debtors, as applicable, into such documents and agreements.

GG. <u>Plan Supplement</u>. As required by the Bankruptcy Code, the Bankruptcy Rules, and all other applicable orders of this Court, on June 29, 2018, the Debtors filed the *Notice of Filing of Plan Supplement* [Docket No. 661] and on December 31, 2018, the Debtors filed the *Notice of Filing of Amended Plan Supplement* [Docket No. 1315] (together, and as may be modified, supplemented or amended from time to time, the "<u>Plan Supplement</u>"). Notice of the Plan Supplement was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is or shall be required. The Debtors are authorized to modify the Plan Supplement in accordance with the Plan through and including the Effective Date. All Holders of Claims or Equity Interests are deemed to have accepted the Plan Supplement as modified in accordance with the terms of this paragraph.

HH. <u>Plan Provisions Valid and Binding</u>. The Bankruptcy Court finds and concludes that, upon entry of this Confirmation Order, each term and provision of the Plan is valid, binding, and enforceable pursuant to its terms.

II. <u>Plan Documents Valid and Binding</u>. The Bankruptcy Court finds and concludes that any and all documents necessary to implement the Plan, including those contained in the Plan Supplement, have been negotiated in good faith and at arms' length, and shall be, upon completion of documentation and execution, valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

JJ.     <u>Executory Contracts and Unexpired Leases</u>.  The Debtors have exercised their reasonable business judgment in determining whether to assume or reject executory contracts and unexpired leases pursuant to Article VI of the Plan.  Each assumption of an executory contract or unexpired lease pursuant to Article VI of the Plan shall be legal, valid and binding, all to the same extent as if such assumption had been effectuated pursuant to an order of the Bankruptcy Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.

KK.     <u>Retention of Jurisdiction</u>.  Upon the Effective Date, this Court shall retain jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Cases, as set forth in <u>Article XI</u> of the Plan and as contemplated herein.

LL.     <u>Additional Findings Regarding Releases</u>.  The releases provided pursuant to <u>Article X.B</u> of the Plan: (a) represent a sound exercise of the Debtors' business judgment; (b) were negotiated in good faith and at arms' length; (c) formed an essential part of the agreement among the Persons participating in the negotiation and formulation of prior iterations of the Plan and in order to secure early support for the Plan; and (d) are: (i) in exchange for good and valuable consideration; (ii) a good faith settlement and compromise of the Claims released thereby; (iii) in the best interest of the Debtors, their Estates and all Holders of Claims and Equity Interests; (iv) fair, equitable, and reasonable under the circumstances of these Chapter 11 Cases; and (v) given and made after due notice and opportunity for hearing.  The Released Parties played an integral role in the formulation of early iterations of the Plan and expended significant time and resources analyzing and negotiating certain provisions of the Plan.

MM.     <u>Additional Findings Regarding the Injunction</u>.  The injunction provisions set forth in <u>Article X.G</u> of the Plan are essential to the Plan and are necessary to preserve and enforce the

releases and exculpation provided for in the Plan and herein and are appropriately tailored to achieve those purposes.

NN.     <u>Conditions Precedent to Effective Date</u>.  Notwithstanding anything to the contrary contained in the Plan, the conditions precedent to the Effective Date set forth in Article IX of the Plan may be waived by the Debtors in their sole discretion, without notice or order of the Bankruptcy Court.

OO.     <u>Objections</u>.  All parties have had a full and fair opportunity to litigate all issues raised, or which might have been raised, in the objections to the Plan and the objections have been fully and fairly litigated.

PP.     <u>Modifications to the Plan</u>.  The Bankruptcy Court finds and concludes that all modifications made to the Plan after solicitation of votes on the Plan had commenced, as reflected in this Confirmation Order or otherwise in connection with the 3019 Motion and the 3019 Ruling, as set forth on the record at the Confirmation Hearing or at the hearing on the 3019 Motion, or as reflected in the Plan, satisfy the requirements of section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, do not adversely and materially affect the treatment of the Holders of any Claims or Equity Interests under the Plan.  Accordingly, the Debtors have satisfied section 1127(c) of the Bankruptcy Code and Bankruptcy Rule 3019 with respect to the Plan, and Holders of Claims that accepted the Plan (or were deemed to have accepted the Plan) are deemed to accept the Plan as modified on the date of this Confirmation Order, pursuant to section 1127(d) of the Bankruptcy Code and Bankruptcy Rule 3019.

QQ.     The Bankruptcy Court finds that Confirmation of the Plan is in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and all other parties in interest.

**ORDER**

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby

**ORDERED, ADJUDGED AND DECREED AS FOLLOWS**:

1.      Confirmation of the Plan.  All requirements for confirmation of the Plan have been satisfied.  The Plan, a copy of which is attached hereto as Exhibit B, is approved and confirmed in its entirety under section 1129 of the Bankruptcy Code.  Each of the terms and conditions of the Plan and the exhibits and schedules thereto, as modified herein, including, without limitation, the Plan Supplement, are an integral part of the Plan and are hereby approved.  The Plan complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

2.      Notice of the Confirmation Hearing.  Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order and Supplemental Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.      Solicitation.  The solicitation of votes on the Plan was done in good faith, complied with the Disclosure Statement Order and the Supplemental Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

4.      Ballots.  The forms of Ballots are in compliance with Bankruptcy Rule 3018(c). The Court's 3019 Ruling previously determined that the Plan, as modified, did not materially and adversely change the treatment of Omega's Claims, such that Omega's prior votes to accept the Plan carried forward to deem Omega to accept the Plan, as modified.  Pursuant to oral motions

presented at the Confirmation Hearing, each of Omnicare, Inc. and Healthcare Services Group, Inc. has changed its respective vote rejecting the Plan to a vote accepting the Plan.

5. <u>Objections</u>. All Objections to confirmation of the Plan that have not been withdrawn, waived, or settled and all reservations of rights included therein, have been adjudicated as set forth on the record at the Confirmation Hearing, and all withdrawn objections are deemed withdrawn with prejudice.

6. <u>Provisions of Plan Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are (i) non-severable and mutually dependent; (ii) valid and enforceable pursuant to their terms; and (iii) integral to the Plan and this Confirmation Order, respectively, and may not be deleted or modified except in accordance with <u>Article XII.D</u> of the Plan.

7. <u>Plan Classification Controlling</u>. The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Equity Interests under the Plan for distribution purposes, (c) may not be relied upon by any creditor or interest holder as representing the actual classification of such Claims or Equity Interests under the Plan for distribution or any other purpose (other than for evidencing the vote of such party on the Plan), and (d) shall not be binding on the Debtors, the Distribution Trust, the Reorganized Debtors or holders of Claims or Equity Interests for purposes other than voting on the Plan.

8.      <u>Distributions are Fair</u>.  The distribution of Cash and any applicable assets to the Holders of Allowed Claims are fair and for reasonably equivalent value.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.  The entry of this Confirmation Order shall constitute this Court's approval of the compromises or settlements of all such Claims, Equity Interests and controversies, as well as a finding by this Court that such compromises or settlements are in the best interest of the Debtors, their Estates and holders of Claims and Equity Interests and are fair, equitable and reasonable.

9.      <u>Binding Effect</u>.  Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, effective as of the Effective Date and without limiting or altering <u>Article X.H</u> of the Plan, the provisions of the Plan (including the exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with, the Plan) and this Confirmation Order shall be binding on (a) the Debtors and the Reorganized Debtors, (b) any and all Holders of Claims against and Equity Interests in the Debtors, whether or not Impaired under the Plan and whether or not such Holders have accepted or rejected the Plan or affirmatively voted to reject the Plan, (c) all Persons and Entities that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan and this Confirmation Order, (d) each Person or Entity receiving, retaining or otherwise acquiring property under the Plan, (e) any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors and (f) the respective successors and assigns of each of the foregoing, to the maximum extent permitted by applicable law, and notwithstanding whether or not such Person or Entity (i) will receive or retain any

property, or interest in property, under the Plan, (ii) has filed a Proof of Claim or interest in the Chapter 11 Cases, or (iii) failed to vote to accept or reject the Plan, affirmatively voted to reject the Plan, or is conclusively presumed to reject the Plan.

10.     <u>Substantive Consolidation</u>.  Except as expressly provided in the Plan, each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims under this Plan and distributions from the Distribution Trust, GUC Trust and Tort Claimants Trust.  On the Effective Date, (i) all Distribution Trust Assets (and all proceeds thereof), the General Unsecured Claims Cash Amount, the Tort Claims Cash Amount and all liabilities each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (ii) all Intercompany Claims among the Debtors shall be eliminated and there shall be no distributions on account of such Intercompany Claims, (iii) any obligation of a Debtor and any guarantee thereof by any other Debtor shall be deemed to be one obligation, and any such guarantee shall be eliminated, (iv) each Claim filed or to be filed against more than one Debtor shall be deemed filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the Debtors, and (v) any joint or several liability of the Debtors shall be deemed one obligation of the Debtors, with each of the foregoing effective retroactive to the Petition Date.  On the Effective Date, and in accordance with the terms of the Plan, all Claims based upon guarantees of collection, payment or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect. Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structures of the Reorganized Debtors.

11.     <u>Plan Sponsor Election</u>.  Prior to the Effective Date, the Purchaser closed the sale of certain of the Debtors' assets pursuant to the terms and conditions contained in the Sale Order.

From and after the Effective Date, the Reorganized Debtors shall be liquidated and/or dissolved by the Purchaser, and the applicable Debtors or Reorganized Debtors are authorized to consummate any such transactions necessary or desirable to carry out such purposes.

12.     <u>Corporate Existence</u>.    After the Effective Date, the Reorganized Debtors shall continue to exist as separate legal entities in accordance with the applicable law in the respective jurisdictions in which they are incorporated, organized or formed and pursuant to their respective certificates of formation and limited liability company agreements, or other applicable organizational documents, in effect immediately prior to the Effective Date, for purposes of liquidating such entities pursuant to the Plan.

13.     <u>Plan Sponsor Note</u>.    On the Effective Date, the Purchaser and Omega shall be authorized to execute and deliver, and to consummate the transactions contemplated by, the Plan Sponsor Note, which such Plan Sponsor Note shall constitute good and fair consideration included in the treatment and distribution to Omega pursuant to the Plan and without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by the Plan Sponsor Note). On the Effective Date, the Plan Sponsor Note shall constitute legal, valid, binding and authorized indebtedness and obligations of the Purchaser, enforceable in accordance with its respective terms and such indebtedness and obligations shall not be, and shall not be deemed to be, enjoined or subject to discharge, impairment, release or avoidance under the Plan, this Confirmation Order or on account of the Confirmation or Consummation of the Plan.

14.     <u>Release of Liens and Claims</u>.    To the fullest extent provided under section 1141(c) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided herein or in any contract, instrument, release or other agreement or document entered into or

delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made under the Plan, all Liens and Claims against the assets or property of the Debtors or the Estates shall be fully released, canceled, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity. The filing of this Confirmation Order with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be required in order to effect, the termination of such Liens or Claims and other interests to the extent provided in the immediately preceding sentence.

15. <u>Distribution Trust</u>. On the Effective Date, the Distribution Trust will be established pursuant to and in accordance with the terms of the Plan, including Article IV.K of the Plan, and the Distribution Trust Agreement. GlassRatner Advisory & Capital Group, LLC, by and through Joseph V. Pegnia, is appointed as Distribution Trustee. The Distribution Trust and Distribution Trustee shall have such powers, duties, and responsibilities as are provided for in the Plan and the Distribution Trust Agreement and shall be compensated in accordance with the Plan and the Distribution Trust Agreement.

16. <u>General Unsecured Creditor Trust ("GUC Trust")</u>. On the Effective Date, the Plan shall be modified to provide for the establishment of a GUC Trust pursuant to the terms of a GUC Trust Agreement to be filed with the Court within seven (7) days of the entry of this Order. Gilmour Consulting LLC, by and through Neil Gilmour is hereby appointed as the GUC Trustee. The GUC Trustee shall have such powers, duties, and responsibilities as are provided for in the GUC Trust Agreement and shall be compensated in accordance with the GUC Trust Agreement. The GUC Trust and GUC Trustee shall be solely responsible for objecting to, resolving and paying

all Allowed General Unsecured Claims. The GUC Trust shall be established for the sole purpose of liquidating and distributing the General Unsecured Claims Cash Amount in accordance with Treas. Reg. Section 301.7701-4 (b) or applicable state law, with no objective to continue or engage in the conduct of a trade or business. If requested by the GUC Trust, the Reorganized Debtors or the Distribution Trust, as appropriate, shall provide such data, records, access to personal information or questions, or other similar kind of assistance that the GUC Trust may reasonably request in order for the GUC Trust to liquidate its assets, resolve and pay claims, or otherwise complete its duties. All fees, costs and expenses of the GUC Trustee and GUC Trust, and any fees, costs and expenses of the Reorganized Debtors or Distribution Trust incurred in assisting the GUC Trust, shall be paid from the GUC Trust Assets in accordance with the GUC Trust Agreement.

17.     Funding and Vesting of General Unsecured Claims Cash Amount. On the Effective Date the General Unsecured Claims Cash Amount shall be paid to the GUC Trust and vest in the GUC Trust, to and for the exclusive benefit of the holders of all Allowed Class 4 General Unsecured Claims, free and clear of all Claims, Liens, charges and other encumbrances. No other class of claims (Class 1 Omega Secured Claim, Class 2 Secured Tax Claims, Class 3 Other Secured Claims, Class 4 A Tort Claims, Class 5 Subordinated Claims, and Class 6 Equity Claims) or other Allowed Claims (Administrative Claims, Professional Fee Claims, DIP Facility Claims, Priority Tax Claims and Oher Priority Claims) shall be entitled to a distribution from the GUC Trust or the General Unsecured Claims Cash Amount.

18.     Deleted, Amended and Modified Article V(T) of the Plan. Article V(T) of the Plan shall be deleted in its entirety and replaced with the following:

T.     General Unsecured Claims Cash Amount. Notwithstanding any other provision of this Plan to the contrary, the Debtors and the GUC Trust

shall only be obligated to satisfy Allowed General Unsecured Claims from the General Unsecured Claims Cash Amount, and no other asset or property of the Debtors, the Reorganized Debtors, the Distribution Trust, the Tort Claimants Trust or their respective property or Estates shall be required to be used or otherwise monetized to pay or otherwise fund Allowed General Unsecured Claims. Omega shall receive no distribution on account of the Omega Secured Claim or Omega Unsecured Claim from the GUC Trust or the General Unsecured Claims Cash Amount

19. <u>Release, Waiver and Dismissal of Avoidance Actions.</u> On the Effective Date, to the extent not previously transferred to the Plan Sponsor, the Debtors and Plan Sponsor shall release and waive all potential Avoidance Actions.

20. <u>Resolution of Omega Objection to Plan</u>. On December 31, 2018, Omega filed a limited objection to the Debtors' Plan [Docket No. 1313]. To resolve the objection, and in further resolution of certain related disputes between Omega and the Committee relating to the enforcement of the Committee Settlement Ruling, the Debtors, the Committee, and Omega have agreed as follows:

a. Notwithstanding anything to the contrary stated in the Plan, the General Unsecured Claims Cash Amount shall be an amount equal to $7,400,000.00; <u>provided</u>, <u>however</u>, that pursuant to the terms thereof, Omega shall receive no distribution on account of the Omega Unsecured Claim from the General Unsecured Claims Cash Amount.

b. The General Unsecured Claims Cash Amount may be used to fund the expenses of the GUC Trust.

c. DLA Piper LLP (US), as counsel to the Debtors, shall voluntarily reduce its Professional Fee Claim by $300,000.00, in consideration of which Omega, the Committee, the Distribution Trustee and the GUC Trustee shall not object to the allowance of such discounted Professional Fee Claim.

d. The Committee's legal and financial advisors—Pepper Hamilton LLP, Norton Rose Fulbright, and CohnReznick LLP shall voluntarily reduce their Professional Fee Claims in the collective amount of $300,000.00, in consideration of which the Debtors, Omega, the Committee, the Distribution Trustee and the GUC Trustee shall not object to the allowance of the Committee's legal and financial advisors' Professional Fee Claims.

e.     On the Effective Date, the following motions shall be deemed withdrawn: (i) *Motion to Compel Payment of Post-Petition Obligations* [Docket No. 783]; (ii) *Motion Pursuant to Fed. R. Bankr. P. 9024 for Relief from Certain Provisions of the Final DIP Financing Order* [Docket No. 789]; (iii) *Emergency Motion to Interpret Omega Settlement Agreement or, Alternatively, to Continue Confirmation Hearing* [Docket Nos. 1269, 1275].

f.     On the Effective Date, the Debtors, the Committee, and Omega shall seek and obtain the dismissal of the following adversary proceedings and pending appeals, to the extent not already dismissed: (i) *OHI Asset RO, LLC v. Official Committee of Unsecured Creditors*, Case No. 3:18-cv-03106-M (N.D. Tex.); (ii) *4 West Holdings, Inc. v. OHI Asset RO, LLC*, Adv. No. 18-03237 (Bankr. N.D. Tex.); and (iii) *Official Committee of Unsecured Creditors v. OHI Asset RO, LLC*, Adv. No. 18-03241 (Bankr. N.D. Tex.).

21.     <u>Tort Claimants Trust</u>. On the Effective Date, the Tort Claimants Trust will be established pursuant to and in accordance with the terms of the Plan, including Article IV.L of the Plan, and the Tort Claimants Trust Agreement. The Tort Claimants Trustee shall be Brian Ryniker of CBIZ, Inc. or such other individual or entity identified by the Debtors prior to the Effective Date. The Tort Claimants Trust and Tort Claimants Trustee shall have such powers, duties, and responsibilities as are provided for in the Plan and the Tort Claimants Trust Agreement and shall be compensated in accordance with the Plan and the Tort Claimants Trust Agreement.

22.     <u>New Board and Officers of the Reorganized Debtors</u>. Because the Plan is a liquidating plan, the Reorganized Debtors will exist solely for the limited purposes of winding up, liquidating and dissolving such Entities under the Plan. The existing boards of director, manager or members and other governing bodies of the Debtors shall be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity.

23.     <u>Corporate Action</u>.

a.     Pursuant to section 1142(b) of the Bankruptcy Code and any applicable state law, each of the Debtors, and/or any other applicable Entity may take any

and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, equity owners, members, managers, officers or directors of the Debtors, the Reorganized Debtors or other applicable Entity or by any other Person.

b.      Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the unitholders, equity owners, directors, officers, managers or members of the Debtors (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the unitholders, equity owners, directors, officers, managers or members of the Debtors, the Reorganized Debtors or other applicable Entity, or the need for any approvals, authorizations, actions or consents of any Person.

c.      As of the Effective Date, all matters provided for in the Plan involving the legal or corporate structure of the Debtors, the Reorganized Debtors or other applicable Entity, and any legal or corporate action required by the Debtors, the Reorganized Debtors or other applicable Person or Entity in connection with the Plan, shall be deemed to have occurred and shall be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the unitholders, equity owners, directors, officers, managers or members of the Debtors, the Reorganized Debtors or other applicable Entity or by any other Person.  Each federal, state, and local (domestic or foreign) governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Plan and the transactions contemplated thereby.

24.      <u>Cancellation of Notes, Equity Interests, Certificates, and Instruments</u>.  On the Effective Date, except to the extent otherwise expressly provided in the Plan, all notes, units, equity interests, indentures, instruments, certificates, agreements and other documents evidencing or relating to any Impaired Claim and/or the Equity Interests and the Equity Interests themselves shall be canceled, and the obligations of the Debtors thereunder or in any way related thereto shall be

fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

25. <u>General Unsecured Claims Cash Amount</u>. The General Unsecured Claims Cash Amount shall be Seven Million Four Hundred Thousand Dollars ($7,400,000) in Cash. Notwithstanding any other provision of the Plan to the contrary, the Debtors and the GUC Trust shall only be obligated to satisfy Allowed General Unsecured Claims from the General Unsecured Claims Cash Amount, and no other asset or property of the Debtors, the Reorganized Debtors, the Distribution Trust, the Tort Claimants Trust or their respective property or Estates shall be required to be used or otherwise monetized to pay or otherwise fund such Allowed Claims. Omega shall receive no distribution from the General Unsecured Claims Cash Amount.

26. <u>Tort Claims Cash Amount</u>. The Tort Claims Cash Amount shall be Two Million Dollars ($2,000,000) in Cash. Notwithstanding any other provision of the Plan to the contrary, the Debtors and the Tort Claimants Trust shall only be obligated to satisfy Allowed Tort Claims from the Tort Claims Cash Amount, and no other asset or property of the Debtors, the Reorganized Debtors, the Distribution Trust, the GUC Trust or their respective property or Estates shall be required to be used or otherwise monetized to pay or otherwise fund such Allowed Claims.

27. <u>Executory Contracts and Unexpired Leases</u>.

    a. The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of the Executory Contracts and Unexpired Leases as set forth in the Plan, the Plan Supplement, this Confirmation Order or other pleadings filed in connection with the Sale Order, and such determination is hereby approved. On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be rejected by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code (collectively, the "<u>Rejected Contracts</u>"), except for those Executory Contracts and Unexpired Leases that have been:

       i.      assumed by the Debtors by prior order of the Bankruptcy Court, including those Executory Contracts and Unexpired Leases that have been, or are contemplated to be, assumed and assigned pursuant to the 9019 Settlement Order or the Sale Order;

       ii.     are the subject of a motion or notice to assume by the Debtors (with the consent of the Purchaser) pending on the Effective Date;

       iii.    are identified by the Debtors on <u>Plan Schedule 3</u> or in the Plan Supplement, in either case which Plan Schedule may be amended by the Debtors (with the written consent of the Purchaser) to add or remove Executory Contracts and Unexpired Leases by filing with the Bankruptcy Court an amended Plan Schedule and serving it on the affected non-Debtor contract parties any time prior to the Effective Date; or

       iv.    are assumed or assumed and assigned by the Debtors (with the written consent of the Purchaser) pursuant to the terms of the Plan.

    b.    To the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to the Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's or any Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the Confirmation or Consummation of the Plan, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

    28.    <u>Approval of Assumption of Assumed Contracts</u>.  The Debtors' assumption of the Assumed Contracts is hereby approved pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  The Assumed Contracts shall remain in full force and effect in accordance with their respective terms and conditions, notwithstanding any provision in such Assumed Contract (including, without limitation, those described in sections 365(b), (c), (e) and (f) of the Bankruptcy

Code) or under applicable non-bankruptcy law that purports to (a) terminate, modify, or restrict, or permit the applicable non-Debtor party to terminate, modify or restrict, such contract or lease or the Debtors' rights, benefits and privileges thereunder; or (b) create or impose, or permit the applicable non-Debtor party to create or impose, any additional duties, obligations, penalties, default rates of interest or payments (monetary and non-monetary) upon any Debtor or Reorganized Debtor, in each case as a result of or in connection with (i) the filing of a petition for relief under Chapter 11 of the Bankruptcy Code by the Debtors; (ii) the Debtors' insolvency or financial condition at any time before the Chapter 11 Cases are closed; or (iii) the Confirmation or Consummation of the Plan.

29.     Cure Disputes.   Any counterparty to an Executory Contract or Unexpired Lease proposed to be assumed or assumed and assigned (an "Assumed Contract") that failed to object timely to the proposed assumption, proposed assumption and assignment, or cure amount is hereby deemed to have consented to such matters and is deemed to have forever released and waived any objection to the proposed assumption, proposed assumption and assignment, and cure amount. The cure amount, if any, with respect to each Assumed Contract that is required to be paid as cure under section 365 of the Bankruptcy Code shall be satisfied by payment of such amount by the Purchaser, or on such other terms as the Bankruptcy Court may order or as the Purchaser, the Debtors and the counterparty to such Assumed Contract may otherwise agree in writing.

30.     Full Release and Satisfaction of Claims.   Subject to any cure claims Filed with respect thereto, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any

assumed Executory Contract or Unexpired Lease at any time prior to the Effective Date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned by Final Order shall be deemed disallowed and expunged (subject to any cure claims Filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

31.     Assignment of Executory Contracts and Unexpired Leases.  With respect to any Executory Contract or Unexpired Lease assumed and assigned pursuant to the Plan, upon and as of the Effective Date, the Purchaser or its assignee shall be deemed to be substituted as a party thereto for the applicable Debtor party to such assigned Executory Contract or Unexpired Lease and, accordingly, the Debtors and the Reorganized Debtors shall be relieved, pursuant to and to the extent set forth in section 365(k) of the Bankruptcy Code, from any further liability under such assigned Executory Contract or Unexpired Lease.

32.     Approval of Rejection of Rejected Contracts.  Unless otherwise identified under Article VI.A of the Plan or otherwise, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date.  This Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections described in Article VI of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of any preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after

service of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection. **Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Distribution Trust, the Debtors, the Reorganized Debtors, or the Estates, and the Distribution Trust, the Debtors, the Reorganized Debtors, and their Estates and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in <u>Article X.G of the Plan</u>.**

33. <u>Exemption From Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code</u>. Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with the Plan, the Restructuring Documents and the Sale Order, shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States or by any other Governmental Unit, and this Confirmation Order shall direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of, transactions contemplated by and the distributions to be made under the Plan, the Restructuring Documents or the Sale Order.

34.     <u>Bar Date for Administrative Claims</u>.  Except as otherwise provided in the Plan, unless previously Filed or paid, requests for payment of Administrative Claims arising in the time period between the Petition Date and the Effective Date must be Filed and served on the Debtors or the Distribution Trust, as applicable, pursuant to the procedures set forth in the Plan no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the applicable Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, the Distribution Trust and their respective Estates and property and such Administrative Claims shall be deemed discharged as of the Effective Date.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in  Article X.G of the Plan.  Nothing in Article II.A of the Plan shall limit, alter, or impair the terms and conditions of the Claims Bar Date Order with respect to the Claims Bar Date for filing administrative expense claims arising under Section 503(b)(9) of the Bankruptcy Code.  Objections to such requests must be Filed and served on the Distribution Trust and the requesting party by the later of (a) the Claims Objection Deadline and (b) 60 days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by Final Order of the Bankruptcy Court.

35.     <u>Procedures for Filing Administrative Claims</u>.  Each person or entity that holds or wishes to assert a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors' estates that such person believes is allowable as an administrative claim under section 503(b) of the Bankruptcy Code, except for certain administrative claims identified in the Plan, and that may have arisen, accrued, or otherwise become due and payable between the Petition Date and the

Effective Date must file an application requesting allowance of such Administrative Claim on or before thirty (30) days after the Effective Date. An Administrative Claims Request shall be considered timely-filed only when actually received by the Debtors' claim agent, Omni Management Group, by U.S. Mail or other hand delivery system at the following address:

**4 West Holdings, Inc., et al. Claims Processing**
**c/o Omni Management Group**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

Holders of Administrative Claims that are required to File and serve an Administrative Claims Request that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors and their respective Estates and property and the Distribution Trust, and such Administrative Claims shall be deemed discharged as of the Effective Date. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article X.G of the Plan.

36. <u>Professional Fee Claims</u>. Professionals asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the Distribution Trust and such other Entities who are designated in this Confirmation Order an application for final allowance of such Professional Fee Claim no later than the Professional Fees Bar Date; <u>provided</u> that the Distribution Trust shall pay Professionals in the ordinary course of business for any work performed after the Effective Date, including those reasonable and documented fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order shall continue to receive such compensation

and reimbursement of expenses from the Debtors and Distribution Trust for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order, in each case without further application or notice to or order of the Bankruptcy Court.

37.     <u>Service of Final Fee Applications</u>.  All Final Fee Applications of Professionals shall be filed with this Court and actually served on or prior to the Professional Fees Bar Date upon the following parties (collectively, the "<u>Notice Parties</u>"):

a.      counsel for the Debtors, DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020 (Attn: Thomas R. Califano, Esq. and Dienna Corrado, Esq.), One Atlantic Center, 1201 West Peachtree Street, Suite 2800, Atlanta, GA 30309 (Attn: Daniel Simon, Esq.), 1717 Main Street, Suite 4600, Dallas, TX 75201 (Attn: Andrew Zollinger, Esq.),

b.      the Office of the United States Trustee for the Northern District of Texas, Earle Cabell Federal Building, 1100 Commerce Street, Room 976, Dallas, TX 75242 (Attn: Nancy Resnick, Esq.),

c.      counsel to Omega, Bryan Cave, LLP, One Atlantic Center, 1201 West Peachtree Street, Suite 1400, Atlanta, GA 30309 (Attn: Mark Duedall, Esq.), JP Morgan Chase Tower, 2200 Ross Avenue, Suite 3300, Dallas, TX 75201 (Attn: Keith Aurzada, Esq.), and One Metropolitan Square, 211 North Broadway, Suite 3600, St. Louis, MO 63102 (Attn: David Unseth, Esq.), and

d.      counsel to the Official Committee of Unsecured Creditors, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, Texas 75201 (Attn.: Ryan E. Manns, Esq.), and Pepper Hamilton LLP, 3000 Two Logan Square, Philadelphia, PA 19103 (Attn.: Francis J. Lawall, Esq.), Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, DE 19899 (Attn.: Donald J. Detweiler, Esq.).

38.     <u>Objections to and Hearing to Approve Final Fee Applications</u>.  Objections to any Professional Fee Claim must be Filed and served on the Distribution Trust and the requesting party by no later than 4:00 p.m. (Central Standard Time) on the date that is twenty (20) day after the Filing of the applicable final request for payment of the Professional Fee Claim (the "<u>Professional Fees Objection Deadline</u>").  Each Holder of an Allowed Professional Fee Claim shall be paid in full in Cash by the Distribution Trust, within five (5) Business Days after entry of the order

approving such Allowed Professional Fee Claim. Only those objections made in writing and timely filed and received by the Professional Fees Objection Deadline will be considered by this Court. If no objection to a Final Fee Application is timely filed and served in accordance with the procedures set forth herein, then this Court may enter a Final Order approving such uncontested Final Fee Application without further notice and the Debtors or the Distribution Trust, as applicable, may pay the amounts described in such uncontested Final Fee Application (or if any Final Fee Application is the subject of an objection, the Debtors or the Distribution Trust, as applicable, shall pay the undisputed amounts described in such Final Fee Application). The hearing to consider approval of the Final Fee Applications, if necessary, will be held as soon as reasonably practicable after the expiration of the Professional Fees Objection Deadline and the date of such hearing will be promptly provided to the applicable Professional and Notice Parties and posted on the Debtors' restructuring web site.

39. <u>Discharge of Claims and Equity Interests.</u>

   a.   To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or this Confirmation Order, effective as of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Equity Interests and Causes of Action of any kind or nature whatsoever against the Debtors or any of their respective assets or properties, including any interest accrued on such Claims or Equity Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed or retained pursuant to the Plan on account of such Claims, Equity Interests or Causes of Action.

   b.   Except as otherwise expressly provided by the Plan or this Confirmation Order, upon the Effective Date, the Debtors and their Estates shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any

judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim.

c. Except as otherwise expressly provided by the Plan or this Confirmation Order, upon the Effective Date: (i) the rights afforded herein and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their respective assets, property, or Estates; (ii) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and each of the Debtor's liability with respect thereto shall be extinguished completely without further notice or action; and (iii) all Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, each of their respective successors and assigns, and each of their respective assets and properties, any such Claims or Equity Interests, whether based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or otherwise.

40.     <u>Releases and Exculpation</u>.  The releases and exculpation provisions contained in the Plan, including, but not limited to, those provided in <u>Article X</u> of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein.

41.     <u>Injunctions</u>.  The injunctions contained in the Plan, including, but not limited to, those provided in <u>Article X.G</u> of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein.

42.     <u>Payment of Statutory Fees; Post-Effective Date Fees and Expenses</u>.  All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Distribution Trust shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee.  Subject to substantive consolidation of the Debtors as provided under the Plan and this Order, each Debtor shall remain obligated to pay quarterly fees to the United States Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The

Distribution Trust shall pay the liabilities and charges that they incur on or after the Effective Date

for Professionals' fees, disbursements, expenses, or related support services (including reasonable

fees, costs and expenses incurred by Professionals relating to the preparation of interim and final

fee applications and obtaining Court approval thereof) in the ordinary course of business and

without application or notice to, or order of, the Bankruptcy Court, including, without limitation,

the reasonable fees, expenses, and disbursements of the Distribution Agents and the fees, costs and

expenses incurred by Professionals in connection with the implementation, enforcement and

Consummation of the Plan and the Restructuring Documents.

43.     _Conditions Precedent to Effective Date_.  The Plan shall not become consummated,

and the Effective Date shall not occur, unless and until the conditions set forth in Article IX.B of

the Plan have been satisfied or waived pursuant to Article IX.C of the Plan; _provided_, _however_,

that notwithstanding anything to the contrary contained in the Plan, the conditions precedent to the

Effective Date set forth in Article IX of the Plan may be waived by the Debtors in their sole

discretion, without notice or order of the Bankruptcy Court.

44.     _Notice of Entry of Confirmation Order and Effective Date_.  In accordance with

Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable on or after the Effective

Date, the Debtors shall provide notice of the entry of this Confirmation Order and of the occurrence

of the Effective Date by serving a Notice of Effective Date, on all known creditors, equity security

holders, the U.S. Trustee and other parties-in-interest in these Chapter 11 Cases; _provided_,

_however_, that such notice need not be given or served under or pursuant to the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules or this Confirmation Order to any Person or Entity to whom

the Debtors mailed a notice of the Confirmation Hearing, but received such notice returned marked

"undeliverable as addressed," "moved-left no forwarding address" or "forwarding order expired,"

or similar reason, unless the Debtors have been informed in writing by such Person or Entity of that Person's or Entity's new mailing address.  The notice described herein is adequate and appropriate under the particular circumstances and no other or further notice is necessary or required.  The Notice of Effective Date shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

45.    <u>No Liability for Solicitation</u>.  Based on the factual findings described in this Confirmation Order, the Debtors, the Reorganized Debtors and each of their respective Related Persons are not, and on account of or with respect to the issuance, sale, or purchase of any security under the Plan, and/or solicitation of votes on the Plan, shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the distribution, offer, issuance, sale, or purchase of any securities.  The Debtors and each of their respective Related Persons have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws, and regulations and are, therefore, entitled to, and are hereby granted, the protections afforded by section 1125(e) of the Bankruptcy Code.

46.    <u>Reversal or Modification of Confirmation Order</u>.  Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of this Court, or any other court of competent jurisdiction, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the date that the Debtors or the Reorganized Debtors received actual written notice of the effective date of such reversal, stay,

modification or vacatur.  Notwithstanding any such reversal, stay, modification or vacatur of this Confirmation Order, any such act, obligation, indebtedness, liability, priority or Lien incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the date that the Debtors or the Reorganized Debtors received actual written notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Confirmation Order and the Plan, or any amendments or modifications thereto, in each case in effect immediately prior to the date that the Debtors or the Reorganized Debtors received such actual written notice.

47.     <u>Failure to Consummate Plan</u>.  If the Confirmation or the Consummation of the Plan does not occur with respect to one or more of the Debtors, then the Plan shall, with respect to such applicable Debtor or Debtors, be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (3) constitute an Allowance of any Claim or Equity Interest; or (4) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

48.     <u>2002 Notice Parties</u>.  After the Effective Date, the Debtors, the Reorganized Debtors and the Distribution Trust, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed a renewed request after the Confirmation Hearing to receive documents pursuant to Bankruptcy Rule 2002.

49.     <u>Dissolution of Committee</u>.  On and as of the Effective Date, the Committee shall dissolve automatically and its members shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases; <u>provided</u>, <u>however</u>, that in the

event of the filing of any appeal of this Order, the Committee shall not be dissolved for purposes of such appeal and the Committee may participate in any such appeal. The Debtors, Reorganized Debtors and Distribution Trust shall not be responsible for paying any fees, costs, or expenses incurred by the members, professionals, or advisors to the Committee after the Effective Date, except for such fees, costs, or expenses incurred (and allowed under section 330 of the Bankruptcy Code) in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Article II.A.2; provided, however, that after the Effective Date, any Professional retained by the Committee shall have the right to file and prosecute Professional Fee Claims, including any appeal of any Final Order relating thereto.

50. <u>Discharge of Patient Care Ombudswoman</u>. On and as of the Effective Date, the duties and responsibilities of the Patient Care Ombudswoman shall be terminated, and the Patient Care Ombudswoman shall be discharged from her rights, duties and responsibilities under section 333 of the Bankruptcy Code and shall not be required to file any further reports or perform any additional duties. The Debtors, Reorganized Debtors and Distribution Trust shall not be responsible for paying any fees, costs, or expenses incurred by the, professionals, or advisors to the Patient Care Ombudswoman after the Effective Date, except for such fees, costs or expenses incurred (and allowed under section 330 of the Bankruptcy Code) in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Article II.A.2 of the Plan; provided, however, that after the Effective Date, the Patient Care Ombudswoman and any Professional retained by the Patient Care Ombudswoman shall have the right to file and prosecute Professional Fee Claims, including any appeal of any Final Order relating thereto.

51.     <u>Successors and Assigns</u>.  The Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all present and former Holders of Claims and Equity Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns.  The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

52.     <u>Terms of Injunction and Automatic Stay</u>.  Unless otherwise provided in the Plan, all injunctions or stays arising under section 105 or section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

53.     <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as legally permissible including, without limitation, jurisdiction over the matters set forth in <u>Article XI</u> of the Plan.  Notwithstanding the foregoing, if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Article XI of the Plan, the provisions of Article XI of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

54.     <u>Headings</u>.  The headings contained within this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

55.     <u>References to Plan Provisions</u>.  The failure specifically to include or reference any particular article, section or provision of the Plan (and the Plan Supplement) or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of this Court that the Plan (and the exhibits and schedules thereto), inclusive of any express modifications set forth in this Confirmation Order, be confirmed in its entirety and any related documents be approved in their entirety and incorporated herein by reference.

56.     <u>No Admission or Waiver</u>.  None of the filing of the Plan, any statement or provision contained within the Plan or the taking of any action by any Debtor with respect to the Plan (and Plan Supplement), the Disclosure Statement or Confirmation Order shall be deemed to be an admission or wavier of any rights of any Debtor.

57.     <u>Confirmation Order Controlling</u>.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is any conflict or inconsistency between the Plan and this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the terms of this Confirmation Order shall control and govern.

58.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to and to the extent set forth in sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, the Plan Supplement, and all other documents and agreements necessary to implement the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

59. <u>Immediate Effectiveness of this Confirmation Order</u>. Pursuant to Bankruptcy Rule 3020(e), the fourteen day stay of this Confirmation Order imposed thereby is waived and the Debtors are hereby authorized to consummate the Plan and the transactions contemplated thereby immediately upon the entry of this Confirmation Order upon this Court's docket.

60. <u>Final Order</u>. This Confirmation Order is a final order and the period in which an appeal thereof must be filed shall commence upon its entry.

61. <u>Mississippi Department of Revenue</u>. The Mississippi Department of Revenue's (the "<u>MDOR</u>") acknowledges that the skilled nursing facilities operated by the Debtors as of the Petition Date have been transferred to affiliates of Nexion Health (collectively, "<u>Nexion</u>"), effective as of July 1, 2018 (the "<u>Nexion Transfer Date</u>") pursuant to the Operations Transfer Agreement [Docket No. 533]. Notwithstanding anything in the Plan or this Confirmation Order to the contrary and subject to the terms of the Operations Transfer Agreement allocating tax liabilities between the Debtors and Nexion:

    i.    MDOR's setoff rights under section 553 of the Bankruptcy Code and recoupment rights are preserved solely with respect to the Debtors for amounts owed for the period prior to the Nexion Transfer Date and neither the Debtors nor the Distribution Trustee shall have setoff rights against MDOR absent a bankruptcy court order;

    ii.    the MDOR shall not be required to file any proofs of claim or requests for payment in the Chapter 11 Cases for any Administrative Claims for the liabilities described in section 503(b)(1)(B) and (C) of the Bankruptcy Code that are owed by the Debtors. The Debtors or the Distribution Trustee, as applicable, shall timely submit returns and remit payment, including penalties and interest, for all taxes due or coming, as required under applicable Mississippi state law, and, should the Debtors, or Reorganized Debtors, or Distribution Trustee, as applicable, fail to so timely file and pay, MDOR may seek relief as may be available from the Court;

    iii.    to the extent the MDOR's Priority Tax Claims, if any, are not paid in full in cash on the Effective Date, such Priority Tax Claims shall, at a minimum, be paid by regular, quarterly installment payments in cash over a period not to exceed five years after the date of the order for relief under section 301 of the Bankruptcy Code, all as required section 1129(a)(9)(C) of the

Bankruptcy Code, along with non-bankruptcy interest in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code and Mississippi state law, as applicable;

iv.    subject to Article X of the Plan (Release, Discharge, Injunction and Related Provisions), the Chapter 11 Cases shall have no effect on the MDOR's rights as to non-Debtor third parties;

v.    the statutorily mandated treatment of MDOR's Allowed Priority Tax Claims and/or any liabilities to MDOR described in section 503(b)(1)(B) and (C) of the Bankruptcy Code shall not be considered a settlement or compromise;

vi.    the MDOR may timely amend any Proof of Claim against any Debtor after the Effective Date with respect to (a) a pending audit, or (b) an audit that may be performed, with respect to any pre- or post-petition tax return, provided however, that the Debtors or the Distribution Trustee preserve all rights to object to such Proof of Claim or any amendments thereto; and

vii.    in the event of a default in payment of Priority Tax Claims of the MDOR, the MDOR shall send written notice of default to the Debtors, Reorganized Debtors, or Distribution Trustee, as applicable, to the address in MDOR's records (with an email copy to counsel). Unless disputed by the Debtors or the Distribution Trustee, if such default is not cured within 10 business days after such notice of default is mailed, the MDOR may (a) enforce the entire amount of its claim; and/or (b) seek such relief as may be available from the Court.

62.    <u>Local Texas Tax Authorities</u>. On July 5, 2018, Hood CAD, Hood County and Wood County (collectively, the "<u>Local Texas Tax Authorities</u>") filed an objection to the Debtors' Plan [Docket No. 686]. To resolve the objection, the parties have agreed as follows: To the extent that the Local Texas Tax Authorities are determined to have an Allowed Class 2 Secured Tax Claim (A) such claim(s) shall be paid in full (i) if on or before January 31, 2019, with no interest; or (ii) if after January 31, 2019, with interest at the rate of 1% per month pursuant to 11 U.S.C. § 511 and applicable non-bankruptcy law, and (B) such holder(s) shall retain its lien(s) on the Sale proceeds until its claim(s) is paid in full.

63.   Tort Claims.   Article XIII.E of the Plan ("Tort Claims") shall be deleted in its entirety and replaced with the following:

> In order to allow for timely Distributions to holders of Tort Claims, the following procedures shall apply to the liquidation and allowance of Tort Claims: (A) the Debtors or the Tort Claimants Trust (as applicable) shall, within forty-five (45) days following the Effective Date (which such date may be extended by further order of the Bankruptcy Court) submit to such holder of a filed Tort Claim either (i) a request for additional documentation to be provided to evidence such Claim or (ii) submit a settlement offer for an Allowed Tort Claim to such holder; (B) the holder of such Tort Claim may accept the settlement offer within thirty (30) days of the mailing of such settlement offer and, in the event that a settlement offer is rejected by such claimant, the claimant (or a representative or attorney for the claimant) and the Debtors or the Tort Claimants Trust (as applicable) may confer and negotiate in good faith in an attempt to agree upon an Allowed Tort Claim amount; (C) if no settlement is reached pursuant to paragraphs (A) and (B) above within ninety days following the Effective Date, the Debtors or the Tort Claimants Trust (as applicable) and the claimant may agree to (i) participate in a nonbinding mediation process before the Bankruptcy Court; (ii) submit the Claim to binding arbitration under the rules of the American Arbitration Association; or (iii) file a motion to withdraw the reference of such Claim pursuant to 28 U.S.C. § 157, and thereafter to disallow, liquidate or estimate such Claim in the United States District Court; provided, however, that in the event of (C)(i)-(iii), the parties agree that the automatic stay under section 362(a) of the Bankruptcy Code and the injunction set forth in Article X.G of the Plan, if and to the extent applicable, shall be deemed lifted on the 90th day following the Effective Date without further order of the Bankruptcy Court for the sole purpose of liquidating the amount of any such Claim.

64.   Insurance Policies and Tort Claims.   Nothing contained in the Plan, Disclosure Statement, or this Order, shall release or otherwise discharge any Insurer of the Debtors under the Insurance Policies, or otherwise enjoin, stay or otherwise prohibit any holder of a Tort Claim from asserting any such claim against such Insurer; provided, however, that with respect to all such claims, any litigation may proceed against a Debtor only as a nominal party and only to the extent of any liability covered by any such Insurance Policy, and the automatic stay under 11 U.S.C. §

362 of the Bankruptcy Code shall terminate on the Effective Date for such limited purpose as set forth herein.

65.     <u>Discharge</u>.  Because the Plan is a liquidating plan of all or substantially all of the property of the Debtors' Estates, and because the Reorganized Debtors will not engage in business after consummation of the Plan, the Debtors are not entitled to a discharge under section 1141(d)(3) of the Bankruptcy Code.

66.     <u>Tort Claim Released Parties</u>.  Solely to the extent a holder of General Unsecured Claims and Tort Claims timely complied with the "opt-out" release provisions contained in the Plan and related Ballot, nothing in the Plan, Disclosure Statement, or this Order shall be deemed to discharge or release any Entity, Person, or Related Person, other than a release of the Debtors and their respective Estates (except as a nominal party as set forth in paragraph 60 of this Order and Administrative Claims), with respect to any personal injury or wrongful death claim, and all such claims are expressly preserved.

67.     <u>Tort Claim Jurisdiction</u>.  Nothing contained in the Plan, Disclosure Statement or this Order shall impair or otherwise limit any and all rights of personal injury or wrongful death claim holders contained in 28 U.S.C. § 157(b)(2)(B) and (b)(5), 28 U.S.C. § 1411(a) and 28 U.S.C. § 1409(e), and all such rights are expressly preserved.

68.     <u>Claims Objection Deadline</u>.  The Claims Objection Deadline (as defined in the Plan) shall be amended from one hundred eighty (180) days after the Effective Date to ninety (90) days after the Effective Date or such other date as may be extended by order of the Bankruptcy Court.

69.    <u>Distribution Trust Reserve Amount</u>.  The Distribution Trust Reserve Amount shall be calculated by the Debtors, in consultation with the Plan Sponsor, Committee, DIP Lenders and Healthcare Services Group, Inc. and the party identified to be the Distribution Trustee.

70.    <u>Distribution Trust Assets</u>.  The Distribution Trust Assets shall not include the General Unsecured Claims Cash Amount.

71.    <u>Article V(Q), Sources of Consideration for Plan Distributions</u>.  Article V(Q) of the Plan shall be deleted in its entirety and replaced with the following:

> Q.    The Debtors, the Distribution Trust, the GUC Trust and the Tort Claimants Trust, as applicable, shall make distributions under the Plan with: (1) the Plan Sponsor Consideration; (2) the Debtors' Cash on hand; (3) Accounts Receivable; (4) the General Unsecured Claims Cash Amount; and (5) the Tort Claims Cash Amount, as provided under the Plan.  Only the Distribution Trust Assets shall be used to pay Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and all Allowed Claims in Classes 2 and 3 (in the event that the applicable collateral is not returned to holders of the Allowed Claims in Classes 2 and 3).  Only the Tort Claims Cash Amount shall be used to pay Allowed Class 4.A Tort Claims.  Only the General Unsecured Claims Cash Amount shall be used to pay Allowed Class 4 General Unsecured Claims and the expenses of the GUC Trust.

72.    <u>Exhibit C ("Restructuring Portfolio") of the Plan</u>.  The following entity is deleted from the list of "Additional Entities" on Exhibit C of the Plan: "Johns Island Rehabilitation & Healthcare Center, LLC."

73.    <u>Wind-down/Transfer of Johns Island</u>.  Notwithstanding anything to the contrary contained in the Plan or this Order, the assets and operations of Johns Island Rehabilitation & Healthcare Center, LLC ("*Johns Island*"), including without limitation, any regulatory licenses, permits, or provider agreements pertaining to Johns Island, shall re-vest in Reorganized Johns Island, and Reorganized Johns Island shall be authorized without further Court order to take any steps necessary or appropriate for the purpose of winding down and closing, transferring, or

otherwise disposing of the skilled nursing facility operated by Johns Island. From the Effective Date, and until the closure, transfer or other disposition of the skilled nursing facility previously operated by Johns Island, (i) Reorganized Johns Island shall continue to maintain all applicable insurance as prior to the Effective Date and (ii) subject to the terms of the Distribution Trust Agreement, including without limitation, paragraphs 3.10-3.13 of the Distribution Trust Agreement, the Distribution Trustee shall be authorized, subject to applicable law, to serve as, or otherwise designate, the sole officer and director of Reorganized Johns Island for the purpose of effectuating such wind-down closure, transfer or other disposition. As of the Effective Date, the Distribution Trustee designates Alex Paley to serve as the sole officer and director of Reorganized Johns Island for such purposes, but may be removed at the sole discretion of the Distribution Trustee with or without cause; provided, however, (i) that Mr. Paley shall consult with the Distribution Trustee prior to all material decisions relating to Reorganized Johns Island; (ii) Reorganized Johns Island shall operate pursuant to a weekly cash flow budget approved in advance by the Distribution Trustee which shall not be deviated from without the Distribution Trustee's prior approval; (iii) Reorganized Johns Island shall provide 2 days advance notice of all disbursements exceeding $10,000 to the Distribution Trustee and a weekly variance report against the budget; and (iv) the Distribution Trustee shall be entitled to reasonable access to Reorganized Johns Island's financial records, operational information and entry to the facility. Notwithstanding the occurrence of the Effective Date, the Patient Care Ombudsman shall be authorized to (i) make periodic site visits to the Johns Island facility until the completion of the wind-down, transfer or other disposition of the Johns Island facility, and (ii) submit her fees and expenses to the Distribution Trustee. For the avoidance of doubt, all executory contracts between the Debtors and Healthcare Services Group, Inc. shall be deemed rejected as of the Effective Date.

**# # # End of Order # # #**

Order submitted by:

**DLA PIPER LLP (US)**

*/s/ Andrew Zollinger*
Andrew Zollinger, State Bar No. 24063944
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
Email: andrew.zollinger@dlapiper.com

-and-

Thomas R. Califano  (admitted *pro hac vice*)
Dienna Corrado (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile:  (212) 335-4501
Email:  thomas.califano@dlapiper.com
        dienna.corrado@dlapiper.com
-and-

Daniel M. Simon (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 736-7800
Facsimile:  (404) 682-7800
Email:  daniel.simon@dlapiper.com

*Counsel for the Debtors*

## Exhibit A
### (Sorted Alphabetically)

| | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 1. | 4 West Holdings, Inc. | 18-30777 | 9732 |
| 2. | 4 West Investors, LLC | 18-30778 | 6021 |
| 3. | Aiken RE, LLC | 18-30850 | 1814 |
| 4. | Ambassador Rehabilitation and Healthcare Center, LLC | 18-30879 | 1636 |
| 5. | Anchor Rehabilitation and Healthcare Center of Aiken, LLC | 18-30868 | 9448 |
| 6. | Anderson RE TX, LLC | 18-30774 | 3630 |
| 7. | Anderson RE, LLC | 18-30861 | 1806 |
| 8. | Ark II Real Estate, LLC | 18-30840 | 3628 |
| 9. | Ark III Real Estate, LLC | 18-30847 | 0121 |
| 10. | Ark Mississippi Holding Company, LLC | 18-30788 | 3765 |
| 11. | Ark Real Estate, LLC | 18-30809 | 6014 |
| 12. | Ark South Carolina Holding Company, LLC | 18-30856 | 0002 |
| 13. | Ark Texas Holding Company, LLC | 18-30806 | 3739 |
| 14. | Battle Ground RE, LLC | 18-30825 | 1818 |
| 15. | Brushy Creek Rehabilitation and Healthcare Center, LLC | 18-30884 | 3292 |
| 16. | Bryan RE, LLC | 18-30775 | 3633 |
| 17. | Burleson RE, LLC | 18-30759 | 1777 |
| 18. | Capstone Rehabilitation and Healthcare Center, LLC | 18-30878 | 7871 |
| 19. | Charlottesville Pointe Rehabilitation and Healthcare Center, LLC | 18-30801 | 4467 |
| 20. | Charlottesville RE, LLC | 18-30829 | 0836 |
| 21. | Cleveland RE, LLC | 18-30811 | 6013 |
| 22. | Clinton RE, LLC | 18-30812 | 8109 |
| 23. | Cobblestone Rehabilitation and Healthcare Center, LLC | 18-30869 | 1612 |
| 24. | Collierville RE, LLC | 18-30841 | 8845 |
| 25. | Columbia RE, LLC | 18-30815 | 8838 |
| 26. | Columbia Rehabilitation and Healthcare Center, LLC | 18-30795 | 6772 |
| 27. | Comfort RE, LLC | 18-30764 | 1902 |
| 28. | Connersville RE, LLC | 18-30833 | 9824 |
| 29. | Corinth RE, LLC | 18-30814 | 1777 |
| 30. | Cornerstone Rehabilitation and Healthcare Center, LLC | 18-30800 | 8841 |
| 31. | Crystal Rehabilitation and Healthcare Center, LLC | 18-30807 | 8842 |
| 32. | Delta Rehabilitation and Healthcare Center of Cleveland, LLC | 18-30792 | 7212 |
| 33. | Descending Dove, LLC | 18-30842 | 8081 |
| 34. | Diboll RE, LLC | 18-30766 | 1939 |
| 35. | Easley RE II, LLC | 18-30857 | 1819 |
| 36. | Easley RE, LLC | 18-30854 | 1817 |
| 37. | Edgefield RE, LLC | 18-30836 | 3574 |
| 38. | Farmville RE, LLC | 18-30831 | 3442 |
| 39. | Farmville Rehabilitation and Healthcare Center, LLC | 18-30804 | 4464 |
| 40. | Fleetwood Rehabilitation and Healthcare Center, LLC | 18-30888 | 9615 |
| 41. | Fortress Health & Rehab of Rock Prairie, LLC | 18-30765 | 1314 |
| 42. | Granbury RE, LLC | 18-30769 | 1999 |
| 43. | Great Oaks RE, LLC | 18-30819 | 1731 |

|  | **Debtor Name** | **Case No.** | **EIN** |
|---|---|---|---|
| 44. | Great Oaks Rehabilitation and Healthcare Center, LLC | 18-30780 | 4357 |
| 45. | Greenville RE II, LLC | 18-30846 | 1798 |
| 46. | Greenville RE, LLC | 18-30843 | 1797 |
| 47. | Greenville Rehabilitation and Healthcare Center, LLC | 18-30882 | 3920 |
| 48. | Greenwood RE, LLC | 18-30816 | 1654 |
| 49. | Greer RE, LLC | 18-30839 | 1795 |
| 50. | Greer Rehabilitation and Healthcare Center, LLC | 18-30859 | 9462 |
| 51. | Grenada RE, LLC | 18-30821 | 1623 |
| 52. | Grenada Rehabilitation and Healthcare Center, LLC | 18-30786 | 8843 |
| 53. | Heritage Park Rehabilitation and Healthcare Center, LLC | 18-30787 | 9055 |
| 54. | Hillsville RE, LLC | 18-30834 | 2195 |
| 55. | Hillsville Rehabilitation and Healthcare Center, LLC | 18-30808 | 4463 |
| 56. | Holly Lane Rehabilitation and Healthcare Center, LLC | 18-30797 | 9103 |
| 57. | Holly RE, LLC | 18-30830 | 1816 |
| 58. | Holly Springs RE, LLC | 18-30823 | 1559 |
| 59. | Holly Springs Rehabilitation and Healthcare Center, LLC | 18-30789 | 6524 |
| 60. | Indianola RE, LLC | 18-30822 | 6022 |
| 61. | Indianola Rehabilitation and Healthcare Center, LLC | 18-30779 | 7203 |
| 62. | Italy RE, LLC | 18-30761 | 2086 |
| 63. | Iva RE, LLC | 18-30852 | 1801 |
| 64. | Iva Rehabilitation and Healthcare Center, LLC | 18-30874 | 0384 |
| 65. | Johns Island Rehabilitation and Healthcare Center, LLC | 18-30891 | 4898 |
| 66. | Joy of Bryan, LLC | 18-30837 | 4072 |
| 67. | Lampstand Health & Rehab of Bryan, LLC | 18-30767 | 2002 |
| 68. | Linley Park Rehabilitation and Healthcare Center, LLC | 18-30890 | 0525 |
| 69. | Macon Rehabilitation and Healthcare Center, LLC | 18-30880 | 9644 |
| 70. | Magnified Health & Rehab of Anderson, LLC | 18-30773 | 9060 |
| 71. | Manna Rehabilitation and Healthcare Center, LLC | 18-30863 | 9441 |
| 72. | Marietta RE, LLC | 18-30867 | 1809 |
| 73. | McCormick RE, LLC | 18-30864 | 1808 |
| 74. | McCormick Rehabilitation and Healthcare Center, LLC | 18-30873 | 3193 |
| 75. | Memphis RE, LLC | 18-30844 | 8846 |
| 76. | Midland RE, LLC | 18-30832 | 5138 |
| 77. | Midland Rehabilitation and Healthcare Center, LLC | 18-30799 | 9679 |
| 78. | Moultrie RE, LLC | 18-30848 | 9943 |
| 79. | Mountain View Rehabilitation and Healthcare Center, LLC | 18-30798 | 9227 |
| 80. | Natchez RE, LLC | 18-30818 | 6019 |
| 81. | Natchez Rehabilitation and Healthcare Center, LLC | 18-30803 | 6773 |
| 82. | New Ark Master Tenant, LLC | 18-30885 | 7893 |
| 83. | New Ark Operator Holdings, LLC | 18-30893 | 7623 |
| 84. | New Redeemer Health & Rehab of Pickens, LLC | 18-30881 | 5321 |
| 85. | Olive Leaf Holding Company, LLC | 18-30845 | 0129 |
| 86. | Olive Leaf, LLC | 18-30866 | 0001 |
| 87. | Omega Health & Rehab of Greenville, LLC | 18-30870 | 9461 |
| 88. | Orianna Health Systems, LLC | 18-30785 | 5160 |
| 89. | Orianna Holding Company, LLC | 18-30784 | 1323 |
| 90. | Orianna Investment, Inc. | 18-30781 | 1141 |

| | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 91. | Orianna SC Operator Holdings, Inc. | 18-30871 | 0383 |
| 92. | Palladium Hospice and Palliative Care, LLC | 18-30887 | 1873 |
| 93. | Patewood Rehabilitation and Healthcare Center, LLC | 18-30865 | 9457 |
| 94. | Picayune RE, LLC | 18-30827 | 9749 |
| 95. | Picayune Rehabilitation and Healthcare Center, LLC | 18-30793 | 9183 |
| 96. | Pickens RE II, LLC | 18-30862 | 1823 |
| 97. | Pickens RE, LLC | 18-30860 | 1821 |
| 98. | Piedmont RE, LLC | 18-30849 | 1800 |
| 99. | Poinsett Rehabilitation and Healthcare Center, LLC | 18-30876 | 0713 |
| 100. | Poplar Oaks Rehabilitation and Healthcare Center, LLC | 18-30813 | 4771 |
| 101. | Portland RE, LLC | 18-30826 | 1822 |
| 102. | Provo RE, LLC | 18-30835 | 3568 |
| 103. | Rainbow Rehabilitation and Healthcare Center, LLC | 18-30802 | 4772 |
| 104. | River Falls Rehabilitation and Healthcare Center, LLC | 18-30886 | 9788 |
| 105. | Riverside Rehabilitation and Healthcare Center, LLC | 18-30883 | 3951 |
| 106. | Rock Prairie RE, LLC | 18-30772 | 3636 |
| 107. | Rocky Mount RE, LLC | 18-30838 | 5904 |
| 108. | Rocky Mount Rehabilitation and Healthcare Center, LLC | 18-30810 | 4466 |
| 109. | Roy RE, LLC | 18-30817 | 5142 |
| 110. | Scepter Rehabilitation and Healthcare Center, LLC | 18-30872 | 1630 |
| 111. | Scepter Senior Living Center, LLC | 18-30875 | 1621 |
| 112. | Simpsonville RE II, LLC | 18-30858 | 1804 |
| 113. | Simpsonville RE, LLC | 18-30855 | 1802 |
| 114. | Simpsonville Rehabilitation and Healthcare Center, LLC | 18-30889 | 3564 |
| 115. | Snellville RE, LLC | 18-30851 | 9933 |
| 116. | Southern Oaks Rehabilitation and Healthcare Center, LLC | 18-30877 | 1141 |
| 117. | The Bluffs Rehabilitation and Healthcare Center, LLC | 18-30796 | 9314 |
| 118. | The Ridge Rehabilitation and Healthcare Center, LLC | 18-30892 | 1456 |
| 119. | Trinity Mission Health & Rehab of Connersville, LLC | 18-30805 | 8787 |
| 120. | Trinity Mission of Burleson, LLC | 18-30762 | 2585 |
| 121. | Trinity Mission of Comfort, LLC | 18-30763 | 2573 |
| 122. | Trinity Mission of Diboll, LLC | 18-30768 | 2581 |
| 123. | Trinity Mission of Granbury, LLC | 18-30771 | 2582 |
| 124. | Trinity Mission of Italy, LLC | 18-30760 | 2576 |
| 125. | Trinity Mission of Winnsboro, LLC | 18-30776 | 2583 |
| 126. | Utah Valley Rehabilitation and Healthcare Center, LLC | 18-30782 | 9661 |
| 127. | Vicksburg RE, LLC | 18-30828 | 0150 |
| 128. | Victory Rehabilitation and Healthcare Center, LLC | 18-30794 | 9485 |
| 129. | Wadesboro RE, LLC | 18-30853 | 9929 |
| 130. | Wide Horizons RE, LLC | 18-30820 | 5144 |
| 131. | Wide Horizons Residential Care Facility, LLC | 18-30790 | 9387 |
| 132. | Winnsboro RE, LLC | 18-30770 | 2134 |
| 133. | Woodlands Rehabilitation and Healthcare Center, LLC | 18-30791 | 9127 |
| 134. | Yazoo City RE, LLC | 18-30824 | 8844 |
| 135. | Yazoo City Rehabilitation and Healthcare Center, LLC | 18-30783 | 7216 |

**<u>EXHIBIT B</u>**

**THE DEBTORS' CHAPTER 11 PLAN**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| 4 West Holdings, Inc. *et al.*,[1] | § | Case No. 18-30777 (HDH) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

---

### DEBTORS' MODIFIED THIRD AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Andrew Zollinger, State Bar No. 24063944
andrew.zollinger@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

Thomas R. Califano (admitted *pro hac vice*)
Dienna Corrado (admitted *pro hac vice*)
thomas.califano@dlapiper.com
dienna.corrado@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Daniel M. Simon (admitted *pro hac vice*)
daniel.simon@dlapiper.com
DLA Piper LLP (US)
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 736-7800
Facsimile: (404) 682-7800

*Counsel for the Debtors*

Dated:    October 23, 2018

---

[1]     A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as <u>Exhibit A</u>.

**TABLE OF CONTENTS**

Page

| | | |
|---|---|---|
| **Article I** | **RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS** .................................................................................... **1** | |
| | A. | Rules of Interpretation; Computation of Time ............................................. 1 |
| | B. | Defined Terms ............................................................................................ 2 |
| **Article II** | **ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, DIP FACILITY CLAIMS AND PRIORITY CLAIMS** ............................................ **17** | |
| | A. | Administrative Claims ................................................................................ 17 |
| | | 1. Bar Date for Administrative Claims ................................................ 18 |
| | | 2. Professional Fee Claims .................................................................. 18 |
| | B. | DIP Facility Claims .................................................................................... 19 |
| | C. | Priority Tax Claims .................................................................................... 19 |
| | D. | Other Priority Claims ................................................................................ 19 |
| **Article III** | **CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS** ............................................................................ **20** | |
| | A. | Summary ..................................................................................................... 20 |
| | B. | Classification and Treatment of Claims and Equity Interests .................... 21 |
| | | 1. Class 1 – Omega Secured Claim ..................................................... 21 |
| | | 2. Class 2 - Secured Tax Claims .......................................................... 21 |
| | | 3. Class 3 - Other Secured Claims ....................................................... 22 |
| | | 4. Class 4 – General Unsecured Claims ............................................... 22 |
| | | 5. Class 4.A – Tort Claims ................................................................... 23 |
| | | 6. Class 5 – Subordinated Claims ........................................................ 23 |
| | | 7. Class 6 - Equity Interests ................................................................ 23 |
| | C. | Special Provision Governing Unimpaired Claims ...................................... 24 |
| | D. | Elimination of Vacant Classes ................................................................... 24 |
| **Article IV** | **ACCEPTANCE OR REJECTION OF THE PLAN** ................................. **24** | |
| | A. | Presumed Acceptance of Plan .................................................................... 24 |
| | B. | Presumed Rejection of Plan ....................................................................... 24 |
| | C. | Voting Classes ............................................................................................ 24 |
| | D. | Acceptance by Impaired Class of Claims .................................................. 25 |
| | E. | Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ............... 25 |
| | F. | Votes Solicited in Good Faith .................................................................... 25 |
| **Article V** | **MEANS FOR IMPLEMENTATION OF THE PLAN** ............................. **25** | |
| | A. | Substantive Consolidation ......................................................................... 25 |
| | B. | Restructuring Transactions ........................................................................ 26 |

EAST\163569585

**TABLE OF CONTENTS**
(continued)

Page

C.     Continued Corporate Existence ............................................................................................27

D.     Vesting of Assets Free and Clear of Liens and Claims ...........................................................27

E.     Intentionally Deleted ............................................................................................................28

F.     Plan Sponsor Note and Exit Facility Documents ...................................................................28

G.     New Equity Interests ............................................................................................................28

H.     New Governance Documents ...............................................................................................28

I.     Plan Securities and Related Documentation; Exemption from Securities Laws ..........................29

J.     Release of Liens and Claims ................................................................................................30

K.     Distribution Trust.................................................................................................................30

L.     Tort Claimants Trust ............................................................................................................31

M.     Organizational Documents of the Reorganized Debtors.........................................................31

N.     New Board and Officers of the Reorganized Debtors ............................................................31

O.     Corporate Action .................................................................................................................32

P.     Cancellation of Notes, Equity Interests, Certificates, and Instruments...................................33

Q.     Sources of Consideration for Plan Distributions ...................................................................33

R.     Continuing Effectiveness of Final Orders.............................................................................33

S.     Payment of Fees and Expenses of Certain Creditors ............................................................33

T.     General Unsecured Claims Cash Amount .............................................................................34

U.     Tort Claims Cash Amount....................................................................................................34

V.     Plan Sponsor Affiliate Agreements and Waiver of Affiliate Claims...........................................34

**Article VI**     **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............35**

A.     Rejection of Executory Contracts and Unexpired Leases........................................................35

B.     Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases ...........................36

C.     Rejection of Executory Contracts and Unexpired Leases........................................................37

D.     Claims on Account of the Rejection of Executory Contracts or Unexpired Leases ....................37

E.     Extension of Time to Assume or Reject ................................................................................37

F.     Modifications, Amendments, Supplements, Restatements, or Other Agreements ......................38

G.     Insurance Policies ...............................................................................................................38

**Article VII**     **PROVISIONS GOVERNING DISTRIBUTIONS.....................................................38**

A.     Distributions for Claims Allowed as of the Effective Date .....................................................38

B.     No Postpetition Interest, Fees, and Costs on Claims..............................................................38

C.     Distributions by the Distribution Trust, the Tort Claimants Trust or Other Applicable Distribution Agent ...............................................................................................................39

D.     Delivery and Distributions; Undeliverable or Unclaimed Distributions....................................39

     1.     Record Date for Distributions .................................................................................39

**TABLE OF CONTENTS**
(continued)

**Page**

| | | | |
|---|---|---|---|
| | 2. | Delivery of Distributions in General | 39 |
| | 3. | Minimum Distributions | 40 |
| | 4. | Undeliverable Distributions | 40 |
| E. | | Compliance with Tax Requirements | 41 |
| F. | | Allocation of Plan Distributions Between Principal and Interest | 41 |
| G. | | Means of Cash Payment | 41 |
| H. | | Timing and Calculation of Amounts to Be Distributed | 42 |
| I. | | Setoffs | 42 |
| **Article VIII** | | **PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS** | **42** |
| A. | | Resolution of Disputed Claims | 42 |
| | 1. | Allowance of Claims | 42 |
| | 2. | Prosecution of Objections to Claims | 43 |
| | 3. | Claims Estimation | 43 |
| | 4. | Deadline to File Objections to Claims | 43 |
| | 5. | Limited Amendments to Claims After the Effective Date Absent Bankruptcy Court Order | 43 |
| B. | | No Distributions Pending Allowance | 44 |
| C. | | Distributions on Account of Disputed Claims Once They Are Allowed and Additional Distributions on Account of Previously Allowed Claims | 44 |
| D. | | Reserve for Disputed Claims | 44 |
| E. | | Tort Claims | 44 |
| **Article IX** | | **CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** | **45** |
| A. | | Conditions Precedent to Confirmation | 45 |
| B. | | Conditions Precedent to Consummation | 45 |
| C. | | Waiver of Conditions | 46 |
| D. | | Effect of Non-Occurrence of Conditions to Confirmation or Consummation | 47 |
| **Article X** | | **RELEASE, DISCHARGE, INJUNCTION AND RELATED PROVISIONS** | **47** |
| A. | | General | 47 |
| B. | | Release of Claims and Causes of Action | 47 |
| | 1. | Release by the Debtors and Their Estates | 47 |
| | 2. | Release by Third Parties | 49 |
| C. | | Waiver of Statutory Limitations on Releases | 50 |
| D. | | Discharge of Claims and Equity Interests | 50 |
| E. | | Exculpation | 51 |

**TABLE OF CONTENTS**
(continued)

Page

F. Preservation of Causes of Action ........................................................................... 51

    1. Maintenance of Causes of Action ............................................................ 51

    2. Preservation of All Causes of Action Not Expressly Settled or Released .................... 52

G. Injunction .................................................................................................... 52

H. Binding Nature of the Plan ................................................................................. 52

I. Protection Against Discriminatory Treatment ............................................................ 53

J. Integral Part of Plan ....................................................................................... 53

K. Confidentiality of Information Related to Patient Care Ombudswoman .................................... 53

L. Preservation of Privilege and Defenses ................................................................... 54

**Article XI RETENTION OF JURISDICTION** ...................................................................... **54**

**Article XII MISCELLANEOUS PROVISIONS** ....................................................................... **56**

A. Substantial Consummation ................................................................................. 56

B. Payment of Statutory Fees; Post-Effective Date Fees and Expenses ....................................... 56

C. Conflicts .................................................................................................. 56

D. Modification of Plan ....................................................................................... 56

E. Revocation or Withdrawal of Plan ......................................................................... 57

F. Successors and Assigns .................................................................................... 57

G. Reservation of Rights ..................................................................................... 57

H. Further Assurances ........................................................................................ 57

I. Severability ............................................................................................... 57

J. Service of Documents ...................................................................................... 58

K. Exemption from Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code ..................... 59

L. Governing Law ............................................................................................. 59

M. Tax Reporting and Compliance ............................................................................ 60

N. Schedules ................................................................................................. 60

O. No Strict Construction .................................................................................... 60

P. Entire Agreement .......................................................................................... 60

Q. Closing of Chapter 11 Cases .............................................................................. 60

R. 2002 Notice Parties ....................................................................................... 60

S. Dissolution of Committee .................................................................................. 60

T. Discharge of Patient Care Ombudswoman .................................................................... 61

-iv-

### DEBTORS' MODIFIED THIRD AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

4 West Holdings, Inc. and certain of its affiliates and subsidiaries in the above-captioned chapter 11 cases, which are listed on Exhibit A hereto, as debtors and debtors-in-possession (each a "**Debtor**" and, collectively, the "**Debtors**"), jointly propose the following plan of reorganization (the "**Plan**") for the resolution of the outstanding Claims (as defined below) against, and Equity Interests (as defined below) in, each of the Debtors. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code (as defined below). Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, business, results of operations, historical financial information, and projections, and for a summary and analysis of this Plan, including the treatment provided for herein, associated risk factors and certain related matters. There also are other agreements and documents, which will be filed with the Bankruptcy Court (as defined below), that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Schedules. All such Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein. Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127, Fed. R. Bankr. P. 3019 and the terms and conditions set forth in this Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

## ARTICLE I

### RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS

A.     *Rules of Interpretation; Computation of Time*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced item shall be substantially in that form or substantially on those terms and conditions; (c) except as otherwise provided herein, any reference herein to an existing or to be Filed contract, lease, instrument, release, indenture, or other agreement or document shall mean as it may be amended, modified or supplemented from time to time; (d) any reference to an Entity as a Holder of Claim or Equity Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references herein to "Articles", "Sections", "Exhibits" and "Plan Schedules" are references to Articles, Sections, Exhibits and Plan Schedules hereof or hereto; (f) unless otherwise stated, the words ''herein,'' "hereof," "hereunder" and ''hereto'' refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, indenture, or other agreement or document entered into in connection with this Plan and except as expressly provided in Article XII.C of this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan; (j) references to a specific article, section, or subsection of any statute, rule, or regulation expressly referenced herein shall, unless otherwise specified, include any amendments to or successor provisions of such article, section, or subsection; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system;

(m) references to "stockholders," "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (n) references to "corporate," "incorporate," "stock" or other terms associated with corporations under applicable state corporation laws shall also include "entity," "limited liability company," "form," "organize," "limited liability company interests" or other terms, as applicable, that have meanings under applicable state limited liability company laws or other state laws governing other entity forms that are similar to such corporate terms; and (o) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated. Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to "the Debtors" or to "the Reorganized Debtors" shall mean "the Debtors and the Reorganized Debtors", as applicable, to the extent the context requires.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

B.     *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

"*9019 Settlement Order*" means the *Order (I) Approving Amended Settlement Agreement, and (II) Granting Related Relief*, entered on May 14, 2018 [Docket No. 375].

"*Accounts Receivable*" means, as of the Effective Date, all "accounts" as that term is defined in §9-102(a) of the Uniform Commercial Code associated with, owed to, or payable to any Facility in the Restructuring Portfolio or the Transfer Portfolio.

"*Accrued Professional* Compensation" means, with respect to a particular Professional, an Administrative Claim of such Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred on or after the Petition Date and prior to and including the Effective Date.

"*Administrative Claim*" means a Claim that is timely Filed pursuant to the deadline and procedure set forth in the Plan or Confirmation Order for costs and expenses of administration of the Chapter 11 Cases that are Allowed under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) any actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims and any other compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred on or after the Petition Date and through the Effective Date; and (c) all fees and charges assessed against the Estates under section 1930, chapter 123, of title 28, United States Code.

"*Administrative Claims Bar Date*" means the last date for Filing requests for payment of Administrative Claims arising in the time period between the Petition Date and the Effective Date, which, except as otherwise provided in Article II.A hereof, shall be thirty (30) days after the Effective Date.

"*Adversary Proceeding*" means Adversary Case No. 18-03237, captioned *4 West Holdings, Inc. et al. v. Omega Healthcare Investors, Inc. et al.*, commenced on July 27, 2018.

"*Affiliate*" means an "affiliate", as defined in section 101(2) of the Bankruptcy Code.

"*Allowed*" means, with respect to any Claim, an Allowed Claim in a particular Class or category specified.  Any reference herein to the allowance of a particular Allowed Claim includes both the secured and unsecured portions of such Claim (unless the context indicates to the contrary).

"*Allowed Claim*" means any Claim that is not a Disputed Claim or a Disallowed Claim and (a) for which a Proof of Claim has been timely Filed by the applicable Claims Bar Date and as to which no objection to allowance thereof has been timely interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court; (b) that has been listed by the Debtors in their Schedules as liquidated in a specified amount and is not disputed or contingent and for which no contrary Proof of Claim has been timely Filed; or (c) that is expressly Allowed pursuant to the terms of this Plan or a Final Order of the Bankruptcy Court.  The term "Allowed Claim" shall not, for purposes of computing distributions under this Plan, include interest, fees (including attorneys' fees), costs or charges on such Claim from and after the Petition Date, except as provided in sections 506(b) or 511 of the Bankruptcy Code or as otherwise expressly set forth in this Plan or a Final Order of the Bankruptcy Court.

"*Allowed _____ Claim*" means an Allowed Claim of the type described.

"*Asset Purchase Agreement*" means that certain Asset Purchase Agreement, dated as of August 13, 2018, between the Debtors and the Purchaser, which is annexed as an exhibit to the Sale Order.

"*Auction*" means the auction for the consideration of competing plan sponsorship or asset sale proposals conducted on June 20, 2018 pursuant to the Bid Procedures Order.

"*Avoidance Actions*" means any and all avoidance, recovery, subordination or similar actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under chapter 5 of the Bankruptcy Code.

"*Ballots*" means the ballots accompanying the Disclosure Statement, which were approved by the Disclosure Statement Orders (modified, as necessary, based upon the applicable voting party in accordance with the Disclosure Statement Orders).

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court having jurisdiction over the Chapter 11 Cases.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

"*Bid Procedures Order*" means that certain *Order Approving (A) Plan Funding Commitment and Stock Purchase Agreement With Plan Sponsor, (B) Stalking Horse Bid Protections, (C) Bidding and Auction Procedures Governing Submission and Consideration of Competing Plan Sponsorship Proposals, and (D) the Form and Manner of Notice Thereof* entered by the Bankruptcy Court on May 14, 2018 [Docket No. 377], as such order may be amended, supplemented, or modified from time to time.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date now owned or hereafter acquired by the Debtors and/or their Estates.

"*Chapter 11 Case(s)*" means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court, and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court being jointly administered under Case No. 18-30777.

"*Claim*" means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against any Debtor.

"*Claims Bar Date*" means the last date for filing a Proof of Claim in these Chapter 11 Cases, as provided in the Claims Bar Date Order.

"*Claims Bar Date Order*" means that certain *Order Establishing Bar Dates, Approving Form and Manner of Notice, and Approving Procedures for Filing Proofs of Claim*, entered by the Bankruptcy Court on May 24, 2018 [Docket No. 431], as amended, amended and restated, supplemented or otherwise modified from time to time.

"*Claims Objection Deadline*" means, with respect to any Claim, the latest of (a) one hundred eighty (180) days after the Effective Date; or (b) such other date as may be specifically fixed by Final Order of the Bankruptcy Court for objecting to such Claim.

"*Claims Register*" means the official register of Claims maintained by the Voting and Claims Agent.

"*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

"*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

"*Collateral*" means any property or interest in property of the Debtors' Estates that is subject to a valid and enforceable Lien to secure a Claim.

"*Commission*" means the U.S. Securities and Exchange Commission.

"*Committee*" means the official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as reconstituted from time to time.

"*Committee Settlement Motion*" means *The Official Committee of Unsecured Creditors' Emergency Motion to Enforce Settlement*, filed on July 2, 2018 [Docket No. 670].

"*Committee Settlement Ruling*" means the oral ruling on the Committee Settlement Motion read into the record by the Bankruptcy Court on September 7, 2018.

"*Confirmation*" means the occurrence of the Confirmation Date, subject to all conditions specified in Article IX of this Plan having been satisfied or waived pursuant to Article IX of this Plan.

"*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court in the Chapter 11 Cases.

"*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents, which order shall be in form and substance reasonably acceptable to the Debtors, Omega and the Plan Sponsor and shall (i) approve of the release and exculpation provisions contained in this Plan and (ii) allow the Omega Secured Claim in an amount at least sufficient for Omega to actually receive the consideration set forth in Article III.B.1(b) hereof on the Effective Date, not subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

"*Consummation*" means the occurrence of the Effective Date.

"*Cure Claim Amount*" has the meaning set forth in Article VIB of this Plan.

"*Debtor(s)*" means, individually, any of the above-captioned debtors and debtors-in-possession and, collectively, all of the above-captioned debtors and debtors-in-possession.

"*Debtor Release*" has the meaning set forth in Article XB hereof.

"*Debtor Releasing Parties*" has the meaning set forth in Article XB hereof.

"*Description of Structure*" means a description of any changes to the corporate and/or capital structure of the Reorganized Debtors (to the extent known) to be made on the Effective Date as determined by the Debtors and the Plan Sponsor, in their sole discretion, to be Filed with the Plan Supplement. Changes to the corporate and/or capital structure may include, but are not limited to, (i) the conversion of one or more of the Debtors into corporations or other Persons or Entities, (ii) the creation of one or more newly formed Entities and/or holdings companies with respect to the Reorganized Debtors, (iii) the issuance of intercompany liabilities and/or intercompany equity, (iv) any election to treat one or more of the Reorganized Debtors as a "corporation" for United States federal income tax purposes and (v) the abandonment of any Debtor or any or all of the assets of any Debtor.

"*DIP Facility Claims*" means a Claim held by the DIP Lenders for all debts, indebtedness, obligations, covenants, and duties of payment and performance arising under or relating to the DIP Facility Loan Agreement or the DIP Orders, including any and all accrued but unpaid interest and any unpaid fees or charges arising under the DIP Facility Loan Agreement.

"*DIP Facility Loan Agreement*" means the Superpriority Secured Debtor-in-Possession Credit Agreement, dated as of March 9, 2018, by and among the DIP Lenders and the Debtors, together with any amendments, modifications or supplements thereto.

"*DIP Lenders*" means the lender or lenders party to the DIP Facility Loan Agreement.

"*DIP Orders*" means the Interim DIP Order and the Final DIP Order, as applicable.

"*Disallowed Claim*" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as contingent, disputed or unliquidated and (ii) as to which the Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disclosure Statement*" means that certain *Disclosure Statement for the Debtors' Third Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code*, dated as of June 22, 2018 (as amended, amended and restated, supplemented or otherwise modified from time to time) that was approved by the Disclosure Statement Orders.

"*Disclosure Statement Orders*" means (i) that certain *Order (A) Approving the Disclosure Statement, (B) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (C) Establishing Vote Tabulation Procedures, and (D) Establishing Objection Deadline and Scheduling Plan Confirmation Hearing*, entered by the Bankruptcy Court on June 1, 2018 [Docket No. 496]; and (ii) that certain *Supplemental Order Approving the Disclosure Statement, (B) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (C) Establishing Vote Tabulation Procedures, and (D) Establishing Objection Deadline and Scheduling Plan Confirmation Hearing*, entered on June 28, 2018 [Docket No. 656], as such orders may be amended, supplemented, or modified from time to time.

"*Disputed Claim*" means any Claim, or any portion thereof, that is not a Disallowed Claim, that has not been Allowed pursuant to this Plan or a Final Order of the Bankruptcy Court, and

       (a)      if a Proof of Claim has been timely Filed by the applicable Claims Bar Date, such Claim is designated on such Proof of Claim as unliquidated, contingent or disputed, or in zero or unknown amount, and has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; or

       (b)      if either (1) a Proof of Claim has been timely Filed by the applicable Claims Bar Date or (2) a Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, or in zero or unknown amount, a Claim (i) as to which any Debtor has timely filed an objection or request for estimation in accordance with this Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court or for which such time period to object or file a request for estimation has not yet expired as of the applicable date of determination or (ii) which is otherwise disputed by any Debtor in accordance with applicable law, in each case which objection, request for estimation or dispute has not been withdrawn, overruled or determined by a Final Order; or

(c)     that is the subject of an objection or request for estimation Filed in the Bankruptcy Court and which such objection or request for estimation has not been withdrawn, resolved or overruled by Final Order of the Bankruptcy Court; or

(d)     that is otherwise disputed by any Debtor in accordance with the provisions of this Plan or applicable law, which dispute has not been withdrawn, resolved or overruled by Final Order.

"*Distribution Agent*" means (i) with respect to the Distribution Trust, any party designated by Omega after consultation with the Debtors, the Committee and the Plan Sponsor, to serve as distribution agent under this Plan; and (ii) with respect to the Tort Claimants Trust, or any party designated pursuant to the Tort Claimants Trust Agreement.

"*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the Effective Date.

"*Distribution Trust*" means the trust or similar vehicle to be formed on or prior to the Effective Date in accordance with the provisions of Article V.K of the Plan and the Distribution Trust Agreement for the payment of Allowed Claims and for the benefit of the beneficiaries of the Distribution Trust, or, to the extent necessary, to enter into or otherwise assume the Operations Transfer Agreements relating to any Facility in the Transfer Portfolio not transitioned by the Effective Date of the Plan. The election of whether the Distribution Trust is a formal trust or other similar vehicle, including without limitation, a segregated Reorganized Debtor entity solely for the purposes contemplated by Article V.K of the Plan, shall be determined by the Debtors and the Plan Sponsor, in their sole discretion, after consultation with the Committee and Omega, and shall be disclosed in the Plan Supplement.

"*Distribution Trust Agreement*" means the trust or similar agreement that establishes the Distribution Trust and governs the powers, duties, and responsibilities of the Distribution Trustee.

"*Distribution Trust Assets*" means the following: (A) the Debtors' Cash on the Effective Date remaining after repayment in full of the DIP Facility Claims; (B) the Distribution Trust Reserve Amount; (C) the General Unsecured Claims Cash Amount; and (D) the Accounts Receivable.

"*Distribution Trust Reserve Amount*" means Cash in an amount sufficient to fund the payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Tax Claims, and Allowed Other Secured Claims, to the extent not otherwise paid on or before the Effective Date, which shall be funded by the Debtors on the Effective Date from Cash on hand. The Distribution Trust Reserve Amount shall be calculated by the Debtors and the Plan Sponsor, in consultation with the Committee and the DIP Lenders.

"*Distribution Trustee*" means the Person appointed to administer the Distribution Trust with such rights, duties, and obligations as set forth in the Distribution Trust Agreement.

"*Effective Date*" means the first Business Day on which the conditions specified in <u>Article IX</u> of this Plan have been satisfied or waived in accordance with the terms of <u>Article IX</u>.

"*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

"*Equity Interest*" means any Equity Security in any Debtor, including, without limitation, all issued, unissued, authorized or outstanding units and other ownership interests, including limited liability company interests, together with (a) any options, warrants or contractual rights to purchase or acquire any

such Equity Securities at any time with respect to any Debtor, and all rights arising with respect thereto and (b) the rights of any Entity to purchase or demand the issuance of any of the foregoing and shall include: (i) conversion, exchange, voting, participation, dividend and distribution rights; (ii) liquidation preferences; (iii) options, warrants, and call and put rights; (iv) share-appreciation rights; and (v) all Unexercised Equity Interests.

"*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

"*Estate(s)*" means, individually, the estate of each of the Debtors and, collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

"*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, as now in effect or hereafter amended, and any similar federal, state or local law.

"*Exculpated Parties*" means, collectively, and in each case in their capacity as such: (i) the Debtors and the Reorganized Debtors; (ii) the Committee and the members thereof, solely in such capacity; (iii) Omega; (iv) the Patient Care Ombudswoman and (v) with respect to each of the foregoing Entities, each of their respective Related Persons that served in such capacity.

"*Exculpation*" means the exculpation provision set forth in <u>Article XE</u> hereof.

"*Executory Contract*" means all contracts and leases to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Exhibit*" means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

"*Exit Facility Documents*" means, if any, in connection with the Restructuring Portfolio, the credit agreement, security, pledge, guaranty, mortgage, account control agreement, other collateral agreements, intercreditor agreements or any other documents evidencing such exit facility or any obligations thereunder, each of which shall contain terms and conditions that are in form and substance reasonably acceptable to each of the Debtors, the Plan Sponsor, and Omega.

"*Face Amount*" means (a) when used in reference to a Disputed Claim, the full stated amount of the Claim asserted by the applicable Holder in any Proof of Claim timely Filed with the Bankruptcy Court and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

"*Facilities*" means those operations of the skilled nursing facilities and personal care centers comprising the Restructuring Portfolio and the Transfer Portfolio.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"*Final DIP Order*" means that certain *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties, and (D) Grant Adequate Protection to Prepetition Secured Parties; and (II) Granting Related Relief* entered by the Bankruptcy Court on May 14, 2018 [Docket No. 376], as amended, supplemented or otherwise modified from time to time.

"*Final Order*" means an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the subject matter, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

"*General Unsecured Claim*" means any Claim that is not a/an: Administrative Claim, DIP Facility Claim, Professional Fee Claim, Priority Tax Claim, Secured Tax Claim, Other Priority Claim, Other Secured Claim, Omega Secured Claim, Tort Claim or Subordinated Claim.

"*General Unsecured Claims Cash Amount*" means $8,000,000 or such other amount as determined by the Bankruptcy Court in accordance with the Committee Settlement Ruling; provided, however, that pursuant to the terms thereof, Omega shall receive no distribution on account of the Omega Unsecured Claim from the General Unsecured Claims Cash Amount.

"*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

"*Holder*" means an Entity holding a Claim or Equity Interest.

"*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when, subject to the "Treatment" sections in Article III hereof, distributions under this Plan shall commence to Holders of Allowed Claims.

"*Insurance Policies*" means the insurance policies issued to or for the benefit of any Debtor(s) or any of their predecessors-in-interest and any agreements, documents or instruments related thereto.

"*Insurer*" means any insurer obligated under the Insurance Policies.

"*Intercompany Claim*" means any Claim against any of the Debtors held by another Debtor, other than an Administrative Claim.

"*Interim DIP Order*" means that certain *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties, and (D) Grant Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing; and (III) Granting Related Relief*, entered by the Bankruptcy Court on March 9, 2018 [Docket No. 53], as amended, supplemented or otherwise modified from time to time.

"*Interim Rent*" means payments made by the Debtors to Omega following the Petition Date, in the amount of $4,806,451.61, on account of partial rent due and owing under the Master Leases prior to the Recharacterization Judgment.

"*IRS*" means the Internal Revenue Service of the United States of America.

"*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any property or asset, includes, without limitation, any mortgage, deed of trust, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such property or asset.

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, or any other court having jurisdiction over the Chapter 11 Cases.

"*Master Leases*" means the following: the Master Lease Agreement (South East Region), effective as of November 27, 2013, by and between certain Omega Affiliates and certain Debtors, pursuant to which certain Debtors leased thirty-eight (38) Facilities and a management facility from certain Omega Entities which, pursuant to the Recharacterization Judgment, has been recharacterized as and deemed to be a financing agreement rather than a "lease" within the meaning of the Bankruptcy Code (including *inter alia* 11 U.S.C. § 365) and the Bankruptcy Rules; the Master Lease Agreement (Indiana Region), effective as of November 27, 2013, by and between certain Omega Affiliates and certain Debtors, pursuant to which Debtor Connersville RE, LLC leased one (1) Facility in Indiana from an Omega Affiliate which, pursuant to the Recharacterization Judgment, has been recharacterized as and deemed to be a financing agreement rather than a "lease" within the meaning of the Bankruptcy Code (including *inter alia* 11 U.S.C. § 365) and the Bankruptcy Rules; the Master Lease Agreement (Texas Region), effective November 27, 2013, by and between certain Omega Affiliate and certain Debtors, pursuant to which certain of the Debtors leased nine (9) Facilities from an Omega Affiliate, but which was terminated pursuant to that Termination of Prime Lease and Master Sublease, effective July 1, 2017, under which certain of the Debtors owe certain of the Omega Affiliate $1,250,000; the Master Lease Agreement (North West Region), effective November 27, 2013, by and between certain Omega Affiliate and certain Debtors, pursuant to which certain of the Debtors leased seven (7) Facilities from the Omega Entities, and under which the Debtors have continuing obligations though the Debtors transferred the last remaining facility under this Master Lease to a new operator on September 1, 2017; the Master Lease dated June 27, 2014 between Debtor New Ark Master Tenant, LLC and certain Omega Affiliate, pursuant to which certain of the Debtors leased four (4) Facilities from certain Omega Affiliate.

"*Mezzanine Loan Claim*" means any amounts due and owing (and not otherwise paid) under that certain $11,150,000 Subordinated Promissory Note issued by 4 West Holdings, Inc. to New Ark Mezz Holdings, LLC, dated as of April 1, 2014.

"*New Board*" means the initial board of managers or directors or other governing or managing Person or Entity of either of the Reorganized Debtors or such other entity contemplated by the Description of Structure, which shall be acceptable to Plan Sponsor in its sole discretion. The identity of the New Board shall be Filed with the Plan Supplement.

"*New Equity Interests*" means, subject to the Restructuring Transactions, the ownership interests in Reorganized Parent and/or another applicable Person or Entity as set forth in the Description of Structure authorized to be issued pursuant to this Plan and the New Governance Documents.

"*New Governance Documents*" means the new and/or amended or restated organizational documents for each of the Reorganized Debtors and/or any applicable Entity as contemplated by the Description of Structure, which, with respect to each of the foregoing, relate to, among other things, (a) significant corporate actions, and (b) voting rights, in each case subject to regulatory constraints. The New Governance Documents will be in form and substance acceptable to the Plan Sponsor in all respects.

"*New Operators*" means one or more parties designated by Omega to operate one or more of the Facilities comprising the Transfer Portfolio pursuant to the Operations Transfer Agreements.

"*Non-Debtor Releasing Parties*" means, collectively, the following, in each case in their capacity as such: (i) the Plan Sponsor; (ii) Omega; and (iii) the Holders of Unimpaired Claims and those Holders of General Unsecured Claims and Tort Claims that (a) vote to accept the Plan or (b) either (i) abstain from voting or (ii) vote to reject the Plan and, in the case of either (b)(i) or (b)(ii), do not opt out of the voluntary release contained in Article X.B.2 of the Plan by checking the opt out box on the Ballot, and returning it in accordance with the instructions set forth thereon, indicating that they opt not to grant the releases provided in the Plan.

"*Notice*" has the meaning set forth in <u>Article XIIJ</u> of this Plan.

"*Omega*" means OHI Asset RO, LLC, and each of its affiliates or subsidiaries identified as the landlords in the Master Leases, which shall include all Prepetition Secured Parties, as defined in the DIP Facility Loan Agreement.

"*Omega Accepting Ballots*" has the meaning set forth in <u>Article IV.C</u> hereof.

"*Omega Claim*" means all Claims of Omega for amounts owing by any Debtor under the Master Leases or the Omega Working Capital Loan Agreement. Except to the extent the Bankruptcy Court determines otherwise prior to or at the Confirmation Hearing, the Omega Claim is an Allowed Claim in the amount of $579,355,878.94 and is bifurcated under section 506(a) of the Bankruptcy Code into an Allowed Secured Claim (the "*Omega Secured Claim*") in an amount equal to the total value distributed to Omega under Section III.B.1 of the Plan and an Allowed Unsecured Claim (the "*Omega Unsecured Claim*") equal to the amount by which the Omega Claim exceeds the amount of the Omega Secured Claim.

"*Omega Election*" means the *Election of Certain Omega Entities as to Laurel Baye Master Lease, Cure Amount, and Objection to Assumption or Assignment*, filed on October 4, 2018 [Docket No. 1045], pursuant to which Omega elected to exclude the facilities comprising the Laurel Baye Master Lease from the Restructuring Portfolio.

"*Omega Fees and Expenses*" means all unpaid fees, costs, expenses and other amounts owed and reasonable and documented out-of-pocket costs and expenses incurred in connection with these Chapter 11 Cases (regardless of whether such fees, costs, and expenses were incurred before or after the Petition Date) of Omega or its Affiliates.

"*Omega Secured Claim*" has the meaning set forth in the definition of "Omega Claim."

"*Omega Unsecured Claim*" has the meaning set forth in the definition of "Omega Claim."

"*Omega Working Capital Loan Agreement*" means the Working Capital Loan Agreement dated as of May 2, 2017, between OHI Asset RO, LLC, as lender, and Ambassador Rehabilitation & Healthcare Center, LLC, Anchor Rehabilitation & Healthcare Center Of Aiken, LLC, Capstone Rehabilitation &

Healthcare Center, LLC, Charlottesville Pointe Rehabilitation & Healthcare Center, LLC, Cobblestone Rehabilitation & Healthcare Center, LLC, Columbia Rehabilitation & Healthcare Center, LLC, Cornerstone Rehabilitation & Healthcare Center, LLC, Crystal Rehabilitation & Healthcare Center, LLC, Delta Rehabilitation & Healthcare Center Of Cleveland, LLC, Farmville Rehabilitation & Healthcare Center, LLC, Fleetwood Rehabilitation & Healthcare Center, LLC, Great Oaks Rehabilitation & Healthcare Center, LLC, Greenville Rehabilitation & Healthcare Center, LLC, Greer Rehabilitation & Healthcare Center, LLC, Grenada Rehabilitation & Healthcare Center, LLC, Heritage Park Rehabilitation & Healthcare Center, LLC, Hillsville Rehabilitation & Healthcare Center, LLC, Holly Lane Rehabilitation & Healthcare Center, LLC, Holly Springs Rehabilitation & Healthcare Center, LLC, Indianola Rehabilitation & Healthcare Center, LLC, Iva Rehabilitation & Healthcare Center, LLC, Johns Island Rehabilitation & Healthcare Center, LLC, Linely Park Rehabilitation & Healthcare Center, LLC, Macon Rehabilitation & Healthcare Center, LLC, Manna Rehabilitation & Healthcare Center, LLC, McCormick Rehabilitation & Healthcare Center, LLC, Midland Rehabilitation & Healthcare Center, LLC, Mountain View Rehabilitation & Healthcare Center, LLC, Natchez Rehabilitation & Healthcare Center, LLC, Patewood Rehabilitation & Healthcare Center, LLC, Picayune Rehabilitation & Healthcare Center, LLC, Poinsett Rehabilitation & Healthcare Center, LLC, Poplar Oaks Rehabilitation & Healthcare Center, LLC, Rainbow Rehabilitation & Healthcare Center, LLC, River Falls Rehabilitation & Healthcare Center, LLC, Riverside Rehabilitation & Healthcare Center, LLC, Rocky Mount Rehabilitation & Healthcare Center, LLC, Scepter Rehabilitation & Healthcare Center, LLC, Scepter Senior Living Center, LLC, Simpsonville Rehabilitation & Healthcare Center, LLC, Southern Oaks Rehabilitation & Healthcare Center, LLC, The Bluffs Rehabilitation & Healthcare Center, LLC, The Ridge Rehabilitation & Healthcare Center, LLC, Trinity Mission Health & Rehab Of Connersville, LLC, Utah Valley Rehabilitation And Healthcare Center, LLC, Victory Rehabilitation & Healthcare Center, LLC, Wide Horizons Residential Care Facility, LLC, Woodlands Rehabilitation & Healthcare Center, LLC, Yazoo City Rehabilitation & Healthcare Center, LLC, Brushy Creek Rehabilitation And Healthcare Center, LLC, and Palladium Hospice and Palliative Care, LLC, as borrowers.

"*Operations Transfer Agreements*" mean those agreements (including all supplements, amendments, modifications, addendums, exhibits, annexes and schedules thereto) entered into, or otherwise negotiated among the Debtors, Omega, and the New Operators (and, to the extent required, the Distribution Trust) to transition and convey to the New Operators all management rights, along with such other assets owned or used by them that are necessary or desirable for the operations of the Transfer Portfolio pursuant to the 9019 Settlement Order or this Plan.

"*Ordinary Course Professionals Order*" means that certain *Order Authorizing Employment and Retention of Professionals Utilized by the Debtors in Ordinary Course of Business*, entered by the Bankruptcy Court on April 18, 2018 [Docket No. 265], as amended, supplemented, or otherwise modified from time to time.

"*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"*Other Secured Claim*" means any Secured Claim other than an Administrative Claim, Secured Tax Claim or Omega Secured Claim.

"*Parent*" means 4 West Investors, LLC, as debtor-in-possession in these Chapter 11 Cases.

"*Patient Care Ombudswoman*" means Melanie Cyganowski, in her capacity as patient care Ombudswoman under section 333 of the Bankruptcy Code, as appointed by the United States Trustee.

"*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

"*Petition Date*" means March 6, 2018, the date on which the Debtors commenced the Chapter 11 Cases.

"*Plan*" means this *Debtors' Modified Third Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code*, dated as of October 8, 2018, including the Exhibits and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Modifications*" has the meaning set forth in Article IV.C hereof.

"*Plan Objection Deadline*" means the date and time by which objections to Confirmation and Consummation of the Plan must be Filed with the Bankruptcy Court and served in accordance with the Disclosure Statement Orders, which date is July 5, 2018 as set forth in the Disclosure Statement Orders.

"*Plan Schedule*" means a schedule annexed to this Plan or an appendix to the Disclosure Statement (as amended, supplemented or otherwise modified from time to time), which shall be deemed to include any documents filed as part of the Plan Supplement.

"*Plan Securities*" has the meaning set forth in Article VI of this Plan.

"*Plan Securities and Documents*" has the meaning set forth in Article VI of this Plan.

"*Plan Sponsor*" means, to the extent applicable pursuant to Article V.B of this Plan, SC-GA 2018 Partners, LLC (or its designee(s)), determined by the Debtors to be the "Successful Bidder" at the Auction pursuant to the Bid Procedures Order.

"*Plan Sponsor Consideration*" means (i) $195 million minus $49,000,000 as a result of the Omega Election, payable by the Plan Sponsor to the Debtors in Cash, or otherwise funded pursuant to the Exit Facility Documents or the Purchaser under the Asset Purchase Agreement, upon the Effective Date; and (ii) the Plan Sponsor Note.

"*Plan Sponsor Election*" has the meaning set forth in Article V.B of this Plan.

"*Plan Sponsor Note*" means the subordinated term note to be issued by the Plan Sponsor or the Purchaser in the aggregate principal amount of $30 million, in substantially the terms as outlined on Exhibit B of the Plan.

"*Plan Supplement*" means, collectively, the compilation of documents, forms of documents and/or term sheets relevant to the implementation of the Plan, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules, to be Filed with the Bankruptcy Court at least seven (7) days prior to the Confirmation Hearing, all of which are incorporated by reference into, and are an integral part of, this Plan.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Pro Rata*" means the proportion that (a) the Face Amount of a Claim in a particular Class or Classes (or portions thereof, as applicable) bears to (b) the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes (or portions thereof, as applicable), unless this Plan provides otherwise.

"*Professional*" means any Entity retained by the Debtors or the Committee in the Chapter 11 Cases pursuant to sections 327, 328, 333, 363, or 1103 of the Bankruptcy Code (other than an ordinary course professional pursuant to the Ordinary Course Professionals Order).

"*Professional Fee Claim*" means a Claim for Accrued Professional Compensation under sections 328, 330, 331, 503, or 1103 of the Bankruptcy Code.

"*Professional Fees Bar Date*" means the Business Day that is forty-five (45) days after the Effective Date or such other date as approved by Final Order of the Bankruptcy Court.

"*Proof of Claim*" means a proof of Claim Filed against any Debtor in the Chapter 11 Cases.

"*Purchaser*" means, to the extent applicable pursuant to Article V.B of this Plan, SC-GA 2018 Partners, LLC (or its designee(s)), as Purchaser under the Sale Order.

"*Recharacterization Judgment*" means the *Agreed Judgment and Partial Order of Dismissal*, entered by the Bankruptcy Court on September 24, 2018 [Adv. Docket No. 23] in the Adversary Proceeding.

"*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and each of their respective subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the Petition Date, and any Person claiming by or through any of them, including such Related Persons' respective heirs, executors, estates, servants, and nominees; *provided*, *however*, that no insurer of any Debtor shall constitute a Related Person of any Debtor or Reorganized Debtor.

"*Release*" means the release given by the Releasing Parties to the Released Parties as set forth in Article XB hereof.

"*Released Party*" means, collectively, the following, in each case in their capacity as such: (i) the Debtors; (ii) the Reorganized Debtors; (iii) Omega; (iv) the Plan Sponsor or the Purchaser (subject to Article V.B hereof); (v) the Patient Care Ombudswoman; and (vi), in each case of (i) to (v), the respective Related Persons of each of the foregoing Entities.

"*Releasing Party*" has the meaning set forth in Article XB hereof.

"*Reorganized Debtors*" means, subject to the Restructuring Transactions, the Debtors as reorganized pursuant to this Plan on or after the Effective Date, and their respective successors.

"*Reorganized Parent*" means, subject to the Restructuring Transactions, 4 West Investors, LLC, as reorganized pursuant to this Plan on or after the Effective Date, and its successors.

"*Restructuring Documents*" means, collectively, the documents and agreements (and the exhibits, schedules, annexes and supplements thereto) necessary to implement, or entered into in connection with, this Plan, which may include, without limitation, the Plan Supplement, the Exhibits, the Plan Schedules, the New Governance Documents, the Stock Purchase Agreement and the Plan Securities and Documents.

"*Restructuring Portfolio*" means the Facilities set forth on Exhibit C, attached hereto.

"*Restructuring Transactions*" has the meaning ascribed thereto in Article VA of this Plan.

"*Sale Order*" means that certain *Order Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, (B) Procedures to Assume and Assign Executory Contracts and Unexpired Leases, and (C) Related Relief,* entered by the Bankruptcy Court on October 4, 2018 [Docket No. 1041], which shall include the Asset Purchase Agreement annexed as an exhibit thereto, as such agreement may be amended, modified or supplemented from time to time.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, schedules of Executory Contracts, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and the applicable Bankruptcy Rules, as such Schedules may be amended, modified, or supplemented from time to time; provided however, that to the extent of any inconsistency between the Schedules (including the "Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs") on the one hand, and this Plan or the Confirmation Order on the other hand, the Plan and/or the Confirmation Order shall control.

"*Secured Claim*" means a Claim that is secured by a Lien on property in which any of the Debtors' Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

"*Secured Tax Claim*" means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

"*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and any similar federal, state or local law.

"*Stamp or Similar Tax*" means any stamp tax, recording tax, conveyance fee, intangible or similar tax, mortgage tax, personal or real property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes or fees imposed or assessed by any Governmental Unit.

"*Stock Purchase Agreement*" means the Plan Funding Commitment and Stock Purchase Agreement between the Plan Sponsor and 4 West Investors, LLC et al., dated as of March 6, 2018, as such document may be amended, modified, or supplemented from time to time.

"*Subordinated Claim*" means any Claim that is subject to (i) subordination under section 510(b) of the Bankruptcy Code or (ii) equitable subordination as determined by the Bankruptcy Court in a Final

Order, including, without limitation, any Claim for or arising from the rescission of a purchase, sale, issuance, or offer of a security of any Debtor; for damages arising from the purchase or sale of such a security; or for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim. The Mezzanine Loan Claim shall be deemed a Subordinated Claim for all purposes contained in this Plan.

"*Subsequent Distribution Date*" means the last Business Day of the month following the end of each calendar quarter after the Effective Date; *provided*, *however*, that if the Effective Date is within thirty (30) days of the end of a calendar quarter, then the first Subsequent Distribution Date will be the last Business Day of the month following the end of the first (1st) calendar quarter after the calendar quarter in which the Effective Date falls.

"*Third Amended Plan*" means the *Debtors' Third Amended Joint Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code*, dated as of June 22, 2018 [Docket No. 615].

"*Tort Claimants Trust*" means that certain trust established pursuant to Article V.L of the Plan and the Tort Claimants Trust Agreement.

"*Tort Claimants Trust Agreement*" means that certain trust agreement to be entered into pursuant to the Plan, under which the Tort Claimants Trust will be established. A copy of the Tort Claimants Trust Agreement shall be included in the Plan Supplement.

"*Tort Claimants Trustee*" means the individual initially selected by the Debtors and approved by the Bankruptcy Court to act as trustee of the Tort Claimants Trust pursuant to the terms of the Tort Claimants Trust Agreement to administer the Tort Claimants Trust, and any successor thereto.

"*Tort Claims Cash Amount*" means an amount equal to $2,000,000, which amount shall be funded, in Cash, by the Plan Sponsor on the Effective Date.

"*Tort Claims*" means any unliquidated Claim, demand, suit, cause of action, proceeding or any other right or asserted right to payment heretofore, now or hereafter asserted against any Debtor based upon or in any manner arising from or related to the Debtors' ownership, operation or management of any of the Facilities, including, without limitation, those for (i) death or personal injuries, including emotional distress, (ii) damages, including punitive damages, (iii) attorney's fees and other expenses, fees or costs, (iv) any possible economic loss or loss of consortium, and (v) for any equitable remedy, which such Claims shall be treated as Class 4.A Tort Claims for all purposes under the Plan.

"*Transfer Portfolio*" means the assets and operations of the Facilities set forth on <u>Exhibit D</u>, attached hereto, and transferred or to be transferred to New Operators pursuant to the 9019 Settlement Order, Operations Transfer Agreements and related documentation, and, to the extent necessary to effectuate such transfers under Article V.E hereof, the Plan and the Confirmation Order.

"*Transition Services Agreement*" means the agreement, in substantially the form Filed with the Plan Supplement, which agreement shall contain terms and conditions reasonably acceptable to the Debtors, the Plan Sponsor, Omega, and the Distribution Trust, with respect to the provision of transition services by the Plan Sponsor and its Affiliates to the Distribution Trust, and which is further described in Article V.V hereof.

"*Unexercised Equity Interests*" means any and all unexercised options, warrants, calls, rights, puts, awards, commitments, or any other agreements of any character, kind, or nature to acquire any Equity Interest, as in existence immediately prior to the Effective Date.

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is "unimpaired" within the meaning of section 1124 of the Bankruptcy Code.

"*United States Trustee*" means the office of the United States Trustee for Region 6.

"*Voting and Claims Agent*" means Omni Management Group, in its capacity as solicitation, notice, claims and balloting agent for the Debtors.

"*Voting Classes*" means Class 1, Class 4 and Class 4.A.

"*Voting Deadline*" means the date and time by which all Ballots must be received by the Voting and Claims Agent in accordance with the Disclosure Statement Orders, which date is July 5, 2018 for all holders of Claims other than Class 4.B Tort Claims, and July 16, 2018 for Class 4.B Tort Claims, as set forth in the Disclosure Statement Orders.

"*Voting Record Date*" means the date for determining which Holders of Claims in the Voting Classes are entitled to receive the Disclosure Statement and to vote to accept or reject this Plan.

## ARTICLE II

## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, DIP FACILITY CLAIMS AND PRIORITY CLAIMS

A.      *Administrative Claims*

Subject to sub-paragraph 1 below, on the later of the Effective Date and the date on which an Administrative Claim becomes an Allowed Administrative Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Claim (other than an Allowed Professional Fee Claim (the treatment of which is set forth in Article II.B)) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) Cash equal to the amount of such Allowed Administrative Claim; or (ii) such other less favorable treatment as to which the Debtors or the Distribution Trust, as applicable, after consultation with Omega, and the Holder of such Allowed Administrative Claim shall have agreed upon; *provided*, *however*, that Administrative Claims incurred by any Debtor in the ordinary course of business shall be paid in the ordinary course of business by such applicable Debtor, consistent with past practice and in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court and, in the event such Administrative Claim is not paid by such applicable Debtor on or before the Effective Date, such Administrative Claim shall be paid by the Distribution Trust.

Any Claim for damages arising from medical malpractice or personal injury based on acts or omissions occurring exclusively after the Petition Date but before the Effective Date shall be treated as an Administrative Claim under this Plan.  The Debtors reserve the right to establish a procedure to deal with any such medical malpractice and personal injury Administrative Claim, as may be set forth in the Plan Supplement or the Confirmation Order.

1.      Bar Date for Administrative Claims

Except as otherwise provided in this Article II.A and section 503(b)(1)(D) of the Bankruptcy Code, unless previously Filed or paid, requests for payment of Administrative Claims arising in the time period between the Petition Date and the Effective Date must be Filed and served on the Debtors or the Distribution Trust, as applicable, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order or the occurrence of the Effective Date (as applicable) no later than the Administrative Claims Bar Date; provided that the foregoing shall not apply to either the Holders of Claims arising under section 503(b)(1)(D) of the Bankruptcy Code or the Bankruptcy Court or United States Trustee as the Holders of Administrative Claims. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the applicable Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, the Distribution Trust and their respective Estates and property and such Administrative Claims shall be deemed discharged as of the Effective Date. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article XG hereof. Nothing in this Article IIA shall limit, alter, or impair the terms and conditions of the Claims Bar Date Order with respect to the Claims Bar Date for filing administrative expense claims arising under Section 503(b)(9) of the Bankruptcy Code.

Objections to such requests must be Filed and served on the Distribution Trust and the requesting party by the later of (a) the Claims Objection Deadline and (b) 60 days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by Final Order of the Bankruptcy Court.

2.      Professional Fee Claims

Professionals asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the Distribution Trust and such other Entities who are designated in the Confirmation Order an application for final allowance of such Professional Fee Claim no later than the Professional Fees Bar Date; provided that the Distribution Trust shall pay Professionals in the ordinary course of business for any work performed after the Effective Date, including those reasonable and documented fees and expenses incurred by Professionals in connection with the implementation and consummation of this Plan, in each case without further application or notice to or order of the Bankruptcy Court; provided, further, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses from the Debtors and Distribution Trust for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order, in each case without further application or notice to or order of the Bankruptcy Court.

Objections to any Professional Fee Claim must be Filed and served on the Distribution Trust and the requesting party by no later than twenty (20) days after the Filing of the applicable final request for payment of the Professional Fee Claim.

Each Holder of an Allowed Professional Fee Claim shall be paid in full in Cash by the Distribution Trust, within five (5) Business Days after entry of the order approving such Allowed Professional Fee Claim.

B.      *DIP Facility Claims*

The DIP Facility Claims shall be deemed to be Allowed Secured Claims and superpriority Administrative Claims in the full amount due and owing under the DIP Facility Loan Agreement as of the Effective Date, inclusive of the Distribution Trust Reserve Amount.

The DIP Facility Claims shall be paid in full, in Cash, on or before the Effective Date. Thereafter, other than obligations that may arise and survive by their terms under the DIP Facility Loan Agreement or DIP Orders, all obligations under the DIP Facility Loan Agreement shall terminate.

C.      *Priority Tax Claims*

Subject to Article VIII hereof, on, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors or the Distribution Trust, as applicable, after consultation with Omega: (A) Cash equal to the amount of such Allowed Priority Tax Claim; (B) such other less favorable treatment as to which the Debtors or Distribution Trust, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing; (C) such other treatment such that it will not be Impaired pursuant to section 1124 of the Bankruptcy Code or (D) pursuant to and in accordance with sections 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in regular installment payments over a period ending not more than five (5) years after the Petition Date, plus simple interest at the rate required by applicable non-bankruptcy law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to in writing by a particular taxing authority and the Debtors or Distribution Trust, as applicable, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; provided, however, that Priority Tax Claims incurred by any Debtor in the ordinary course of business may be paid in the ordinary course of business by such Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court. Any installment payments to be made under clause (C) or (D) above shall be made in equal quarterly Cash payments beginning on the first applicable Subsequent Distribution Date, and continuing on each Subsequent Distribution Date thereafter until payment in full of the applicable Allowed Priority Tax Claim.

D.      Other Priority Claims

Subject to Article VIII hereof, on, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Other Priority Claim is an Allowed Other Priority Claim as of the Effective Date or (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Other Priority Claim, at the election of the Debtors or the Distribution Trust, as applicable, after consultation with Omega: (A) Cash equal to the amount of such Allowed Other Priority Claim; (B) such other less favorable treatment as to which the Debtors or Distribution Trust, as applicable, and the Holder of such Allowed Other Priority Claim shall have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code; provided, however, that Other Priority Claims incurred by any

Debtor in the ordinary course of business may be paid in the ordinary course of business by such Debtor in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.    *Summary*

The Plan is premised upon the substantive consolidation of the Debtors, as set forth in more detail below, solely for the purposes of voting, determining which Claims have accepted the Plan, confirmation of the Plan, and the resultant treatment of Claims and Equity Interests and Distributions under the terms of the Plan.   Accordingly, the Plan shall serve as a motion for entry of a Bankruptcy Court order approving the substantive consolidation of the Debtors for these limited purposes.  All Claims and Equity Interests, except Administrative Claims, DIP Facility Claims, Priority Tax Claims and Other Priority Claims, are placed in the Classes set forth below.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, for voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  This Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remaining portion of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released, disallowed or otherwise settled prior to the Effective Date.

Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim/Equity Interest | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1. | Omega Secured Claim | Impaired | *Entitled to Vote* |
| 2. | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 3. | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4. | General Unsecured Claims | Impaired | *Entitled to Vote* |
| 4.A | Tort Claims | Impaired | *Entitled to Vote* |
| 5. | Subordinated Claims | Impaired | Deemed to Reject |
| 6. | Equity Interests | Impaired | Deemed to Reject |

| Class | Claim/Equity Interest | Status | Voting Rights |
|-------|----------------------|--------|---------------|

B.      *Classification and Treatment of Claims and Equity Interests*

    1.      <u>Class 1 – Omega Secured Claim</u>

        (a)      *Classification*:  Class 1 consists of the Omega Secured Claim.

        (b)      *Treatment*:  On the Effective Date, following payment in Cash (including from the Cash component of the Plan Sponsor Consideration) of, or adequate reserve for, Allowed Administrative Claims, Allowed DIP Facility Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Tax Claims, Allowed Other Secured Claims, the General Unsecured Claims Cash Amount and the Tort Claims Cash Amount, each Holder of an Omega Secured Claim shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for such Omega Secured Claim, (i) the remaining Plan Sponsor Consideration; (ii) the remaining Distribution Trust Assets; (iii) the Interim Rent; and (iv) the Transfer Portfolio.

        (c)      *Voting:*  Class 1 is Impaired, and Holders of Claims in Class 1 are entitled to vote to accept or reject this Plan.

    2.      <u>Class 2 - Secured Tax Claims</u>

        (a)      *Classification*:  Class 2 consists of the Secured Tax Claims.

        (b)      *Treatment*:   Subject to <u>Article VIII</u> hereof, on, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Class 2 Claim is an Allowed Class 2 Claim as of the Effective Date or (ii) the date on which such Class 2 Claim becomes an Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim, at the election of the Debtors or the Distribution Trust, as applicable, after consultation with Omega:  (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) such other less favorable treatment as to which the Debtors or Distribution Trust, as applicable, and the Holder of such Allowed Class 2 Claim shall have agreed upon in writing; (C) the Collateral securing such Allowed Class 2 Claim; <u>provided</u>, <u>however</u>, that to the extent such Collateral relates to the Restructuring Portfolio, only upon the consent of the Plan Sponsor; (D) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code or (E) pursuant to and in accordance with sections 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, Cash in an aggregate amount of such Allowed Class 2 Claim payable in regular installment payments over a period ending not more than five (5) years after the Petition Date, plus simple interest at the rate required by applicable non-bankruptcy law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to in writing by a particular taxing authority and the Debtors or Distribution Trust, as applicable.  Any installment payments to be made under clause (E) above shall be made in equal quarterly Cash payments beginning on the first applicable Subsequent Distribution Date, and

continuing on each Subsequent Distribution Date thereafter until payment in full of the applicable Allowed Class 2 Claim.

(c)    *Voting:* Class 2 is Unimpaired, and the Holders of Claims in Class 2 shall be conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Claims in Class 2 are not entitled to vote to accept or reject this Plan.

3.    <u>Class 3 - Other Secured Claims</u>

(a)    *Classification*: Class 3 consists of the Other Secured Claims.

(b)    *Treatment*: Subject to <u>Article VIII</u> hereof, on, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Class 3 Claim is an Allowed Class 3 Claim as of the Effective Date or (ii) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 3 Claim, at the election of the Debtors or the Distribution Trust, as applicable, after consultation with Omega: (A) Cash equal to the amount of such Allowed Class 3 Claim; (B) such other less favorable treatment as to which the Debtors or Distribution Trust, as applicable, and the Holder of such Allowed Class 3 Claim shall have agreed upon in writing; (C) the Collateral securing such Allowed Class 3 Claim; <u>provided</u>, <u>however</u>, that to the extent such Collateral relates to the Restructuring Portfolio, only upon the consent of the Plan Sponsor or (D) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 3 is Unimpaired, and the Holders of Claims in Class 3 are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Class 3 are not entitled to vote to accept or reject this Plan.

4.    <u>Class 4 – General Unsecured Claims</u>

(a)    *Classification:* Class 4 consists of the General Unsecured Claims, including, but not limited to, the Omega Unsecured Claim.

(b)    *Allowance*: All General Unsecured Claims, including the Omega Unsecured Claim, shall be allowed under Section 502 of the Bankruptcy Code unless subject to any objection and the resolution process set forth in <u>Article VIII</u> hereof.

*Treatment:* Subject to <u>Article VIII</u> hereof, on, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Class 4 Claim is an Allowed Class 4 Claim as of the Effective Date or (ii) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 4 Claim, at the election of the Debtors or the Distribution Trust, as applicable: (A) its Pro Rata share of the General Unsecured Claims Cash Amount or (B) such other less favorable treatment as to which the Debtors or Distribution Trust, as applicable, and the Holder of such Allowed Class 4 Claim shall have agreed upon in writing.

(c) *Voting:* Class 4 is Impaired, and Holders of Claims in Class 4 (including, for the avoidance of doubt, Holders of the Omega Unsecured Claim) are entitled to vote to accept or reject this Plan.

5. <u>Class 4.A – Tort Claims</u>

(a) *Classification:* Class 4.A consists of the Tort Claims.

(b) *Allowance*: As set forth more fully in Articles V.L and VIII.E hereof, each holder of a Tort Claim may establish the Allowed Amount, if any, of such Tort Claim.

*Treatment:* On, or as soon as reasonably practicable after the Effective Date, and after such Class 4.A Tort Claim becomes an Allowed Class 4.A Tort Claim subject to the procedures contained in Article VIII.E hereof, the Holder of such Allowed Class 4.A Tort Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 4.A Tort Claim, its Pro Rata share of the Tort Claim Cash Amount, or such other less favorable treatment as to which the Debtors or Tort Claimants Trust, as applicable, and the Holder of such Allowed Class 4.A Claim shall have agreed upon in writing.

(c) *Voting:* Class 4.A is Impaired, and Holders of Claims in Class 4.A are entitled to vote to accept or reject this Plan.

6. <u>Class 5 – Subordinated Claims</u>

(a) *Classification*: Class 5 consists of Subordinated Claims.

(b) *Treatment:* Subordinated Claims are subordinated pursuant to this Plan and section 510 of the Bankruptcy Code. The holders of Subordinated Claims shall not receive or retain any property under this Plan on account of such Claims, and the obligations of the Debtors and the Reorganized Debtors on account of Subordinated Claims shall be discharged.

(c) *Voting:* Class 5 is Impaired. Because the Holders of such Subordinated Claims are not expected to receive any distributions pursuant to this Plan, they are therefore conclusively deemed, pursuant to section 1126(g) of the Bankruptcy Code, to have rejected this Plan and are not entitled to vote to accept or reject this Plan.

7. <u>Class 6 - Equity Interests</u>

(a) *Classification*: Class 6 consists of the Equity Interests.

(b) *Treatment*: On the Effective Date, subject to the Restructuring Transactions, the Equity Interests will be cancelled without further notice to, approval of or action by any Person or Entity, and each Holder of an Equity Interest shall not receive any distribution or retain any property on account of such Equity Interest.

       (c)     *Voting*: Class 6 is Impaired. Because the Holders of such Equity Interests are not expected to receive any distributions pursuant to this Plan, they are therefore conclusively deemed, pursuant to section 1126(g) of the Bankruptcy Code, to have rejected this Plan and are not entitled to vote to accept or reject this Plan.

C.     *Special Provision Governing Unimpaired Claims*

Except as otherwise provided herein, nothing under this Plan shall affect or limit the Debtors' or the Reorganized Debtors' rights and defenses (whether legal or equitable) in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.     *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

A.     *Presumed Acceptance of Plan*

Classes 2 and 3 are Unimpaired under this Plan. Therefore, the Holders of Claims or Equity Interests in such Classes are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

B.     *Presumed Rejection of Plan*

Classes 5 and 6 are Impaired under this Plan. Because the Holders of Claims or Equity Interests in such Classes are not expected to receive any distributions pursuant to this Plan, they are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

C.     *Voting Classes*

Class 1, Class 4 and Class 4.A are Impaired under this Plan. The Holders of Claims in such Classes as of the Voting Record Date are entitled to vote to accept or reject this Plan.

To the extent that the Bankruptcy Court determines, at or prior to the Confirmation Hearing, that the modifications contained in the Plan (the "Plan Modifications") do not adversely impact Omega's treatment under the Plan, as compared to the Third Amended Plan, in a material way, Omega shall be deemed to have accepted the Plan based on its prior acceptance of the Third Amended Plan received by the Voting and Claims Agent on July 2, 2018 (the "Omega Accepting Ballots").

D.     *Acceptance by Impaired Class of Claims*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted this Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class actually voting have voted to accept this Plan.

E.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by Class 1, Class 4 and Class 4.A. The Debtors request confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code. The Debtors reserve the right to modify this Plan or any Exhibit or Plan Schedule in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

F.      *Votes Solicited in Good Faith*

The Debtors have, and upon the Confirmation Date shall be deemed to have, solicited votes on this Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation. Accordingly, the Debtors, the Reorganized Debtors, and each of their respective Related Persons shall be entitled to, and upon the Confirmation Date are hereby granted, the protections of section 1125(e) of the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Substantive Consolidation*

Except as expressly provided in this Plan, each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims under this Plan and distributions from the Distribution Trust and Tort Claimants Trust. On the Effective Date, (i) all Distribution Trust Assets (and all proceeds thereof), Tort Claims Cash Amount and all liabilities each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (ii) all Intercompany Claims among the Debtors shall be eliminated and there shall be no distributions on account of such Intercompany Claims, (iii) any obligation of a Debtor and any guarantee thereof by any other Debtor shall be deemed to be one obligation, and any such guarantee shall be eliminated, (iv) each Claim filed or to be filed against more than one Debtor shall be deemed filed only against one consolidated Debtor and shall be deemed a single Claim against and a single obligation of the Debtors, and (v) any joint or several liability of the Debtors shall be deemed one obligation of the Debtors, with each of the foregoing effective retroactive to the Petition Date. On the Effective Date, and in accordance with the terms of the Plan, all Claims based upon guarantees of collection, payment or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect. Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structures of the Reorganized Debtors.

In the event the Bankruptcy Court does not approve the substantive consolidation of all of the Estates for the purposes set forth herein, the Plan shall be treated as a separate plan of reorganization for each Debtor not substantively consolidated.

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Chapter 11 Cases for the limited purposes set forth herein. If no objection to substantive consolidation is timely filed and served by any Holder of an Impaired Claim on or before the deadline to object to the confirmation of the Plan, or such other date as may be fixed by the Court and the Debtors meet their burden of introducing evidence to establish that substantive consolidation is merited under the standards of applicable bankruptcy law, the Confirmation Order, which shall be deemed to substantively consolidate the Debtors for the limited purposes set forth herein, may be entered by the Court. If any such objections are timely filed and served, a hearing with respect to the substantive consolidation of the Chapter 11 Cases and the objections thereto shall be scheduled by the Court, which hearing shall coincide with the Confirmation Hearing.

B.      *Restructuring Transactions*

Without limiting any rights and remedies of the Debtors or Reorganized Debtors under this Plan or applicable law, but in all cases subject to the terms and conditions of the Restructuring Documents and any consents or approvals required thereunder and the Plan Sponsor Election, the entry of the Confirmation Order shall constitute authorization for the Reorganized Debtors to take, or to cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of this Plan prior to, on and after the Effective Date, including such actions as may be necessary or appropriate to effectuate a corporate restructuring of their respective businesses (whether for tax purposes or otherwise), to simplify the overall corporate structure of the Reorganized Debtors, to transfer or re-domesticate certain of the Debtors from their existing jurisdiction of formation to other jurisdictions for purposes of continuing their formation, organization or incorporation, as applicable, or to change the classification of any of the Reorganized Debtors or Affiliates of the Debtors for United States federal income tax purposes. Such restructuring may include one or more mergers, consolidations, conversions, transfers, restructures, dispositions, liquidations or dissolutions, creations of one or more new Entities, or the making of any tax classification elections, in each case, as may be determined by (i) prior to the Effective Date, the Debtors (with the written consent of the Plan Sponsor) or (ii) on or after the Effective Date, the Reorganized Debtors, to be necessary or appropriate (collectively, the "**Restructuring Transactions**"). To the extent known, any such Restructuring Transactions will be summarized in the Description of Structure, and in all cases, such transactions shall be subject to the terms and conditions of this Plan and the Restructuring Documents and any consents or approvals required hereunder or thereunder.

All such Restructuring Transactions taken, or caused to be taken, shall be deemed to have been authorized and approved by the Bankruptcy Court subject to the Confirmation Order. The actions to effectuate the Restructuring Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable state law and such other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of this Plan and having such other terms to which the applicable Entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, conversion, transfer or dissolution pursuant to applicable state law; (iv) the creation of one or more new Entities; (v) the filing of appropriate election forms with the IRS or other tax authorities; and (vi) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions, but in all cases subject to the terms and conditions of this Plan and the Restructuring Documents and any consents or approvals required thereunder.

In light of the entry of the Sale Order, which authorizes the Purchaser to purchase certain of the Debtors' assets pursuant to the terms and conditions contained therein, the Plan Sponsor shall file an

election with the Plan Supplement (the "**Plan Sponsor Election**"), indicating whether (in its sole discretion) the Plan Sponsor will consummate the transactions contemplated by the Stock Purchase Agreement or whether the Purchaser will consummate the transactions contemplated by the Sale Order. It is understood by the parties that, other than the structure of the transaction, the purchase of assets by the Purchaser pursuant to the Sale Order and the purchase of stock by the Plan Sponsor pursuant to the Stock Purchase Agreement and the Plan are substantially similar transactions on substantially similar economic terms and the election has no material economic impact on the Debtors. In the event of an election by the Plan Sponsor to purchase the Debtors' assets pursuant to the Sale Order, such sale must close prior to (or contemporaneously with) the Effective Date, and the Reorganized Debtors shall thereafter be liquidated and/or dissolved by the Plan Sponsor following the Effective Date, as may be more fully described in the Description of Structure.

C.     *Continued Corporate Existence*

Subject to the Restructuring Transactions permitted by Article V.B of this Plan, after the Effective Date, the Reorganized Debtors shall continue to exist as separate legal entities in accordance with the applicable law in the respective jurisdictions in which they are incorporated, organized or formed and pursuant to their respective certificates of formation and limited liability company agreements, or other applicable organizational documents, in effect immediately prior to the Effective Date, except to the extent such certificates of formation and limited liability company agreements, or other applicable organizational documents, are amended, restated or otherwise modified under this Plan, or as otherwise contemplated in the Description of Structure.

D.     *Vesting of Assets Free and Clear of Liens and Claims*

Except as otherwise expressly provided in this Plan, the Confirmation Order, or any Restructuring Document, pursuant to sections 1123(a)(5), 1123(b)(3), 1141(b) and (c) and other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property (real and personal) and assets of the Estates of the Debtors, including all claims, rights, and Causes of Action of the Debtors, and any other assets or property acquired by the Debtors or the Reorganized Debtors during the Chapter 11 Cases or under or in connection with this Plan (which shall include, without limitation, the real and personal property comprising the Restructuring Portfolio transferred by Omega to the Debtors on the Effective Date pursuant to the terms of Article V.E hereof), other than (i) the assets relating to the Transfer Portfolio transferred to, or otherwise deemed to be the property of, Omega or its designees; (ii) the Distribution Trust Assets; and (iii) the Tort Claims Cash Amount, shall automatically, without the notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule or any requirement of further action, vote or other approval or authorization of the security holders, equity owners, members, managers, officers or directors of the Debtors, the Reorganized Debtors or the other applicable Entity or by any other person (except for those expressly required pursuant hereto or by the Restructuring Documents), vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Restructuring Transactions and Liens, if any, which survive the occurrence of the Effective Date as described in this Plan. On and after the Effective Date, the Reorganized Debtors may operate their respective businesses and use, acquire, and dispose of their respective property, without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

On the Effective Date, except as otherwise provided in the Plan and Confirmation Order, the Distribution Trust Assets shall automatically vest in the Distribution Trust free and clear of all Claims, Liens, charges, and other encumbrances. On the Effective Date, except as otherwise provided in the Plan

and Confirmation Order, the Tort Claims Cash Amount shall automatically vest in the Tort Claimants Trust free and clear of all Claims, Liens, charges, and other encumbrances.

For the avoidance of doubt, and notwithstanding anything to the contrary contained in this Plan, the Debtors shall not transfer or be deemed to have transferred to (or otherwise vest in) the Reorganized Debtors any claims or Causes of Action (i) released pursuant to Article X.B.1 hereof or (ii) exculpated pursuant to Article X.E hereof to the extent of any such exculpation.

E.     *Intentionally Deleted*

F.     *Plan Sponsor Note and Exit Facility Documents*

On the Effective Date, the Debtors and the Reorganized Debtors, as applicable, shall be authorized to execute and deliver, and to consummate the transactions contemplated by, the Plan Sponsor Note (in form and substance reasonably acceptable to the Plan Sponsor and Omega) and the Exit Facility Documents (in form and substance reasonably acceptable to the Plan Sponsor and Omega) and without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by the Plan Sponsor Note or the Exit Facility Documents). On the Effective Date, the Plan Sponsor Note and the Exit Facility Documents shall constitute legal, valid, binding and authorized indebtedness and obligations of the Reorganized Debtors and/or one or more other applicable Entities as set forth in greater detail in the Description of Structure, enforceable in accordance with their respective terms and such indebtedness and obligations shall not be, and shall not be deemed to be, enjoined or subject to discharge, impairment, release or avoidance under this Plan, the Confirmation Order or on account of the Confirmation or Consummation of this Plan.

G.     *New Equity Interests*

On the Effective Date, subject to the terms and conditions of the Restructuring Transactions, Reorganized Parent and/or another applicable Person or Entity, as set forth in greater detail in the Description of Structure, shall issue the New Equity Interests pursuant to this Plan and the New Governance Documents to the Plan Sponsor. Except as otherwise expressly provided in the Restructuring Documents, the Reorganized Parent shall not be obligated to register the New Equity Interests under the Securities Act or to list the New Equity Interests for public trading on any securities exchange.

Distributions of the New Equity Interests to the Plan Sponsor may be made by delivery or book-entry thereof by the applicable Distribution Agent in accordance with this Plan and the New Governance Documents. Upon the Effective Date, after giving effect to the transactions contemplated hereby, the authorized units or other equity securities of Reorganized Parent shall be that number of units of New Equity Interests as may be designated in the New Governance Documents.

H.     *New Governance Documents*

Subject to the Restructuring Transactions permitted by Article V.B of this Plan, on or before the Effective Date, the Debtors and/or the Reorganized Debtors (as applicable), and/or any applicable Entity as set forth in the Description of Structure, as applicable, shall enter into the New Governance Documents, which shall become effective and binding in accordance with its terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by the New Governance Documents).

On and as of the Effective Date, all of the Holders of New Equity Interests shall be deemed to be parties to the applicable New Governance Documents, without the need for execution by such Holder. The New Governance Documents, as applicable, shall be binding on all Persons receiving, or to which the New Equity Interests are issued or distributed and all Holders of the New Equity Interests (and such Persons' or Holders' respective successors and assigns), whether such New Equity Interest is received or to be received on or after the Effective Date and regardless of whether such Person executes or delivers a signature page to the New Governance Documents.

I.    *Plan Securities and Related Documentation; Exemption from Securities Laws*

On and after the Effective Date, the Debtors, the Reorganized Debtors and any other applicable Entity as set forth in the Description of Structure, as applicable, are authorized to and shall provide or issue, as applicable, the New Equity Interests to the Plan Sponsor and any and all other securities to be distributed or issued under this Plan (collectively, the "**Plan Securities**") and any and all other notes, units, instruments, certificates, and other documents or agreements required to be distributed, issued, executed or delivered pursuant to or in connection with this Plan (collectively, the "**Plan Securities and Documents**"), in each case in form and substance acceptable to the Plan Sponsor, and without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

The distribution and issuance, as applicable, of the Plan Securities and Documents under this Plan shall be exempt from registration under applicable securities laws (including Section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to section 1145(a) of the Bankruptcy Code, Section 4(a)(2) of the Securities Act and/or other applicable exemptions. An offering of Plan Securities provided in reliance on the exemption from registration under the Securities Act pursuant to section 1145(a) of the Bankruptcy Code may be sold without registration to the extent permitted under section 1145 of the Bankruptcy Code and is deemed to be a public offering, and such Plan Securities may be resold without registration to the extent permitted under section 1145 of the Bankruptcy Code. Any Plan Securities and Documents provided in reliance on the exemption from registration under the Securities Act provided by Section 4(a)(2) of such act will be provided in a private placement.

All units of New Equity Interests issued to the Plan Sponsor will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance on Section 1145(a) of the Bankruptcy Code (or to the extent required, in reliance on Section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder).

Resales by Persons who receive any Plan Securities that are offered pursuant to an exemption under section 1145(a) of the Bankruptcy Code, who are deemed to be "underwriters" (as such term is defined in the Bankruptcy Code) (collectively, the "**Restricted Holders**") would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act. Restricted Holders would, however, be permitted to resell the New Equity Interests or Plan Securities that are offered pursuant to an exemption under section 1145(a) of the Bankruptcy Code, as applicable, without registration if they are able to comply with the provisions of Rule 144 under the Securities Act, or if such securities are registered with the Commission pursuant to a registration statement or otherwise.

Persons who purchase securities pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will hold "restricted securities." Resales of such restricted securities would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law. Holders of restricted securities would, however, be permitted to resell Plan Securities without registration if they are able to comply with the

applicable provisions of Rule 144 or Rule 144A or any other applicable registration exemption under the Securities Act, or if such securities are registered with the Commission.

J.      *Release of Liens and Claims*

To the fullest extent provided under section 1141(c) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII hereof, all Liens and Claims against the assets or property of the Debtors or the Estates shall be fully released, canceled, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity.  The filing of the Confirmation Order with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be required in order to effect, the termination of such Liens or Claims and other interests to the extent provided in the immediately preceding sentence.  Any Entity holding such Liens, Claims or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.  For the avoidance of doubt, the release set forth in this Article V.J shall not apply to (i) obligations under the Plan Sponsor Note, (ii) any liens granted pursuant to the Exit Facility Documents, or (iii) any obligations of the Debtors to facilitate the transition of the Transfer Portfolio pursuant to the 9019 Settlement Order, the Plan or the Confirmation Order.

K.      *Distribution Trust*

On the Effective Date, the Debtors shall enter into the Distribution Trust Agreement.  The Distribution Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Distribution Trust as a "liquidating trust" for United States federal income tax purposes.  The Distribution Trust shall be established for the sole purpose of liquidating and distributing the Distribution Trust Assets in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The Distribution Trust shall be administered by the Distribution Trustee, who shall be selected by Omega in consultation with the Debtors, the Committee and the Plan Sponsor, pursuant to the Distribution Trust Agreement and the Plan.  In the event of an inconsistency between the Plan and the Distribution Trust Agreement as such conflict relates to anything other than the establishment of the Distribution Trust, the Distribution Trust Agreement shall control.  All compensation for the Distribution Trustee and other costs of administration shall be paid from the Distribution Trust Assets in accordance with the Distribution Trust Agreement.

If requested by the Distribution Trust, the Reorganized Debtors shall provide such data, records, access to personnel for information or questions, or other similar kind of assistance that the Distribution Trust may reasonably request in order for the Distribution Trust to liquidate its assets, resolve and pay claims, or otherwise complete its duties as set forth in this Plan or the Distribution Trust Agreement.

Notwithstanding anything to the contrary contained herein (except with respect to the General Unsecured Claims Cash Amount, which shall be the sole source of funds to satisfy Allowed General Unsecured Claims), the Distribution Trust Assets shall be used solely to the extent necessary to pay Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Tax Claims and Allowed Other Secured Claims.  In the event that the amount of the Distribution

Trust Assets exceeds the amount necessary to satisfy Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Tax Claims, Allowed Other Secured Claims, any such remainder shall be disbursed to Holders of Class 1 Omega Secured Claim.

L.      *Tort Claimants Trust*

On the Effective Date, provided that there remains at least one unliquidated Class 4.A Claim, the Tort Claimants Trust shall be established and shall become effective, and the Tort Claimants Trustee shall execute the Tort Claimants Trust Agreement.  In the event of any conflict between the terms of the Plan and the Tort Claimants Trust Agreement, the terms of the Plan shall govern.  The Tort Claimants Trust Agreement may establish certain powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities do not affect the status of the Tort Claimants Trust as a liquidating trust for United States federal income tax purposes.

The Tort Claimants Trust shall be established for the sole purpose of liquidating and distributing the Tort Claims Cash Amount in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  The Tort Claimants Trust shall administer, process, settle, resolve and liquidate all Allowed Tort Claims in accordance with Article VIII.E hereof and the Tort Claimants Trust Agreement, and shall use the Tort Claims Cash Amount to pay all Allowed Tort Claims.  All compensation for the Tort Claimants Trustee and other costs of administration shall be provided by the Plan Sponsor or its Affiliates at no cost to the Debtors' estates or the Tort Claimants Trust (other than those costs required to litigate the Tort Claims, including costs and expenses related to expert witnesses, estimation hearings, or trial, which shall be paid from the corpus of the Tort Claimants Trust).

On the Effective Date, the Tort Claims Cash Amount shall vest in the Tort Claimants Trust and shall constitute assets of the Tort Claimants Trust, free and clear of all Claims, Liens, interests and encumbrances.  The Tort Claimants Trust shall be authorized to assert all objections, defenses, cross-claims, offsets and recoupments that the Debtors have or would have had under applicable law with respect to the Tort Claims.

M.      *Organizational Documents of the Reorganized Debtors*

The respective organizational documents of each of the Debtors shall be amended and restated or replaced (as applicable) in form and substance satisfactory to the Plan Sponsor as necessary to satisfy the provisions of this Plan and the Bankruptcy Code.  Such organizational documents shall: (i) to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity securities; (ii) authorize the issuance of New Equity Interests to the Plan Sponsor; (iii) to the extent necessary or appropriate, include restrictions on the transfer of New Equity Interests; and (iv) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate this Plan and the transactions contemplated herein.  After the Effective Date, the Reorganized Debtors may, subject to the terms and conditions of the Restructuring Documents, amend and restate their respective organizational documents as permitted by applicable law.

N.      *New Board and Officers of the Reorganized Debtors*

The New Board or other governing body of the Reorganized Debtors and/or one or more applicable Entities as set forth in the Description of Structure shall be identified in the Plan Supplement as <u>Plan Schedule 2</u> and shall be subject to approval of the Bankruptcy Court pursuant to section 1129(a)(5) of the Bankruptcy Code.  Pursuant to and to the extent required by section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, at or prior to the Confirmation Hearing, the identity and affiliations of

any Person proposed to serve on the initial board or other governing body or as an officer of each of the Reorganized Debtors and/or applicable Entities, and, to the extent such Person is an insider other than by virtue of being a managing member, manager, director or an officer, the nature of any compensation for such Person. Each such manager, director, managing member and/or officer shall serve from and after the Effective Date pursuant to applicable law and the terms of the New Governance Documents and the other constituent and organizational documents of the applicable Reorganized Debtors and/or Entity. The existing boards of director, manager or members and other governing bodies of the Debtors will be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity.

O.    *Corporate Action*

Each of the Debtors, the Reorganized Debtors and/or any other applicable Entity as set forth in the Description of Structure may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, the issuance and the distribution of the securities to be issued pursuant hereto, in each case in form and substance acceptable to the Plan Sponsor, and without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, equity owners, members, managers, officers or directors of the Debtors, the Reorganized Debtors or other applicable Entity or by any other Person (except for those expressly required pursuant hereto or by the Restructuring Documents).

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the unitholders, equity owners, directors, officers, managers or members of the Debtors (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the unitholders, equity owners, directors, officers, managers or members of the Debtors, the Reorganized Debtors or other applicable Entity, or the need for any approvals, authorizations, actions or consents of any Person.

As of the Effective Date, all matters provided for in this Plan involving the legal or corporate structure of the Debtors, the Reorganized Debtors or other applicable Entity (including, without limitation, the adoption of the New Governance Documents and similar constituent and organizational documents, and the selection of directors, managers, managing members and/or officers for, each of the Reorganized Debtors), and any legal or corporate action required by the Debtors, the Reorganized Debtors or other applicable Person or Entity in connection with this Plan, shall be deemed to have occurred and shall be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the unitholders, equity owners, directors, officers, managers or members of the Debtors, the Reorganized Debtors or other applicable Entity or by any other Person.

On and after the Effective Date, the appropriate officers of the Debtors, the Reorganized Debtors and any other applicable Entity are authorized to issue, execute, and deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtors, the Reorganized Debtors or other applicable Entity, in each case in form and substance acceptable to the Reorganized Debtors and without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of

further action, vote or other approval or authorization by any Person. The secretary and any assistant secretary of the Debtors, the Reorganized Debtors and such other applicable Entity shall be authorized to certify or attest to any of the foregoing actions.

P.      *Cancellation of Notes, Equity Interests, Certificates, and Instruments*

On the Effective Date, except to the extent otherwise expressly provided herein, all notes, units, equity interests, indentures, instruments, certificates, agreements and other documents evidencing or relating to any Impaired Claim and/or the Equity Interests and the Equity Interests themselves shall be canceled, and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

Q.      *Sources of Consideration for Plan Distributions*

The Debtors, the Distribution Trust or the Tort Claimants Trust, as applicable, shall make distributions under the Plan, with: (1) the Plan Sponsor Consideration; (2) the Debtors' Cash on hand; (3) Accounts Receivable; (4) the General Unsecured Claims Cash Amount; and (5) the Tort Claims Cash Amount, as provided under the Plan. The Distribution Trust Assets shall be used to pay Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, all Allowed Claims in Classes 2 and 3 (in the event the collateral is not returned to the Allowed Secured Tax Claim holder or Allowed Other Secured Claim holder) and Allowed Class 4 General Unsecured Claims. The Tort Claims Cash Amount shall be used to pay Allowed Class 4.A Tort Claims.

Each distribution and issuance referred to in Article III hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, and which terms and conditions shall bind each Entity receiving such distribution or issuance.

R.      *Continuing Effectiveness of Final Orders*

Payment authorization granted to the Debtors under any prior Final Order entered by the Bankruptcy Court shall continue in effect after the Effective Date. Accordingly, the Debtors or the Reorganized Debtors may pay or otherwise satisfy any Claim to the extent permitted by, and subject to, the applicable Final Order without regard to the treatment that would otherwise be applicable to such Claim under this Plan.

S.      *Payment of Fees and Expenses of Certain Creditors*

Subject to the procedures under the DIP Orders, the Debtors or the Distribution Trust, as applicable shall, on and after the Effective Date and to the extent invoiced, pay the Omega Fees and Expenses (in each case whether accrued prepetition or postpetition and to the extent not otherwise paid during the Chapter 11 Cases), without application by any such parties to the Bankruptcy Court, and without notice and a hearing pursuant to section 1129(a)(4) of the Bankruptcy Code or otherwise; provided, however, except to the extent otherwise provided in the DIP Orders, if the Debtors or Distribution Trust and any such Entity cannot agree with respect to the reasonableness of the fees and expenses (incurred prior to the Effective Date) to be paid to such party, the reasonableness of any such fees and expenses shall be determined by the Bankruptcy Court (with any undisputed amounts to be paid by the Debtors on or after the Effective Date (as applicable) and any disputed amounts to be escrowed by

the Distribution Trust). Notwithstanding anything to the contrary in this Plan, the fees and expenses described in this paragraph shall not be subject to either Administrative Claims Bar Date.

T.      *General Unsecured Claims Cash Amount*

Notwithstanding any other provision of this Plan to the contrary, the Debtors and the Distribution Trust shall only be obligated to satisfy Allowed General Unsecured Claims from the General Unsecured Claims Cash Amount, and no other asset or property of the Debtors, the Reorganized Debtors, the Distribution Trust or their respective property or Estates shall be required to be used or otherwise monetized to pay or otherwise fund such Allowed Claims. Omega shall receive no distribution on account of the Omega Unsecured Claim from the General Unsecured Claims Cash Amount.

U.      *Tort Claims Cash Amount*

Notwithstanding any other provision of this Plan to the contrary, the Debtors and the Tort Claimants Trust shall only be obligated to satisfy Allowed Tort Claims from the Tort Claims Cash Amount, and no other asset or property of the Debtors, the Reorganized Debtors, the Distribution Trust, the Tort Claimants Trust or their respective property or Estates shall be required to be used or otherwise monetized to pay or otherwise fund such Allowed Claims.

V.      *Plan Sponsor Affiliate Agreements and Waiver of Affiliate Claims*

On the Effective Date, the Plan Sponsor (or following the Plan Sponsor Election, the Purchaser pursuant to the terms of the Asset Purchase Agreement), through one or more of its Affiliates, shall enter into the Transition Services Agreement with the Distribution Trust for a period of 180 days (or such lesser time as determined by the Distribution Trust). The compensation charged by the Plan Sponsor or its Affiliates under the Transition Services Agreement shall be $1,500,000 in the aggregate for such 180-day period. Thereafter, the Distribution Trust shall have the option, in its sole discretion, to extend the provision of transition services for an additional 60 days, in 30 day increments, subject to the terms and conditions set forth in the Transition Services Agreement or as otherwise agreed to by the parties.

The Plan Sponsor (or following the Plan Sponsor Election, the Purchaser pursuant to the terms of the Asset Purchase Agreement), shall (i) fund, in Cash, on the Effective Date, the Tort Claims Cash Amount (which, if there is a closing under the Asset Purchase Agreement, shall be funded out of the Purchase Price (as defined in the Asset Purchase Agreement)); and (ii) provide services, through one or more of the Plan Sponsor's or the Purchaser's Affiliates, necessary to administer the Tort Claims Trust (other than those costs required to litigate the Tort Claims, including costs and expenses related to expert witnesses, estimation hearings, or trial, which shall be paid from the corpus of the Tort Claimants Trust) at no cost to the Debtors' estates, the Distribution Trust or the Tort Claimants Trust.

The Plan Sponsor (or following the Plan Sponsor Election, the Purchaser pursuant to the terms of the Asset Purchase Agreement), shall either (i) assume the executory contracts of the Plan Sponsor Affiliates (including, without limitation, Health Care Navigator LLC, Halcyon Rehabilitation, LLC and HMS Purchasing, LLC) and pay the applicable cure amounts associated therewith; or (ii) cause such Plan Sponsor Affiliates to waive their respective rights to receive any distribution on account of such claims from the General Unsecured Claims Cash Amount.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be rejected by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts and Unexpired Leases that:

(i)      have been assumed by the Debtors by prior order of the Bankruptcy Court, including (i) those Executory Contracts and Unexpired Leases that have been, or are contemplated to be, assumed and assigned pursuant to the 9019 Settlement Order and the Transfer Portfolio;

(ii)     are associated with one or more of the Facilities comprising the Transfer Portfolio that have not yet been transferred to New Operators pursuant to the 9019 Settlement Order, Operations Transfer Agreements and related documentation;

(iii)    are the subject of a motion to assume by the Debtors (with the consent of the Plan Sponsor) pending on the Effective Date;

(iv)    are identified by the Debtors (with the written consent of the Plan Sponsor) on Plan Schedule 3 hereto or in the Plan Supplement, in either case which Plan Schedule may be amended by the Debtors (with the written consent of the Plan Sponsor) to add or remove Executory Contracts and Unexpired Leases by filing with the Bankruptcy Court an amended Plan Schedule and serving it on the affected non-Debtor contract parties any time prior to the Effective Date; or

(v)     are assumed or assumed and assigned by the Debtors (with the written consent of the Plan Sponsor or the Purchaser, as applicable) pursuant to the terms of this Plan, the Asset Purchase Agreement, or the Sale Order.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions or rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

To the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to this Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's or any Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the Confirmation or Consummation of this Plan, then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

Each Executory Contract and Unexpired Lease assumed and/or assigned pursuant to this Plan shall revest in and be fully enforceable by the applicable Reorganized Debtor or the applicable assignee in

accordance with its terms and conditions, except as modified by the provisions of this Plan, any order of the Bankruptcy Court approving its assumption and/or assignment, or applicable law.

The inclusion or exclusion of a contract or lease on any schedule or exhibit shall not constitute an admission by any Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

### B. *Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases*

Any defaults under each Executory Contract and Unexpired Lease to be assumed, or assumed and assigned, pursuant to this Plan shall be satisfied by the Plan Sponsor, pursuant to and to the extent required by section 365(b)(1) of the Bankruptcy Code, by payment of the applicable default amount in Cash on the Effective Date or on such other terms as the Bankruptcy Court may order or the parties to such Executory Contracts or Unexpired Leases may otherwise agree in writing (the "**Cure Claim Amount**").

In the event of an assumption, or an assumption and assignment, of an Executory Contract or Unexpired Lease under this Plan, at least seven (7) days prior to the Plan Objection Deadline, the Debtors shall File and serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice (each, an "**Assumption Notice**") of the proposed assumption, or proposed assumption and assignment, which will: (a) list the applicable Cure Claim Amount, if any; (b) if applicable, identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court. The Filing and service of any such Assumption Notice shall not obligate the Debtors to assume or assume and assign any Executory Contract or Unexpired Lease set forth in such Assumption Notice.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption, or proposed assumption and assignment under this Plan, or any related cure amount, must be Filed, served and actually received by the Debtors and the Plan Sponsor on or prior to the later of (i) the Plan Objection Deadline or (ii) seven (7) days after the filing and service of an Assumption Notice that first identifies such Executory Contract or Unexpired Lease. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, or proposed assumption and assignment, or cure amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and cure amount. The Confirmation Order shall constitute an order of the Bankruptcy Court approving each proposed assumption, or proposed assumption and assignment, of Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any Cure Claim Amount, (b) the ability of any Debtor or assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or assumed and assigned or (c) any other matter pertaining to assumption or assignment, the applicable payment of the Cure Claim Amount required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving such assumption, or assumption and assignment. If such objection is sustained by Final Order of the Bankruptcy Court, the Plan Sponsor may elect the Debtors to reject such Executory Contract or Unexpired Lease in lieu of assuming it. The Debtors (with the consent of the Plan Sponsor) or the Reorganized Debtors, as applicable, shall be authorized to effect such rejection by filing a written notice of rejection with the Bankruptcy Court and serving such notice on the applicable counterparty within thirty (30) days of the entry of such Final Order.

Subject to any cure claims Filed with respect thereto, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to this Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned by Final Order shall be deemed disallowed and expunged (subject to any cure claims Filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

With respect to any Executory Contract or Unexpired Lease assumed and assigned pursuant to this Plan, upon and as of the Effective Date, the Plan Sponsor or its assignee shall be deemed to be substituted as a party thereto for the applicable Debtor party to such assigned Executory Contract or Unexpired Lease and, accordingly, the Debtors and the Reorganized Debtors shall be relieved, pursuant to and to the extent set forth in section 365(k) of the Bankruptcy Code, from any further liability under such assigned Executory Contract or Unexpired Lease.

C.      *Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise identified under Article VI.A or otherwise, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections described in this <u>Article VI</u> pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of any preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases.

D.      *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Distribution Trust, the Debtors, the Reorganized Debtors, or the Estates, and the Distribution Trust, the Debtors, the Reorganized Debtors, and their Estates and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in <u>Article XG</u> hereof.

E.      *Extension of Time to Assume or Reject*

Notwithstanding anything to the contrary set forth in <u>Article VI</u> of this Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the right of the Reorganized Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired. The deemed assumption provided for in <u>Article VI.A</u> of this Plan shall not apply to

any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Reorganized Debtors or the filing of a notice following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed by the Debtors or the Reorganized Debtors pursuant to this Plan shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.      *Insurance Policies*

Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, unless specifically rejected by order of the Bankruptcy Court or under the Plan, all Insurance Policies shall be assumed under the Plan as executory contracts, and nothing in the Plan or the Confirmation Order shall alter the rights and obligations of the Debtors or the insurers under the Insurance Policies (which rights and obligations shall be determined under the applicable Insurance Policies and applicable non-bankruptcy law relating thereto) or modify the coverage thereunder, and all of the Insurance Policies shall continue in full force and effect according to their terms and conditions; provided, however, in the event the underlying claim arose prior to the Petition Date, the Reorganized Debtors shall have no obligation to fund any self-insured retention.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided in the "Treatment" sections in Article III hereof or as ordered by the Bankruptcy Court, initial distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Initial Distribution Date or as soon thereafter as is practicable. Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day. Distributions on account of Disputed Claims that first become Allowed Claims after the Effective Date shall be made pursuant to Article VIII hereof.

B.    *No Postpetition Interest, Fees, and Costs on Claims*

Unless otherwise specifically provided for in this Plan, the Confirmation Order or Final Order of the Bankruptcy Court, or required by applicable bankruptcy law (including, without limitation, as required pursuant to section 506(b) or section 511 of the Bankruptcy Code), postpetition interest, fees (including attorneys' fees), costs or charges shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

C.    *Distributions by the Distribution Trust, the Tort Claimants Trust or Other Applicable Distribution Agent*

Other than as specifically set forth below, the Distribution Trust, Tort Claimants Trust or other applicable Distribution Agent shall make all distributions required to be distributed under this Plan. The Distribution Trust and Tort Claimants Trust may employ or contract with other entities to assist in or make the distributions required by this Plan and may pay the reasonable fees and expenses of such entities and the Distribution Agents in the ordinary course of business. No Distribution Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

From and after the Effective Date, any Distribution Agent, solely in its capacity as Distribution Agent, shall be exculpated by all Persons and Entities, including, without limitation, Holders of Claims and Equity Interests and other parties in interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Distribution Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the Distribution Agent's gross negligence, willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts. No Holder of a Claim or Equity Interest or other party in interest shall have or pursue any claim or Cause of Action against a Distribution Agent, solely in its capacity as Distribution Agent, for making payments in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of such Distribution Agent's gross negligence, willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts.

D.    *Delivery and Distributions; Undeliverable or Unclaimed Distributions*

1.    Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed. Accordingly, the Debtors, the Distribution Trust, the Tort Claimants Trust or other applicable Distribution Agent will have no obligation to recognize the assignment, transfer or other disposition of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute securities, property, notices and other documents only to those Holders of Allowed Claims who are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. The Distribution Trust, the Tort Claimants Trust or other applicable Distribution Agent shall be entitled to recognize and deal for all purposes under this Plan with only those record holders stated on the Claims Register, or their books and records, as of the close of business on the Distribution Record Date.

2.    Delivery of Distributions in General

Except as otherwise provided herein, the Debtors, the Distribution Trust, the Tort Claimants Trust or other applicable Distribution Agent, as applicable, shall make distributions to Holders of Allowed

Claims, or in care of their authorized agents, as appropriate, at the address for each such Holder or agent as indicated on the Debtors' or other applicable Distribution Agent's books and records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined in the discretion of the applicable Distribution Agent; provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in the latest Proof of Claim Filed by such Holder pursuant to Bankruptcy Rule 3001 as of the Distribution Record Date.

3.     <u>Minimum Distributions</u>

Notwithstanding anything herein to the contrary, no Distribution Agent shall be required to make distributions or payments of less than $25.00 (whether in Cash or otherwise) or to make partial distributions or payments of fractions of dollars with respect to Impaired Claims. With respect to Impaired Claims, whenever any payment or distribution of a fraction of a dollar under this Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or more being rounded up to the next higher whole number and with less than half dollars being rounded down to the next lower whole number.

No Distribution Agent shall have any obligation to make a distribution on account of an Allowed Claim that is Impaired under this Plan if: (a) the aggregate amount of all distributions authorized to be made on the Subsequent Distribution Date in question is or has an economic value less than $25,000.00, unless such distribution is a final distribution; or (b) the amount to be distributed to the specific Holder of an Allowed Claim on such Subsequent Distribution Date is or has an economic value less than $25.00, which shall be treated as an undeliverable distribution under Article VIID.4 below.

4.     <u>Undeliverable Distributions</u>

(a)     Holding of Certain Undeliverable Distributions

If the distribution to any Holder of an Allowed Claim is returned to the Distribution Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Distribution Agent is notified in writing of such Holder's then current address, at which time all currently due but missed distributions shall be made to such Holder on the next Subsequent Distribution Date (or such earlier date as determined by the applicable Distribution Agent). Undeliverable distributions shall remain in the possession of the Distribution Trust or the Tort Claimants Trust (as applicable), subject to Article VIID.4(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution being undeliverable.

(b)     Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim (or any successor or assignee or other Person or Entity claiming by, through, or on behalf of, such Holder) that does not assert a right pursuant to this Plan for an undeliverable or unclaimed distribution within one (1) year after the later of the Effective Date or the date such distribution is due shall be deemed to have forfeited its rights for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such rights for an undeliverable or unclaimed distribution against the Debtors or their Estates, the Reorganized Debtors or their respective assets or property, or any Distribution Agent. In such case, (i) for Claims in Class 1, any Cash, Plan Securities, or other property reserved for distribution on account of such Claim shall become the property of the Estates free and clear of any Claims of such Holder with respect thereto and notwithstanding any federal or state escheat laws to the contrary, and (ii) for Claims other than in Class 1, any Cash, Plan Securities and Documents, and/or other property, as applicable, held for distribution on account of such

Claim shall be allocated Pro Rata by the applicable Distribution Agent for distribution among the other Holders of Claims in such Class. Nothing contained in this Plan shall require the Debtors, the Reorganized Debtors, or any Distribution Agent to attempt to locate any Holder of an Allowed Claim.

(c)     Failure to Present Checks

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, no later than 90 days after the issuance of such checks, the Distribution Trust or Tort Claimants Trust (as applicable) shall File with the Bankruptcy Court a list of the Holders of any un-negotiated checks. This list shall be maintained and updated periodically in the sole discretion of the Distribution Trust or Tort Claimants Trust (as applicable), for as long as the Chapter 11 Cases stay open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 365 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be forever barred, estopped and enjoined from asserting any such Claim against the Distribution Trust, the Tort Claimants Trust, the Debtors or their Estates, the Reorganized Debtors or their respective assets or property. In such case, any Cash held for payment on account of such Claims shall be distributed to the applicable Distribution Agent for distribution or allocation in accordance with this Plan, free and clear of any Claims of such Holder with respect thereto and notwithstanding any federal or state escheat laws to the contrary.

E.     *Compliance with Tax Requirements*

In connection with this Plan and all distributions hereunder, the Distribution Trust, the Tort Claimants Trust, or other applicable Distribution Agent shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Distribution Trust, the Tort Claimants Trust or other applicable Distribution Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes, and each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

F.     *Allocation of Plan Distributions Between Principal and Interest*

To the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for income tax purposes to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

G.     *Means of Cash Payment*

Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option of the Debtors, the Distribution Trust or the Tort Claimants Trust (as applicable), by checks drawn on, or wire transfer from, a domestic bank selected by the Debtors, the Distribution Trust or the Tort Claimants Trust (as applicable). Cash payments to foreign creditors may be made, at the option of the

Debtors, the Distribution Trust or the Tort Claimants Trust (as applicable), in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

H. *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the "Treatment" sections in Article III hereof or as ordered by the Bankruptcy Court, on the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the Subsequent Distribution Date occurring after such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable Class. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the applicable class treatment or in Article VIII hereof. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

I. *Setoffs*

Without altering or limiting any of the rights and remedies of the Debtors, the Distribution Trust and the Tort Claimants Trust under section 502(d) of the Bankruptcy Code, all of which rights and remedies are hereby reserved, the Debtors, the Distribution Trust and the Tort Claimants Trust may, but shall not be required to, withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, Causes of Action of any nature that the Debtors, the Reorganized Debtors or the Distribution Agent may hold against the Holder of any such Allowed Claim; provided that, at least ten (10) days prior to effectuating such withholding, the Debtors, the Distribution Trust (after consultation with Omega) or the Tort Claimants Trust, shall provide written notice thereof to the applicable Holder of such Claim, and all objections and defenses of such Holder to such withholding are preserved. In the event that any such claims or Causes of Action are adjudicated by Final Order or otherwise resolved against the applicable Holder, the Debtors, the Distribution Trust and the Tort Claimants Trust may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of such adjudicated or resolved claims or Causes of Action, and pursuant to section 558 of the Bankruptcy Code, to the extent any Holder of an Allowed Claim holds (i) an Allowed Claim that is an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, or an Administrative Claim, and also (ii) an Allowed Claim that is a General Unsecured Claim or Tort Claim, any rights of setoff shall be exercised first against such Holders' Other Secured Claim, Priority Tax Claim, Other Priority Claim, or Administrative Claim. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Distribution Trust or the Tort Claimants Trust of any such claims or Causes of Action, all of which are reserved unless expressly released or compromised pursuant to this Plan or the Confirmation Order.

# ARTICLE VIII

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A. *Resolution of Disputed Claims*

1. <u>Allowance of Claims</u>

After the Effective Date, and except as otherwise provided in this Plan, the Distribution Trust and the Tort Claimants Trust shall have and shall retain any and all available rights and defenses that the Debtors had with respect to any Claim, including, without limitation, the right to assert any objection to Claims based on the limitations imposed by section 502 of the Bankruptcy Code.  The Debtors, the Distribution Trust and the Tort Claimants Trust may contest the amount and validity of any Disputed Claim or contingent or unliquidated Claim in the ordinary course of business in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced.

2.      Prosecution of Objections to Claims

After the Confirmation Date but before the Effective Date, the Debtors, and after the Effective Date, the Distribution Trust and the Tort Claimants Trust shall have the authority to File objections to Claims (other than Claims that are Allowed under this Plan) and settle, compromise, withdraw or litigate to judgment objections to any and all such Claims, regardless of whether such Claims are in an Unimpaired Class or otherwise; provided, however, this provision shall not apply to Professional Fee Claims, which may be objected to by any party-in-interest in these Chapter 11 Cases.  From and after the Effective Date, the Distribution Trust and the Tort Claimants Trust may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.  The Distribution Trust and the Tort Claimants Trust shall have the sole authority to administer and adjust the Claims Register and their respective books and records to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

3.      Claims Estimation

After the Confirmation Date but before the Effective Date, the Debtors, and after the Effective Date, the Distribution Trust and the Tort Claimants Trust may at any time request that the Bankruptcy Court estimate any Disputed Claim or contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, whether for allowance or to determine the maximum amount of such Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties are reserved in connection with any such estimation.

4.      Deadline to File Objections to Claims

Any objections to Claims shall be Filed by no later than the Claims Objection Deadline; provided that nothing contained herein shall limit the Distribution Trust's or the Tort Claimants Trust right to object to Claims, if any, Filed or amended after the Claims Objection Deadline.  Moreover, notwithstanding the expiration of the Claims Objection Deadline, the Distribution Trust and the Tort Claimants Trust shall continue to have the right to amend any claims or other objections and to File and prosecute supplemental objections and counterclaims to a Disputed Claim until such Disputed Claim is or becomes Allowed by Final Order of the Bankruptcy Court.

5.      Limited Amendments to Claims After the Effective Date Absent Bankruptcy Court Order

After the Effective Date, no Holder of a Claim may amend its Claim (except to decrease the amount of the Claim) absent an order of the Bankruptcy Court finding good cause for such amendment,

and any amended Claim submitted in the absence of such order may be disregarded by the Distribution Trust and the Tort Claimants Trust.

B.      *No Distributions Pending Allowance*

Notwithstanding any other provision of this Plan to the contrary, no payments or distributions of any kind or nature shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim has become an Allowed Claim pursuant to a Final Order.

C.      *Distributions on Account of Disputed Claims Once They Are Allowed and Additional Distributions on Account of Previously Allowed Claims*

On each Subsequent Distribution Date (or such earlier date as determined by the Reorganized Debtors in their sole discretion), the Distribution Trust, the Tort Claimants Trust or other applicable Distribution Agent will make distributions (a) on account of any Disputed Claim that has become an Allowed Claim during the preceding calendar quarter, and (b) on account of previously Allowed Claims of property that would have been distributed to the Holders of such Claim on the dates distributions previously were made to Holders of Allowed Claims in such Class had the Disputed Claims that have become Allowed Claims or Disallowed Claims by Final Order of the Bankruptcy Court been Allowed or disallowed, as applicable, on such dates.  Such distributions will be made pursuant to the applicable provisions of <u>Article VII</u> of this Plan.  For the avoidance of doubt, but without limiting the terms or conditions of <u>Article VII.B</u> or Paragraph B of this <u>Article VIII</u>, any dividends or other distributions arising from property distributed to holders of Allowed Claims in a Class and paid to such Holders under this Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to holders of Allowed Claims in such Class.

D.      *Reserve for Disputed Claims*

The Debtors or the Distribution Trust, as applicable, after consultation with Omega, may, in their respective discretion, establish such appropriate reserves for Disputed Claims in the applicable Class(es) as they determine necessary and appropriate.  Without limiting the foregoing, reserves (if any) for Disputed Claims shall equal, as applicable, an amount of Cash equal to 100% of distributions to which Holders of Disputed Claims in each applicable Class would otherwise be entitled under this Plan as of such date if such Disputed Claims were Allowed Claims in their respective Face Amount (or based on the Debtors' books and records if the applicable Holder has not yet Filed a Proof of Claim and the Claims Bar Date has not yet expired); <u>provided</u>, however, that the Debtors and the Distribution Trust, as applicable, shall have the right to file a motion seeking to estimate any Disputed Claims.

E.      *Tort Claims*

The automatic stay of Bankruptcy Code section 362(a) shall remain in effect on and after the Effective Date unless and until the holder of a Claim that is in the nature of an unliquidated Tort Claim arising under personal liability, general liability or tort theory complies with all of the following procedures: (A) the Debtors or the Tort Claimants Trust (as applicable) shall, within sixty (60) days following the Effective Date (which such date may be extended by further order of the Bankruptcy Court) submit to such holder of a filed Tort Claim either (i) a request for additional documentation to be provided to evidence such Claim or (ii) submit a written counterproposal for an Allowed Tort Claim to such holder; (B) the holder of such Tort Claim may accept the counterproposal within thirty (30) days of the mailing of such counterproposal and, in the event that a counterproposal is rejected by such claimant,

the claimant (or a representative or attorney for the claimant) and the Debtors or the Tort Claimants Trust (as applicable) shall confer and negotiate in good faith in an attempt to agree upon an Allowed Tort Claim amount; (C) if no settlement is reached pursuant to paragraphs (A) and (B), above, the Debtors or the Tort Claimants Trust (as applicable) and the claimant shall participate in a nonbinding mediation process before the Bankruptcy Court or may otherwise agree to submit the Claim to binding arbitration under the rules of the American Arbitration Association as to the issues of the Debtors' liability and the amount of such Allowed Tort Claim. Solely in the event that the foregoing procedures have been complied with and the parties are unable to reach an agreement on the allowance and amount of such Claim, the automatic stay under section 362(a) of the Bankruptcy Code and the injunction set forth in Article X.G of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit a limited lifting of the automatic stay for the sole purpose of liquidating the amount of any such Claim or, in the alternative, the Debtors or the Tort Claimants Trust (as applicable) may file an objection to such Claim and a motion to withdraw the reference of such Claim pursuant to 28 U.S.C. § 157, and thereafter to disallow, liquidate or estimate such Claim.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

*A.      Conditions Precedent to Confirmation*

It shall be a condition to Confirmation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IXC hereof:

1.      This Plan and the Restructuring Documents shall be in form and substance reasonably acceptable to the Debtors, Omega and the Plan Sponsor;

2.      There shall be no default or Event of Default (as defined in the DIP Orders) under the DIP Orders or the DIP Facility Loan Agreement; and

3.      The Confirmation Order shall have been entered by the Bankruptcy Court.

*B.      Conditions Precedent to Consummation*

It shall be a condition to Consummation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IXC hereof.

1.      The Confirmation Order shall have become a Final Order and such order shall not have been amended, modified, vacated, stayed, or reversed;

2.      The Confirmation Date shall have occurred;

3.      The Bankruptcy Court shall have entered one or more Final Orders (which may include the Confirmation Order), in form and substance acceptable to the Debtors, Omega and the Plan Sponsor, authorizing the assumption, or, if applicable, assumption and assignment of the Executory Contracts and Unexpired Leases by the Debtors as contemplated in this Plan and the Plan Supplement that are necessary for the Reorganized Debtors to operate the business of the Debtors (other than those Executory Contracts and Unexpired Leases otherwise assumed and assigned pursuant to the 9019 Settlement Order and the Transfer Portfolio);

4.      This Plan and the Restructuring Documents shall not have been amended or modified other than in a manner reasonably acceptable to the Debtors, Omega and the Plan Sponsor;

5.      The Restructuring Documents shall have been filed, tendered for delivery, and been effectuated or executed by all Persons party thereto (as appropriate), and in each case in full force and effect.  All conditions precedent to the effectiveness of such Restructuring Documents shall have been satisfied or waived pursuant to the terms of such applicable Restructuring Documents (or shall be satisfied concurrently with the occurrence of the Effective Date);

6.      All consents, actions, documents, certificates and agreements necessary to implement this Plan and the transactions contemplated by this Plan (including, without limitation, all governmental, regulatory, environmental and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents) shall have been, as applicable, obtained and not otherwise subject to unfulfilled conditions, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws, and in each case in full force and effect;

7.      All governmental approvals and consents, including Bankruptcy Court approval, that are applicable and legally required for the consummation of this Plan shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, shall have expired;

8.      The New Board shall have been selected;

9.      The conditions to the effectiveness of the Plan Sponsor Note shall have been satisfied or waived and the Plan Sponsor Note shall have been executed and delivered to Omega or will be executed and delivered to Omega simultaneously with the effectiveness of this Plan;

10.      The Plan Sponsor Consideration shall have been paid or shall be paid contemporaneously with the occurrence of the Effective Date, and the General Unsecured Claims Cash Amount shall have been reserved from such amount;

11.      The Exit Facility Documents (a) shall be in form and substance reasonably acceptable to (i) the Debtors, (ii) the Plan Sponsor and (iii) Omega and (b) either (i) shall be in full force and effect or (ii) shall become in full force and effect simultaneously with the effectiveness of the Plan; and

12.      The 9019 Settlement Order shall have been entered, and the closing of the Transfer Transaction shall have occurred or otherwise the Confirmation Order shall authorize such transfers, and that the Distribution Trust shall assume all obligations of the Debtors under the Operations Transfer Agreements relating to any Facility in the Transfer Portfolio not transitioned by the Effective Date (subject to such assistance that may be required of the Reorganized Debtors under this Plan to assist in such transition).

## C.      *Waiver of Conditions*

Subject to section 1127 of the Bankruptcy Code, the conditions to Confirmation and Consummation of this Plan set forth in this <u>Article IX</u> that are capable of being waived may be waived by the Debtors, with the consent of Omega and Plan Sponsor, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan.  The failure of any of the foregoing parties to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right shall be deemed an ongoing right that may be asserted at any time.

D.    *Effect of Non-Occurrence of Conditions to Confirmation or Consummation*

If the Confirmation or the Consummation of this Plan does not occur with respect to one or more of the Debtors, then this Plan shall, with respect to such applicable Debtor or Debtors, be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (3) constitute an Allowance of any Claim or Equity Interest; or (4) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

## ARTICLE X

## RELEASE, DISCHARGE, INJUNCTION AND RELATED PROVISIONS

A.    *General*

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to this Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtors, their Estates, and any Holders of Claims and Equity Interests and is fair, equitable and reasonable.

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; provided, however, that nothing contained herein shall preclude any Person or Entity from exercising their rights pursuant to and consistent with the terms of this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan.

Notwithstanding anything contained to the contrary herein, nothing in this Article X shall be deemed to release, discharge or enjoin the enforcement of any obligations of any Person or Entity under the Plan Sponsor Note or any other agreement entered into on or after the Effective Date.

B.    *Release of Claims and Causes of Action*

1.    ***Release by the Debtors and Their Estates***.  **Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly provided in this Plan, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, the Debtors and the Reorganized Debtors, in their respective individual capacities and as debtors-in-possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the**

Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code (collectively, the "**Debtor Releasing Parties**") will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Debtor Releasing Parties) and their respective assets and properties (the "**Debtor Release**") from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of (i) the Debtors, the Chapter 11 Cases, the marketing of any of the Debtors' assets, the Disclosure Statement, this Plan and the Restructuring Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, including, but not limited to, the Master Leases and the Omega Working Capital Loan Agreement, (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Restructuring Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Claim or Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of this Plan or the solicitation of votes on this Plan that such Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Reorganized Debtor (whether directly or derivatively) against any of the Released Parties; **provided, however**, that the foregoing provisions of this Debtor Release shall not operate to waive, release or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction and/or (ii) the rights of such Debtor Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Bankruptcy Court.

The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Debtor Release. Notwithstanding the foregoing, nothing in this **Article X.B** shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, unless otherwise expressly provided for in this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims

released by the Debtor Release; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

2. *Release by Third Parties*. **Except as otherwise expressly provided in this Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, each Non-Debtor Releasing Party (together with the Debtor Releasing Parties, the "Releasing Parties") will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Non-Debtor Releasing Parties) and their respective assets and properties (the "Third Party Release") from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of (i) the Debtors, the Chapter 11 Cases, the Disclosure Statement, this Plan and the Restructuring Documents, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, including, but not limited to, the Master Leases, (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Restructuring Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Equity Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale or rescission of the purchase or sale of any Claim or Equity Interest of the Debtors or the Reorganized Debtors, and/or (vii) the Confirmation or Consummation of this Plan or the solicitation of votes on this Plan that such Non-Debtor Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties; provided, however, that the foregoing provisions of this Third Party Release shall not operate to waive, release or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) any of the indebtedness and obligations of the Debtors and/or the Reorganized Debtors under this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Bankruptcy Court; (iii) the rights of such Non-Debtor Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Bankruptcy Court; and/or (iv) any objections with respect to any Professional's final fee application or accrued Professional Fee Claims in these Chapter 11 Cases.**

**The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Third Party Release.**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the **Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Equity Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.**

C.      *Waiver of Statutory Limitations on Releases*

Each of the Releasing Parties in each of the releases contained above expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the released party. The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

D.      *Discharge of Claims and Equity Interests*

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, effective as of the Effective Date, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Equity Interests and Causes of Action of any kind or nature whatsoever against the Debtors or any of their respective assets or properties, including any interest accrued on such Claims or Equity Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed or retained pursuant to this Plan on account of such Claims, Equity Interests or Causes of Action.

Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim.

Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date: (i) the rights afforded herein and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their respective assets, property, or Estates; (ii) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and each of the Debtor's liability with respect thereto shall be extinguished completely without further notice or action; and (iii) all Entities shall

be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, each of their respective successors and assigns, and each of their respective assets and properties, any such Claims or Equity Interests, whether based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or otherwise.

E.      *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Entity for any claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or Consummation of this Plan, the Disclosure Statement, the Restructuring Documents or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan or any other postpetition act taken or omitted to be taken in connection with the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or Consummation of this Plan; *provided*, *however*, that the foregoing provisions of this exculpation shall not operate to waive, release or otherwise impair: (i) any Causes of Action expressly set forth in and preserved by this Plan or the Plan Supplement; (ii) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (iii) any of the indebtedness or obligations of the Debtors and/or the Reorganized Debtors under this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Bankruptcy Court, (iv) the rights of any Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Bankruptcy Court; and/or (v) any objections with respect to any Professional's final fee application or accrued Professional Fee Claims in these Chapter 11 Cases; *provided*, underline_further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this Article X.E shall or shall be deemed to prohibit the Debtors or the Reorganized Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors or the Reorganized Debtors, in each case unless otherwise expressly provided for in this Plan.

F.      *Preservation of Causes of Action*

1.      Maintenance of Causes of Action

Except as otherwise provided in this Article X or elsewhere in this Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtors shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases; *provided*, *however*, that the foregoing shall not be deemed to include any other claims or Causes of Action (i) released pursuant to Article X.B.1 hereof or (ii) exculpated pursuant to Article X.E hereof to the extent of any such exculpation.  The Reorganized Debtors, as the successors-in-interest to the Debtors and the Estates, may, and shall have the exclusive right to, enforce, sue on,

settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of such Causes of Action, in each case solely to the extent of the Debtors' or their Estates' interest therein, without notice to or approval from the Bankruptcy Court.

      2.    <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>

The Debtors expressly reserve all Causes of Action for later adjudication by the Debtors or the Reorganized Debtors (including, without limitation, Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the Confirmation or Consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except in each case where such Causes of Action have been expressly waived, relinquished, released, compromised or settled in this Plan, the Confirmation Order or any other Final Order, including, without limitation or any other claims or Causes of Action (i) released pursuant to Article X.B.1 hereof or (ii) exculpated pursuant to Article X.E hereof to the extent of any such exculpation. In addition, the Debtors and the Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any of the Debtors are a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

G.    *Injunction*

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

H.    *Binding Nature of the Plan*

**ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THIS PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTORS, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY**

**INTERESTS IN THE DEBTORS, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THIS PLAN, EACH PERSON ACQUIRING PROPERTY UNDER THIS PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THIS PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN, AFFIRMATIVELY VOTED TO REJECT THIS PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THIS PLAN.**

I.      *Protection Against Discriminatory Treatment*

To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons and Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against the Reorganized Debtors, or another Person or Entity with whom the Reorganized Debtors have been associated, solely because any Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Integral Part of Plan*

Each of the provisions set forth in this Plan with respect to the settlement, release, discharge, exculpation, and injunction of, for or with respect to Claims and/or Causes of Action are an integral part of this Plan and essential to its implementation. Accordingly, each Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

K.      *Confidentiality of Information Related to Patient Care Ombudswoman*

Except as otherwise ordered by the Bankruptcy Court, no Person or Entity may seek discovery in any form, including but not limited to, by motion, subpoena, notice of deposition or request or demand for production of documents, from the Patient Care Ombudswoman or her agents, professionals, employees, other representatives, designees, or assigns with respect to matters arising from or relating to the performance of the duties of the Patient Care Ombudswoman in the Chapter 11 Cases, including, but not limited to, pleadings, reports, or other writings filed by the Patient Care Ombudswoman in or in connection with the Chapter 11 Cases. Nothing herein shall, in any way, limit or otherwise affect the rights and obligations of the Patient Care Ombudswoman under any order of the Bankruptcy Court or under any confidentiality agreements, if any, between the Patient Care Ombudswoman and any other Person or Entity or shall, in any way, limit or otherwise affect the Patient Care Ombudswoman's obligation, under section 333(c)(1) of the Bankruptcy Code or other applicable law, to maintain patient information, including patient records, as confidential, and no such information shall be released by the Patient Care Ombudswoman without further order of the Bankruptcy Court. The Patient Care Ombudswoman and any Professional Person retained by the Patient Care Ombudswoman shall retain the right to apply for further compensation pursuant to section 330 of the Bankruptcy Code if,

notwithstanding the foregoing, they are required to respond to discovery or become a party to litigation, and parties in interest shall retain the right to object to any such application or applications.

L.      *Preservation of Privilege and Defenses*

No action taken by the Debtors or Reorganized Debtors in connection with this Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtors or Reorganized Debtors, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral). The Confirmation Order shall provide that, notwithstanding the Reorganized Debtors' providing any privileged information to the Distribution Trust or any party or person associated with the Distribution Trust, such privileged information shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged. The Debtors (or the Reorganized Debtors) retain the right to waive their own privileges. The Distribution Trust shall have no right to any privileged information or analysis of the Debtors or the Reorganized Debtors.

# ARTICLE XI

# RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as legally permissible, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any such Claim or Equity Interest;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; provided, however, that, from and after the Effective Date, the Reorganized Debtors shall pay Professionals in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to this Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected (as applicable);

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

6.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective

Date or instituted by the Reorganized Debtors after the Effective Date, _provided_, _however_ that the Reorganized Debtors shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

8.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

9.      hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future, except for those claims or Causes of Action (i) released pursuant to Article X.B.1 hereof or (ii) exculpated pursuant to Article X.E hereof to the extent of any such exculpation;

10.     issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan;

11.     enforce the terms and conditions of this Plan, the Confirmation Order, and the Restructuring Documents;

12.     enforce the 9019 Settlement Order and/or any agreements or other documents entered into in connection with the Transfer Portfolio;

13.     resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, and any other provisions contained in Article X hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

14.     enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

15.     resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with this Plan; and

16.     enter one or more final decrees closing the Chapter 11 Cases.

Notwithstanding the foregoing, if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article of the Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

A.      _Substantial Consummation_

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**B.**     *Payment of Statutory Fees; Post-Effective Date Fees and Expenses*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee. Except as provided in Article V.A herein, each Debtor shall remain obligated to pay quarterly fees to the United States Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

The Reorganized Debtors shall pay the liabilities and charges that they incur on or after the Effective Date for Professionals' fees, disbursements, expenses, or related support services (including reasonable fees, costs and expenses incurred by Professionals relating to the preparation of interim and final fee applications and obtaining Bankruptcy Court approval thereof) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court, including, without limitation, the reasonable fees, expenses, and disbursements of the Distribution Agents and the fees, costs and expenses incurred by Professionals in connection with the implementation, enforcement and Consummation of this Plan and the Restructuring Documents.

**C.**     *Conflicts*

In the event that a provision of the Restructuring Documents or the Disclosure Statement (including any and all exhibits and attachments thereto) conflicts with a provision of this Plan or the Confirmation Order, the provision of this Plan and the Confirmation Order (as applicable) shall govern and control to the extent of such conflict. In the event that a provision of this Plan conflicts with a provision of the Confirmation Order, the provision of the Confirmation Order shall govern and control to the extent of such conflict. In the event that a provision of the Debtors' Schedules, including the "Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs" contained therein, conflicts with a provision of this Plan or the Confirmation Order, the provision of this Plan or the Confirmation Order (as applicable) shall govern and control to the extent of such conflict.

**D.**     *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) prior to the entry of the Confirmation Order, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order in accordance with section 1127(a) of the Bankruptcy Code; and (b) after the entry of the Confirmation Order, (i) prior to the Effective Date, the Debtors or (ii) on or after the Effective Date, the Reorganized Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan in a way that is acceptable to the Plan Sponsor, in accordance with section 1127(b) of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

**E.**     *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date and/or to File subsequent chapter 11 plans, with respect to one or more of the Debtors. If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation of this Plan does not occur with respect to one or more of the Debtors, then with respect to the applicable Debtor or Debtors for which this Plan was revoked or withdrawn or for which Confirmation or Consummation of this Plan did not occur: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the applicable Debtors or any other Entity; (b) prejudice in any manner the rights of the applicable Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the applicable Debtors or any other Entity.

F.      *Successors and Assigns*

This Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all present and former Holders of Claims and Equity Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

G.      *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

H.      *Further Assurances*

The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

I.      *Severability*

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

J.      *Service of Documents*

Any notice, direction or other communication given regarding the matters contemplated by this Plan (each, a "**Notice**") must be in writing, sent by personal delivery, electronic mail, or courier and addressed as follows:

**If to the Debtors**:

4 West Holdings, Inc.
c/o Ankura Consulting
Attn: Louis Robichaux
15950 Dallas Parkway
Dallas, TX 75248

with a copy to:

DLA Piper LLP (US)
Attn:  Thomas R. Califano (thomas.califano@dlapiper.com)
1251 Avenue of the Americas
New York, NY  10020-1104

**If to Omega**:

Omega Healthcare Investors, Inc.
Attn:  Daniel J. Booth (dbooth@omegahealthcare.com)
303 International Circle
Suite 200
Hunt Valley, MD  21030

with a copy to:

Bryan Cave LLP
Attn:  Rick Miller (rick.miller@bryancave.com)
        Mark Duedall (mark.duedall@bryancave.com)
One Atlantic Center
Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309-3488

**If to the Plan Sponsor**:

SC-GA 2018 Partners, LLC
Attn: Steven Lebowitz
4 West Red Oak Lane, Suite 201
White Plains, NY 10604

with a copy to:

Neligan LLP

Attn: Patrick J. Neligan, Jr. (pneligan@negliganlaw.com)
James P. Muenker (jmuenker@neliganlaw.com)
325 N. St. Paul Street, Suite 3600
Dallas, Texas 75201

A Notice is deemed to be given and received (a) if sent by personal delivery or courier, on the date of delivery if it is a Business Day and the delivery was made prior to 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (b) if sent by electronic mail, when the sender receives an email from the recipient acknowledging receipt, provided that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this Section. Any party may change its address for service from time to time by providing a Notice in accordance with the foregoing. Any element of a party's address that is not specifically changed in a Notice will be assumed not to be changed. Sending a copy of a Notice to a party's legal counsel as contemplated above is for information purposes only and does not constitute delivery of the Notice to that party. The failure to send a copy of a Notice to legal counsel does not invalidate delivery of that Notice to a party.

K.      *Exemption from Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code*

Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with this Plan, the Restructuring Documents to the extent consummated substantially in connection with this Plan, shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States or by any other Governmental Unit, and the Confirmation Order shall direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of, transactions contemplated by and the distributions to be made under this Plan or the Restructuring Documents, (ii) the issuance and distribution of the New Equity Interests or Plan Securities and Documents, and (iii) the maintenance or creation of security interests or any Lien as contemplated by this Plan or the Restructuring Documents.

L.      *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that a Restructuring Document or an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Texas, without giving effect to the principles of conflicts of law of such jurisdiction.

M.      *Tax Reporting and Compliance*

The Reorganized Debtors are hereby authorized, on behalf of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

N.      *Schedules*

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated herein and are a part of this Plan as if set forth in full herein.

O.    *No Strict Construction*

This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the Plan Sponsor, Omega, and their respective professionals. Each of the foregoing was represented by counsel of its choice who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, the Exhibits and the Plan Schedules, and the agreements and documents ancillary or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentem*" or other rule of strict construction shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, the Exhibits or the Plan Schedules, or the documents ancillary and related thereto.

P.    *Entire Agreement*

Except as otherwise provided herein or therein, this Plan and the Restructuring Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan and the Restructuring Documents.

Q.    *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

R.    *2002 Notice Parties*

After the Effective Date, the Debtors and the Reorganized Debtors, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed a renewed request after the Confirmation Hearing to receive documents pursuant to Bankruptcy Rule 2002.

S.    *Dissolution of Committee*

On and as of the Effective Date, the Committee shall dissolve automatically and its members shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases. The Reorganized Debtors shall not be responsible for paying any fees, costs, or expenses incurred by the members, professionals, or advisors to the Committee after the Effective Date, except for such fees, costs, or expenses incurred (and allowed under section 330 of the Bankruptcy Code) in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Article II.A.2; provided, however, that after the Effective Date, any Professional retained by the Committee shall have the right to file and prosecute Professional Fee Claims, including any appeal of any Final Order relating thereto.

T.    *Discharge of Patient Care Ombudswoman*

On and as of the Effective Date, the duties and responsibilities of the Patient Care Ombudswoman shall be terminated, and the Patient Care Ombudswoman shall be discharged from her rights, duties and responsibilities under section 333 of the Bankruptcy Code and shall not be required to file any further reports or perform any additional duties. The Reorganized Debtors shall not be responsible for paying any fees, costs, or expenses incurred by the members, professionals, or advisors to the Committee after the Effective Date, except for such fees, costs or expenses incurred (and allowed under section 330 of the Bankruptcy Code) in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Article II.A.2; provided, however, that after the Effective Date, the Patient Care Ombudswoman and any Professional retained by the Patient Care Ombudswoman shall have the right to file and prosecute Professional Fee Claims, including any appeal of any Final Order relating thereto.

*[remainder of page intentionally left blank]*

Dated: October 23, 2018

DEBTORS:

4 West Holdings, Inc.
4 West Investors, LLC
Aiken RE, LLC
Ambassador Rehabilitation and Healthcare Center, LLC
Anchor Rehabilitation and Healthcare Center of Aiken, LLC
Anderson RE TX, LLC
Anderson RE, LLC
Ark II Real Estate, LLC
Ark III Real Estate, LLC
Ark Mississippi Holding Company, LLC
Ark Real Estate, LLC
Ark South Carolina Holding Company, LLC
Ark Texas Holding Company, LLC
Battle Ground RE, LLC
Brushy Creek Rehabilitation and Healthcare Center, LLC
Bryan RE, LLC
Burleson RE, LLC
Capstone Rehabilitation and Healthcare Center, LLC
Charlottesville Pointe Rehabilitation and Healthcare Center, LLC
Charlottesville RE, LLC
Cleveland RE, LLC
Clinton RE, LLC
Cobblestone Rehabilitation and Healthcare Center, LLC
Collierville RE, LLC
Columbia RE, LLC
Columbia Rehabilitation and Healthcare Center, LLC
Comfort RE, LLC
Connersville RE, LLC
Corinth RE, LLC
Cornerstone Rehabilitation and Healthcare Center, LLC
Crystal Rehabilitation and Healthcare Center, LLC
Delta Rehabilitation and Healthcare Center of Cleveland, LLC
Descending Dove, LLC
Diboll RE, LLC
Easley RE II, LLC
Easley RE, LLC
Edgefield RE, LLC

Farmville RE, LLC
Farmville Rehabilitation and Healthcare Center, LLC
Fleetwood Rehabilitation and Healthcare Center, LLC
Fortress Health & Rehab of Rock Prairie, LLC
Granbury RE, LLC
Great Oaks RE, LLC
Great Oaks Rehabilitation and Healthcare Center, LLC
Greenville RE II, LLC
Greenville RE, LLC
Greenville Rehabilitation and Healthcare Center, LLC
Greenwood RE, LLC
Greer RE, LLC
Greer Rehabilitation and Healthcare Center, LLC
Grenada RE, LLC
Grenada Rehabilitation and Healthcare Center, LLC
Heritage Park Rehabilitation and Healthcare Center, LLC
Hillsville RE, LLC
Hillsville Rehabilitation and Healthcare Center, LLC
Holly Lane Rehabilitation and Healthcare Center, LLC
Holly RE, LLC
Holly Springs RE, LLC
Holly Springs Rehabilitation and Healthcare Center, LLC
Indianola RE, LLC
Indianola Rehabilitation and Healthcare Center, LLC
Italy RE, LLC
Iva RE, LLC
Iva Rehabilitation and Healthcare Center, LLC
Johns Island Rehabilitation and Healthcare Center, LLC
Joy of Bryan, LLC
Lampstand Health & Rehab of Bryan, LLC
Linely Park Rehabilitation and Healthcare Center, LLC
Macon Rehabilitation and Healthcare Center, LLC
Magnified Health & Rehab of Anderson, LLC

Manna Rehabilitation and Healthcare Center, LLC
Marietta RE, LLC
McCormick RE, LLC
McCormick Rehabilitation and Healthcare Center, LLC
Memphis RE, LLC
Midland RE, LLC
Midland Rehabilitation and Healthcare Center, LLC
Moultrie RE, LLC
Mountain View Rehabilitation and Healthcare Center, LLC
Natchez RE, LLC
Natchez Rehabilitation and Healthcare Center, LLC
New Ark Master Tenant, LLC
New Ark Operator Holdings, LLC
New Redeemer Health & Rehab of Pickens, LLC
Olive Leaf Holding Company, LLC
Olive Leaf, LLC
Omega Health & Rehab of Greenville, LLC
Orianna Health Systems, LLC
Orianna Holding Company, LLC
Orianna Investment, Inc.
Orianna SC Operator Holdings, Inc.
Palladium Hospice and Palliative Care, LLC
Patewood Rehabilitation and Healthcare Center, LLC
Picayune RE, LLC
Picayune Rehabilitation and Healthcare Center, LLC
Pickens RE II, LLC
Pickens RE, LLC
Piedmont RE, LLC
Poinsett Rehabilitation and Healthcare Center, LLC
Poplar Oaks Rehabilitation and Healthcare Center, LLC
Portland RE, LLC
Provo RE, LLC
Rainbow Rehabilitation and Healthcare Center, LLC

River Falls Rehabilitation and Healthcare Center, LLC
Riverside Rehabilitation and Healthcare Center, LLC
Rock Prairie RE, LLC
Rocky Mount RE, LLC
Rocky Mount Rehabilitation and Healthcare Center, LLC
Roy RE, LLC
Scepter Rehabilitation and Healthcare Center, LLC
Scepter Senior Living Center, LLC
Simpsonville RE II, LLC
Simpsonville RE, LLC
Simpsonville Rehabilitation and Healthcare Center, LLC
Snellville RE, LLC
Southern Oaks Rehabilitation and Healthcare Center, LLC
The Bluffs Rehabilitation and Healthcare Center, LLC
The Ridge Rehabilitation and Healthcare Center, LLC
Trinity Mission Health & Rehab of Connersville, LLC
Trinity Mission of Burleson, LLC
Trinity Mission of Comfort, LLC
Trinity Mission of Diboll, LLC
Trinity Mission of Granbury, LLC
Trinity Mission of Italy, LLC
Trinity Mission of Winnsboro, LLC
Utah Valley Rehabilitation and Healthcare Center, LLC
Vicksburg RE, LLC
Victory Rehabilitation and Healthcare Center, LLC
Wadesboro RE, LLC
Wide Horizons RE, LLC
Wide Horizons Residential Care Facility, LLC
Winnsboro RE, LLC
Woodlands Rehabilitation and Healthcare Center, LLC
Yazoo City RE, LLC
Yazoo City Rehabilitation and Healthcare Center, LLC

By:     /s/ Louis E. Robichaux IV
Name: Louis E. Robichaux IV
Title:   Chief Restructuring Officer

**EXHIBIT A**

**List of Debtors**
**(Sorted Alphabetically)**

| | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 1. | 4 West Holdings, Inc. | 18-30777 | 9732 |
| 2. | 4 West Investors, LLC | 18-30778 | 6021 |
| 3. | Aiken RE, LLC | 18-30850 | 1814 |
| 4. | Ambassador Rehabilitation and Healthcare Center, LLC | 18-30879 | 1636 |
| 5. | Anchor Rehabilitation and Healthcare Center of Aiken, LLC | 18-30868 | 9448 |
| 6. | Anderson RE TX, LLC | 18-30774 | 3630 |
| 7. | Anderson RE, LLC | 18-30861 | 1806 |
| 8. | Ark II Real Estate, LLC | 18-30840 | 3628 |
| 9. | Ark III Real Estate, LLC | 18-30847 | 0121 |
| 10. | Ark Mississippi Holding Company, LLC | 18-30788 | 3765 |
| 11. | Ark Real Estate, LLC | 18-30809 | 6014 |
| 12. | Ark South Carolina Holding Company, LLC | 18-30856 | 0002 |
| 13. | Ark Texas Holding Company, LLC | 18-30806 | 3739 |
| 14. | Battle Ground RE, LLC | 18-30825 | 1818 |
| 15. | Brushy Creek Rehabilitation and Healthcare Center, LLC | 18-30884 | 3292 |
| 16. | Bryan RE, LLC | 18-30775 | 3633 |
| 17. | Burleson RE, LLC | 18-30759 | 1777 |
| 18. | Capstone Rehabilitation and Healthcare Center, LLC | 18-30878 | 7871 |
| 19. | Charlottesville Pointe Rehabilitation and Healthcare Center, LLC | 18-30801 | 4467 |
| 20. | Charlottesville RE, LLC | 18-30829 | 0836 |
| 21. | Cleveland RE, LLC | 18-30811 | 6013 |
| 22. | Clinton RE, LLC | 18-30812 | 8109 |
| 23. | Cobblestone Rehabilitation and Healthcare Center, LLC | 18-30869 | 1612 |
| 24. | Collierville RE, LLC | 18-30841 | 8845 |
| 25. | Columbia RE, LLC | 18-30815 | 8838 |
| 26. | Columbia Rehabilitation and Healthcare Center, LLC | 18-30795 | 6772 |
| 27. | Comfort RE, LLC | 18-30764 | 1902 |
| 28. | Connersville RE, LLC | 18-30833 | 9824 |
| 29. | Corinth RE, LLC | 18-30814 | 1777 |
| 30. | Cornerstone Rehabilitation and Healthcare Center, LLC | 18-30800 | 8841 |
| 31. | Crystal Rehabilitation and Healthcare Center, LLC | 18-30807 | 8842 |
| 32. | Delta Rehabilitation and Healthcare Center of Cleveland, LLC | 18-30792 | 7212 |
| 33. | Descending Dove, LLC | 18-30842 | 8081 |
| 34. | Diboll RE, LLC | 18-30766 | 1939 |
| 35. | Easley RE II, LLC | 18-30857 | 1819 |
| 36. | Easley RE, LLC | 18-30854 | 1817 |
| 37. | Edgefield RE, LLC | 18-30836 | 3574 |
| 38. | Farmville RE, LLC | 18-30831 | 3442 |
| 39. | Farmville Rehabilitation and Healthcare Center, LLC | 18-30804 | 4464 |
| 40. | Fleetwood Rehabilitation and Healthcare Center, LLC | 18-30888 | 9615 |
| 41. | Fortress Health & Rehab of Rock Prairie, LLC | 18-30765 | 1314 |

| | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 42. | Granbury RE, LLC | 18-30769 | 1999 |
| 43. | Great Oaks RE, LLC | 18-30819 | 1731 |
| 44. | Great Oaks Rehabilitation and Healthcare Center, LLC | 18-30780 | 4357 |
| 45. | Greenville RE II, LLC | 18-30846 | 1798 |
| 46. | Greenville RE, LLC | 18-30843 | 1797 |
| 47. | Greenville Rehabilitation and Healthcare Center, LLC | 18-30882 | 3920 |
| 48. | Greenwood RE, LLC | 18-30816 | 1654 |
| 49. | Greer RE, LLC | 18-30839 | 1795 |
| 50. | Greer Rehabilitation and Healthcare Center, LLC | 18-30859 | 9462 |
| 51. | Grenada RE, LLC | 18-30821 | 1623 |
| 52. | Grenada Rehabilitation and Healthcare Center, LLC | 18-30786 | 8843 |
| 53. | Heritage Park Rehabilitation and Healthcare Center, LLC | 18-30787 | 9055 |
| 54. | Hillsville RE, LLC | 18-30834 | 2195 |
| 55. | Hillsville Rehabilitation and Healthcare Center, LLC | 18-30808 | 4463 |
| 56. | Holly Lane Rehabilitation and Healthcare Center, LLC | 18-30797 | 9103 |
| 57. | Holly RE, LLC | 18-30830 | 1816 |
| 58. | Holly Springs RE, LLC | 18-30823 | 1559 |
| 59. | Holly Springs Rehabilitation and Healthcare Center, LLC | 18-30789 | 6524 |
| 60. | Indianola RE, LLC | 18-30822 | 6022 |
| 61. | Indianola Rehabilitation and Healthcare Center, LLC | 18-30779 | 7203 |
| 62. | Italy RE, LLC | 18-30761 | 2086 |
| 63. | Iva RE, LLC | 18-30852 | 1801 |
| 64. | Iva Rehabilitation and Healthcare Center, LLC | 18-30874 | 0384 |
| 65. | Johns Island Rehabilitation and Healthcare Center, LLC | 18-30891 | 4898 |
| 66. | Joy of Bryan, LLC | 18-30837 | 4072 |
| 67. | Lampstand Health & Rehab of Bryan, LLC | 18-30767 | 2002 |
| 68. | Linley Park Rehabilitation and Healthcare Center, LLC | 18-30890 | 0525 |
| 69. | Macon Rehabilitation and Healthcare Center, LLC | 18-30880 | 9644 |
| 70. | Magnified Health & Rehab of Anderson, LLC | 18-30773 | 9060 |
| 71. | Manna Rehabilitation and Healthcare Center, LLC | 18-30863 | 9441 |
| 72. | Marietta RE, LLC | 18-30867 | 1809 |
| 73. | McCormick RE, LLC | 18-30864 | 1808 |
| 74. | McCormick Rehabilitation and Healthcare Center, LLC | 18-30873 | 3193 |
| 75. | Memphis RE, LLC | 18-30844 | 8846 |
| 76. | Midland RE, LLC | 18-30832 | 5138 |
| 77. | Midland Rehabilitation and Healthcare Center, LLC | 18-30799 | 9679 |
| 78. | Moultrie RE, LLC | 18-30848 | 9943 |
| 79. | Mountain View Rehabilitation and Healthcare Center, LLC | 18-30798 | 9227 |
| 80. | Natchez RE, LLC | 18-30818 | 6019 |
| 81. | Natchez Rehabilitation and Healthcare Center, LLC | 18-30803 | 6773 |
| 82. | New Ark Master Tenant, LLC | 18-30885 | 7893 |
| 83. | New Ark Operator Holdings, LLC | 18-30893 | 7623 |
| 84. | New Redeemer Health & Rehab of Pickens, LLC | 18-30881 | 5321 |
| 85. | Olive Leaf Holding Company, LLC | 18-30845 | 0129 |
| 86. | Olive Leaf, LLC | 18-30866 | 0001 |
| 87. | Omega Health & Rehab of Greenville, LLC | 18-30870 | 9461 |
| 88. | Orianna Health Systems, LLC | 18-30785 | 5160 |

| | Debtor Name | Case No. | EIN |
|---|---|---|---|
| 89. | Orianna Holding Company, LLC | 18-30784 | 1323 |
| 90. | Orianna Investment, Inc. | 18-30781 | 1141 |
| 91. | Orianna SC Operator Holdings, Inc. | 18-30871 | 0383 |
| 92. | Palladium Hospice and Palliative Care, LLC | 18-30887 | 1873 |
| 93. | Patewood Rehabilitation and Healthcare Center, LLC | 18-30865 | 9457 |
| 94. | Picayune RE, LLC | 18-30827 | 9749 |
| 95. | Picayune Rehabilitation and Healthcare Center, LLC | 18-30793 | 9183 |
| 96. | Pickens RE II, LLC | 18-30862 | 1823 |
| 97. | Pickens RE, LLC | 18-30860 | 1821 |
| 98. | Piedmont RE, LLC | 18-30849 | 1800 |
| 99. | Poinsett Rehabilitation and Healthcare Center, LLC | 18-30876 | 0713 |
| 100. | Poplar Oaks Rehabilitation and Healthcare Center, LLC | 18-30813 | 4771 |
| 101. | Portland RE, LLC | 18-30826 | 1822 |
| 102. | Provo RE, LLC | 18-30835 | 3568 |
| 103. | Rainbow Rehabilitation and Healthcare Center, LLC | 18-30802 | 4772 |
| 104. | River Falls Rehabilitation and Healthcare Center, LLC | 18-30886 | 9788 |
| 105. | Riverside Rehabilitation and Healthcare Center, LLC | 18-30883 | 3951 |
| 106. | Rock Prairie RE, LLC | 18-30772 | 3636 |
| 107. | Rocky Mount RE, LLC | 18-30838 | 5904 |
| 108. | Rocky Mount Rehabilitation and Healthcare Center, LLC | 18-30810 | 4466 |
| 109. | Roy RE, LLC | 18-30817 | 5142 |
| 110. | Scepter Rehabilitation and Healthcare Center, LLC | 18-30872 | 1630 |
| 111. | Scepter Senior Living Center, LLC | 18-30875 | 1621 |
| 112. | Simpsonville RE II, LLC | 18-30858 | 1804 |
| 113. | Simpsonville RE, LLC | 18-30855 | 1802 |
| 114. | Simpsonville Rehabilitation and Healthcare Center, LLC | 18-30889 | 3564 |
| 115. | Snellville RE, LLC | 18-30851 | 9933 |
| 116. | Southern Oaks Rehabilitation and Healthcare Center, LLC | 18-30877 | 1141 |
| 117. | The Bluffs Rehabilitation and Healthcare Center, LLC | 18-30796 | 9314 |
| 118. | The Ridge Rehabilitation and Healthcare Center, LLC | 18-30892 | 1456 |
| 119. | Trinity Mission Health & Rehab of Connersville, LLC | 18-30805 | 8787 |
| 120. | Trinity Mission of Burleson, LLC | 18-30762 | 2585 |
| 121. | Trinity Mission of Comfort, LLC | 18-30763 | 2573 |
| 122. | Trinity Mission of Diboll, LLC | 18-30768 | 2581 |
| 123. | Trinity Mission of Granbury, LLC | 18-30771 | 2582 |
| 124. | Trinity Mission of Italy, LLC | 18-30760 | 2576 |
| 125. | Trinity Mission of Winnsboro, LLC | 18-30776 | 2583 |
| 126. | Utah Valley Rehabilitation and Healthcare Center, LLC | 18-30782 | 9661 |
| 127. | Vicksburg RE, LLC | 18-30828 | 0150 |
| 128. | Victory Rehabilitation and Healthcare Center, LLC | 18-30794 | 9485 |
| 129. | Wadesboro RE, LLC | 18-30853 | 9929 |
| 130. | Wide Horizons RE, LLC | 18-30820 | 5144 |
| 131. | Wide Horizons Residential Care Facility, LLC | 18-30790 | 9387 |
| 132. | Winnsboro RE, LLC | 18-30770 | 2134 |
| 133. | Woodlands Rehabilitation and Healthcare Center, LLC | 18-30791 | 9127 |
| 134. | Yazoo City RE, LLC | 18-30824 | 8844 |
| 135. | Yazoo City Rehabilitation and Healthcare Center, LLC | 18-30783 | 7216 |

**EXHIBIT B**

(Plan Sponsor Note)

## EXHIBIT C

(Restructuring Portfolio)

**South Carolina**
1. Anchor Rehabilitation and Healthcare Center of Aiken, LLC
2. Capstone Rehabilitation and Healthcare Center, LLC
3. Fleetwood Rehabilitation and Healthcare Center, LLC (including Fleetwood vacant lot (Easley))

4. Greer Rehabilitation and Healthcare Center, LLC
5. Iva Rehabilitation and Healthcare Center, LLC
6. Linley Park Rehabilitation and Healthcare Center, LLC
7. Manna Rehabilitation and Healthcare Center, LLC
8. McCormick Rehabilitation and Healthcare Center, LLC
9. Patewood Rehabilitation and Healthcare Center, LLC
10. Poinsett Rehabilitation and Healthcare Center, LLC
11. River Falls Rehabilitation and Healthcare Center, LLC
12. Southern Oaks Rehabilitation and Healthcare Center, LLC
13. Simpsonville Rehabilitation and Healthcare Center, LLC
14. The Ridge Rehabilitation and Healthcare Center, LLC

**Georgia**
1. Cobblestone Rehabilitation and Healthcare Center, LLC

**Additional Entities**
1. Palladium Hospice and Palliative Care, LLC
2. Johns Island Rehabilitation & Healthcare Center, LLC

## EXHIBIT D

(Transfer Portfolio)

### Mississippi

1.  Cornerstone Rehabilitation and Healthcare Center, LLC
2.  Crystal Rehabilitation and Healthcare Center, LLC
3.  Delta Rehabilitation and Healthcare Center of Cleveland, LLC
4.  Great Oaks Rehabilitation and Healthcare Center, LLC
5.  Grenada Rehabilitation and Healthcare Center, LLC
6.  Holly Springs Rehabilitation and Healthcare Center, LLC
7.  Indianola Rehabilitation and Healthcare Center, LLC
8.  Yazoo City Rehabilitation and Healthcare Center, LLC
9.  Columbia Rehabilitation and Healthcare Center, LLC (including Columbia vacant lot)
10. Natchez Rehabilitation and Healthcare Center, LLC (including Natchez vacant lot)
11. Picayune Rehabilitation and Healthcare Center, LLC
12. The Bluffs Rehabilitation and Healthcare Center, LLC (including The Bluffs vacant lot (Vicksburg))
13. Woodlands Rehabilitation and Healthcare Center, LLC

### Tennessee

1.  Rainbow Rehabilitation and Healthcare Center, LLC
2.  Poplar Oaks Rehabilitation and Healthcare Center, LLC
3.  Corporate Headquarters – Orianna Investment, Inc.

### Virginia

1.  Charlottesville Point Rehabilitation and Healthcare Center, LLC
2.  Farmville Rehabilitation and Healthcare Center, LLC
3.  Hillsville Rehabilitation and Healthcare Center, LLC
4.  Rocky Mount Rehabilitation and Healthcare Center, LLC

### North Carolina

1.  Ambassador Rehabilitation and Healthcare Center, LLC

### Indiana

1.  Caroleton Manor (Trinity Mission Health & Rehab of Connersville, LLC/Adams County Memorial Hospital d/b/a Caroleton Manor)

### Georgia

1.  Scepter Rehabilitation and Healthcare Center, LLC/Scepter Senior Living Center, LLC